## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE**      **2. PLEASE TYPE OR PRINT**      **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption: | District Court or Agency: | Judge: |
|---|---|---|
| Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Limited et al | Southern District of NY | Louis Stanton |

| | Date the Order or Judgment Appealed from was Entered on the Docket: | District Court Docket No.: |
|---|---|---|
| | 07/02/2024; 08/20/2024 | 1:20-cv-09713-LLS |

| | Date the Notice of Appeal was Filed: | Is this a Cross Appeal? |
|---|---|---|
| | 08/26/2024 | ☐ Yes  ☑ No |

**Attorney(s) for Appellant(s):**
☐ Plaintiff
☑ Defendant

Counsel's Name:   Address:   Telephone No.:   Fax No.:   E-mail:

Jeff Butler
Address: Two Manhattan West, 375 9th Avenue, New York, NY 10001
Telephone No.: 212-878-8000
Email: jeff.butler@cliffordchance.com

**Attorney(s) for Appellee(s):**
☑ Plaintiff
☐ Defendant

Counsel's Name:   Address:   Telephone No.:   Fax No.:   E-mail:

David Hosenpud
Address: 601 SW Second Avenue, Ste 2100, Portland, OR 97204
Telephone No.: 503-778-2141
Fax No.: 503-778-2200
Email: hosenpudd@lanepowell.com

| Has Transcript Been Prepared? | Approx. Number of Transcript Pages: | Number of Exhibits Appended to Transcript: | Has this matter been before this Circuit previously? ☐ Yes ☑ No |
|---|---|---|---|
| Yes | 819 | 0 | If Yes, provide the following:<br>Case Name:<br>2d Cir. Docket No.:   Reporter Citation: (i.e., F.3d or Fed. App.) |

*ADDENDUM "A"*: **COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.**

*ADDENDUM "B"*: **COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.**

### PART A: JURISDICTION

| 1. Federal Jurisdiction | 2. Appellate Jurisdiction |
|---|---|
| ☐ U.S. a party   ☑ Diversity | ☑ Final Decision   ☐ Order Certified by District Judge (i.e., Fed. R. Civ. P. 54(b)) |
| ☐ Federal question (U.S. not a party)   ☐ Other (specify): ____ | ☐ Interlocutory Decision Appealable As of Right   ☐ Other (specify): ____ |

**IMPORTANT. COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

**FORM C** (Rev. October 2016)

## PART B:   DISTRICT  COURT DISPOSITION   (Check as many as apply)

**1. Stage of Proceedings**
- [ ] Pre-trial
- [ ] During trial
- [x] After trial

**2. Type of Judgment/Order Appealed**
- [ ] Default judgment
- [ ] Dismissal/FRCP 12(b)(1) lack of subject matter juris.
- [ ] Dismissal/FRCP 12(b)(6) failure to state a claim
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) frivolous complaint
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) other dismissal
- [ ] Dismissal/other jurisdiction
- [ ] Dismissal/merit
- [x] Judgment / Decision of the Court
- [ ] Summary judgment
- [ ] Declaratory judgment
- [ ] Jury verdict
- [ ] Judgment NOV
- [ ] Directed verdict
- [ ] Other (specify):

**3. Relief**
- [x] Damages:
  - [ ] Sought: $ _____
  - [x] Granted: $ See below
  - [ ] Denied: $ _____
- [ ] Injunctions:
  - [ ] Preliminary
  - [ ] Permanent
  - [ ] Denied

$49,499,884.93 in damages/ prejudgment interest, and $ $2,581,727.50 in attorneys' fees.

## PART C:  NATURE OF SUIT   (Check as many as apply)

**1. Federal Statutes**
- [ ] Antitrust
- [ ] Bankruptcy
- [ ] Banks/Banking
- [ ] Civil Rights
- [ ] Commerce
- [ ] Energy
- [ ] Commodities
- [ ] Other (specify): _____
- [ ] Communications
- [ ] Consumer Protection
- [ ] Copyright □ Patent
- [ ] Trademark
- [ ] Election
- [ ] Soc. Security
- [ ] Environmental
- [ ] Freedom of Information Act
- [ ] Immigration
- [ ] Labor
- [ ] OSHA
- [ ] Securities
- [ ] Tax

**2. Torts**
- [ ] Admiralty/ Maritime
- [ ] Assault / Defamation
- [ ] FELA
- [ ] Products Liability
- [ ] Other (Specify):

**3. Contracts**
- [ ] Admiralty/ Maritime
- [ ] Arbitration
- [x] Commercial
- [ ] Employment
- [ ] Insurance
- [ ] Negotiable Instruments
- [ ] Other Specify

**4. Prisoner Petitions**
- [ ] Civil Rights
- [ ] Habeas Corpus
- [ ] Mandamus
- [ ] Parole
- [ ] Vacate Sentence
- [ ] Other

**5. Other**
- [ ] Hague Int'l Child Custody Conv.
- [ ] Forfeiture/Penalty
- [ ] Real Property
- [ ] Treaty (specify): _____
- [ ] Other (specify): _____

**6. General**
- [ ] Arbitration
- [ ] Attorney Disqualification
- [ ] Class Action
- [x] Counsel Fees
- [ ] Shareholder Derivative
- [ ] Transfer

**7. Will appeal raise constitutional issue(s)?**
- [ ] Yes  [x] No

Will appeal raise a matter of first impression?
- [ ] Yes  [x] No

1. Is any matter relative to this appeal still pending below? [ ] Yes, specify: _____ [x] No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

   (A)   Arises from substantially the same case or controversy as this appeal? [ ] Yes [x] No

   (B)   Involves an issue that is substantially similar or related to an issue in this appeal? [ ] Yes [x] No

If yes, state whether □ "A," or □ "B," or □ both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| Name of Appellant: | | | |

| Date: 9/3/2024 | Signature of Counsel of Record: s/Jeff E. Butler |
|---|---|

## NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**
1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.
2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.
3. Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

**FORM C**  (Rev. December 2016)

**Addendum A**

**(1)    Nature of the Action**

This case concerns a claim by Plaintiff-Appellee Frontier Airlines, Inc. for breach of contract against Defendants-Appellants, a group of affiliated aircraft leasing companies ("AMCK").  As part of a long-standing business relationship, AMCK leased fourteen aircraft to Frontier.  In late 2019, the parties also agreed on a new deal where AMCK would purchase six aircraft from Airbus which Frontier was obligated to fund, and then would lease those aircraft to Frontier (the "Framework Agreement").  This is a common type of "sale-leaseback" arrangement in aircraft financing.

Frontier claims that AMCK agreed on an April 7, 2020 phone call to a waiver of rental payments on the fourteen existing aircraft leases.  Frontier alleges that AMCK did so in exchange for ongoing negotiations to defer the remaining aircraft deliveries scheduled under the Framework Agreement.  AMCK disputes that a waiver took place.  On May 8, 2020, AMCK terminated the Framework Agreement, due to the non-payment of rent under those fourteen leases.

In the district court, Frontier sought damages for the differences in terms between the Framework Agreement and the replacement contracts to purchase those remaining aircraft, as well as attorneys' fees and costs.

**(2)    Result Below**

By Opinion and Order dated July 6, 2023, the district court (Stanton, J.) granted in part and denied in part Defendants' Motion for Summary Judgment. In relevant part, the district court held that the language of the Framework Agreement stating that a party may only waive its rights under the Agreement "by an express waiver or variation in writing" unambiguously means that waivers are not required to be in writing. The district court further found that there were questions of fact about whether the parties' oral and written communications in April and May 2020 constituted an agreement to suspend rental payments, and if so, for what period of time.

Following a bench trial, by Opinion and Order dated June 14, 2024, the district court (Stanton, J.) found that Defendants agreed to a waiver of rental payments on the April 7th phone call. The district court found that as a result, Defendants were required to provide Plaintiff with notice of withdrawal of the waiver and an opportunity of cure, and that Defendants did not do so. As a result, the district court found that Defendants are liable for breach of the Framework Agreement.

On June 17, 2024, judgment was entered for Plaintiff in the amount of $66,669,532.60.

On July 1, 2024, an amended judgment was entered for Plaintiff in the amount of $49,499,884.93. This amended judgment fixed an error which had resulted in double-counting pre-judgment interest.

On August 14, 2024, the district court denied Defendants' motion for judgment as a matter of law.

On August 19, 2024, the district court granted Plaintiff's motion for attorneys' fees and costs.

On August 20, 2024, a supplemental judgment was entered awarding Plaintiff attorneys' fees and costs in the amount of $2,581,727.50.

**(3)  Notice of Appeal and Docket Sheet**

Annexed hereto

**(4)  Opinions/Orders Forming Basis of Appeal**

Annexed hereto

ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRONTIER AIRLINES, INC.,

                    Plaintiff,

          - against -

AMCK AVIATION HOLDINGS IRELAND LIMITED,
ACCIPITER INVESTMENT 4 LIMITED,
VERMILLION AVIATION (TWO) LIMITED,
WELLS FARGO TRUST COMPANY, N.A., solely
in its capacity as OWNER TRUSTEE, and
UMB BANK, N.A., solely in its capacity
as OWNER TRUSTEE,

                    Defendants.

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: |
| DATE FILED: 9/6/23 |

20 Civ. 9713 (LLS)
OPINION & ORDER

          This case is a stark example of the stresses suffered by
even well-established business relationships when they are
forced to adjust to an unprecedented crisis that suspends
industry operations, closes global supply chains, and freezes
activities which were the sources of its members' earnings.

          Defendant AMCK Aviation Holdings Ireland Limited ("AMCK")
is an aircraft leasing company that, through various
subsidiaries and owner trustee entities, owns and leases to
plaintiff Frontier Airlines, Inc. ("Frontier"), a commercial
passenger airline, multiple aircraft through sale-leaseback
financing arrangements.  In late 2019, Frontier entered into its
latest agreement (the "Framework Agreement") with AMCK, whereby
AMCK or an affiliated entity was to purchase six new Airbus

1

aircraft (model A320-251N) and lease them back to Frontier at a
predetermined rate. Because the COVID-19 pandemic, which swept
the globe in early 2020, made the economic terms of the deal
less advantageous for AMCK, Frontier argues that AMCK contrived
an Event of Default in order to create grounds to terminate the
Agreement. Frontier brought this action asserting claims for
breach of contract, along with a quasi-contract claim and a
fraud claim. Defendants now move for summary judgment to dismiss
the claims.

For the reasons that follow, defendants' Motion for Summary
Judgment dismissing the claims is granted except for the claim
for breach of contract of the Framework Agreement.

## Background

### I.    Parties

Frontier is a Colorado-headquartered airline that operates
commercial passenger aircraft. Dkt. No. 106 ("Frontier's
Response to Defendants' Rule 56.1 Statement ") ¶ 1. AMCK is an
aircraft leasing company organized under the laws of Ireland
with its principal place of business there. Id. ¶ 4. Accipiter
Investments Aircraft 4 Limited ("Accipiter") and Vermillion
Aviation (Two) Limited ("Vermillion") are affiliates of AMCK,
which operate as the Owner Participants and Guarantors in sale-
leaseback arrangements entered into by AMCK. Because of
regulatory requirements in the United States that restrict

2

foreign leasing of domestic aircraft, UMB Bank, N.A. ("UMB") and Wells Fargo Trust Company, N.A., are the Lessors and Owner Trustees under the Agreements.

## II. The Parties' Sale and Leaseback Arrangement

Frontier leases 100% of its fleet though sale-leaseback agreements with various aircraft lessors, a common method used by airlines to finance new aircraft acquisitions. Id. ¶ 4. At the end of 2019, Frontier leased fourteen aircraft from AMCK and its affiliates. Although each aircraft is governed by a separate Lease Agreement, the Agreements are materially similar, obligating UMB and Wells Fargo, as Lessors and Owner Trustees acting for the benefit of the Owner Participant, Accipiter, to lease the crafts to Frontier for $320,000-$360,000 per month per craft and granting Frontier the right to possess and operate the crafts. Id. ¶¶ 5-8.

On September 10, 2019, Frontier and AMCK's affiliate Accipiter Holdings, DAH signed a letter of intent to enter into a sale and leaseback arrangement for six additional aircraft. The sale and leaseback arrangement is bound together by multiple contractual agreements and, as relevant here, works in the following way. First, Frontier has a Purchase Agreement with Airbus, an aircraft manufacturer, to purchase and take delivery of aircraft according to a set schedule, with six crafts due in 2020. Id. ¶¶ 4, 10. Second, rather than outright purchase those

3

six aircraft, Frontier, on March 16, 2020, entered into a sale
and leaseback agreement (the "Framework Agreement") with AMCK,
the aircraft lessor, which obligates AMCK, or an affiliate, to
buy the aircraft and simultaneously lease them back to Frontier.
Id. ¶¶ 4, 9. AMCK is obligated to directly pay Airbus the
purchase price, but, until it does so, Frontier remains fully
responsible to purchase the aircraft under the Purchase
Agreement. Id. ¶ 4. The purchase price and subsequent lease
price of the aircraft are negotiated solely between Frontier and
AMCK. Id. Third, shortly before or on the date of delivery,
Frontier and AMCK are to enter into a Lease Agreement for each
individual aircraft. They did so for the first of the aircraft
set to be delivered, MSN 10038, but never completed their
obligations for the remaining ones.

     Under the Framework Agreement, AMCK, through Trust Company/
Lessor UMB, is required to purchase and lease back the six
aircraft according to the following schedule: three in March
2020, one in May 2020, one in June 2020, and one in August 2020.
Dkt. No 116 Ex. 7 ("Framework Agreement"). Under the Framework
Agreement, AMCK is the "Lessor Guarantor" and the "Owner
Participant," as are Vermillion and Accipiter due to their
status as AMCK's "Affiliate." Id. Ex. 7 § 1.1.) AMCK is
obligated to cause the Lessor (UMB) to purchase the aircraft
from Airbus on the delivery date and execute a Lease Agreement

4

with Frontier. Id. §§ 2.1.1, 3.3.1. UMB's performance is

guaranteed by Vermillion. Id. §§ 2.1.1, 3.3.1.

Accordingly, on March 16, the same date the parties entered

into the Framework Agreement, AMCK, through its affiliate

Vermillion, purchased the first of the aircraft, MSN 10038, and

executed an aircraft-specific Lease Agreement, Trust Agreement,

and Guaranty. Dkt. No. 116 Ex. 10-12.  Per the agreements,

Vermillion is the Owner Participant and has conveyed all rights,

title, interests, and rights in MSN 10038 to UMB, the Lessor and

Owner Trustee. Dkt. No. 116 Ex. 11 at 1 §§ 1-2. Vermillion is

also the Lessor Guarantor and has agreed to guarantee all of

UMB's performance obligations. Id. Ex. 12 at 1 § 1.  Per the

Framework and resulting lease documents, defendants paid Airbus

for MSN 10038 and Frontier began paying them the monthly rent.

The rights and obligations of the parties that arise from

the Framework Agreement and lease documents are intertwined. A

right can be waived under the Framework Agreement only "by an

express waiver or variation in writing. . . and no act or course

of conduct or negotiation on the part of such party or on its

behalf shall in any way preclude it from exercising any such

right or constitute a suspension or any variation of any such

right." Dkt. No. 94 Ex. 4 § 8.4.1 ("Framework Agreement"). The

Framework Agreement further states that "[t]he provisions of

this Agreement shall not be varied otherwise than by an

5

instrument in writing executed by or on behalf of AMCK Aviation
and Frontier." Id. § 8.4.2.

Under the Framework Agreement, a default can occur if
"Frontier fails to pay any amount due under any of the
Transaction Documents in the currency and in the manner
stipulated within five (5) Business Days of written notice of
such failure from AMCK Aviation." Dkt. No. 116 Ex. 7 § 6.1.1.
Transaction Documents are the Framework Agreement and each
"Operative Document" as defined in each Lease Agreement. Id. Ex.
7 § 1.1. Under the Lease Agreement for MSN 10038, an Event of
Default occurs when

> Lessee fails to pay (i) any Basic Rent or Security
> when due . . ., or (ii) any other sum due it under
> this Agreement or any other Operative Document . . .
> in the currency and in the manner stipulated within
> five (5) Business Days of written notice of such
> failure from Lessor."

Id. Ex. 10 § 16.1(a). Operative Documents include the 14
original Lease Agreements. Id. § 1.1. It is through this
interrelation that AMCK declared Frontier to be in default and
subsequently exercised its rights to terminate the Framework
Agreement.

**III. Parties' Negotiations over Deferrals**

In response to the COVID-19 pandemic, on March 16, 2020,
shortly after entering into the Framework Agreement and Lease
for MSN 10038, Frontier, as many other airlines did to their
lessors, sent a letter to AMCK requesting for all aircraft:

6

1. All lease rent payments due between the date of this
   letter and June 30, 2020 will be deferred; and
2. Return of one month's rent security deposit.
The above concessions would be documented in a mutually

agreed deferral and concession agreement. Dkt. No. 94 Ex. 8.

Over approximately the next two months, Frontier and AMCK

negotiated the terms of the potential rent deferral. Frontier

ultimately argues that AMCK agreed to a month-to-month deferral

while the negotiations were ongoing, whereas AMCK denies ever

reaching such a consensus. A timeline of the parties' key

communications is briefly summarized.

On March 18, 2020, AMCK responded with the following

counteroffer:

1. Payments on the 1 x A320ceo and 2 x A320neo . . .
to be current. . .
2. On the remainder of the aircraft (12 in total) 50%
rent deferral for 3 months, commencing from 1 April.
3. No deferral on the remaining 5 x A320neo we are
scheduled to purchase from Frontier per the recently
executed Framework Agreement in the coming months
4. Frontier to pay the deferred amount in equal
installments over 4 months from the month following
the lastmonth of rent deferral with 8% interest per
annum from each of the payment dates.
Dkt. No. 116 Ex. 18.

On March 22, 2020, Frontier asked AMCK to reconsider its

position and, because no agreement was in place, paid the March

rents due on all aircraft, including two rents that were due

March 24th. Dkt. No. 116 Ex. 23.

Frontier alleges thereafter that AMCK was solely interested

in getting out of the Framework Agreement because its bank

7

financing had failed, and it would have to fund the next aircraft delivery itself. Accordingly, on March 26, 2020 AMCK now requested that Frontier make an advanced payment of twelve months of rent for the upcoming aircraft delivery and defer delivery of the remaining four aircraft by three to six months in exchange for a four-month deferral of rent on the fourteen original leases at 8% interest. Id. Ex. 29. On March 31, 2020, AMCK also cautioned that it would not proceed "with closing on the 5 remaining sale & leaseback aircraft if they are going to go straight into storage for an uncertain period of time." Id. Ex. 29.

On April 2, Frontier promptly reached out to Airbus to start negotiations with them.

On April 3, AMCK altered its position slightly, offering to defer rents at a repayment rate of 6% if delivery was deferred for six months. Id. Ex. 32. Frontier never agreed to any of these proposals and negotiations, with both AMCK and Airbus, remained ongoing.

On April 6, 2020, rent was due on two aircraft under the Original Leases. Dkt. No. 106 ¶ 20. Frontier and AMCK had a phone call that day to discuss deferring the payments and AMCK agreed to defer all upcoming rent payments due under the Original Leases for 10 business days. Id. AMCK memorialized the call in an email that day, which read:

8

> Mindful of the time it might take you to reach
> agreement with Airbus or to make some other
> arrangements and therefore of the ability for us to
> reach a deferral agreement, we can confirm that we
> won't take any actions or call any defaults linked to
> non payment of rents on any aircraft where the rent is
> due from today to 21 April (ie, for the next 10
> working days).

Dkt. No. 116 Ex. 32.

On April 7, 2020, Frontier and AMCK again spoke by phone.

This time, the parties dispute what was said. Frontier claims

that on the call AMCK agreed to a month-to-month deferral until

all negotiations were complete and declined to commit to

performing its obligations under the Framework Agreement if

Frontier was unable to convince Airbus to defer delivery. Dkt.

No. 106 ¶ 52. AMCK argues that no rent deferral agreement was

reached. At best, it contests that the parties only discussed

deferring rent until the end of April, not indefinitely, and

never discussed when the rent would be repaid. Dkt. No. 95 Ex.

6.

On April 9, 2020, AMCK sent a draft forbearance letter to

Frontier stating that it would agree "temporarily to forbear

from exercising its rights and remedies" for the rent owed in

April. Dkt. No. 94 Ex. 16, § 2.1. The deferred rent would have

to be repaid at 6% interest by July 24, 2020. Id. § 2.12.

The Forbearance was conditioned upon Frontier signing an

acknowledgement of the Letter, which never occurred.

9

On April 11 and 13, 2020, Frontier informed AMCK that the longest deferral it could secure with Airbus was for two months. Dkt. No. 116 Ex. 35. Nonetheless, AMCK remained committed to a six-month delivery deferral. Id.

Over the next two weeks, negotiations continued, and on April 30, 2020, AMCK sent its final offer

> (i) that Frontier would "immediately pay outstanding April rents on which we agreed an informal deferral pending agreement with Airbus on delivery delays," and to "pay May, June and July rents and, all beyond, on time;"
> (ii) convince Airbus to move the next aircraft delivery from June to July 2020, such that the next three aircraft would deliver in July 2020; and
> (iii) move the delivery dates of the final two aircraft from September 2020 and October 2020 to February 2021.

Dkt. No. 116 Ex. 44.

Frontier declined to accept the terms, believing they were an overreach, and conveyed that it was willing to become and remain current on rent and perform under the initial terms of the Framework Agreement if the parties could not agree to concessions. Dkt. No. 106 ¶ 65. It sent back its final terms of:

> (i) deferring delivery of the next aircraft until July 2020;
> (ii) prepaying rent for six months on the three aircraft delivering in July 2020,; and
> (iii) repaying the deferred rent from April and May 2020 over the next six months, starting in July;
> (iv) deferring delivery for two aircraft until 2021.

Dkt. No. 116 Ex. 47,48.  AMCK never responded to this offer.

Dkt. No. 106 ¶ 67.

On May 8, 2020, AMCK sent Frontier a Notice of Termination letter, purporting to terminate its obligation to purchase and lease the remaining aircraft based on the unpaid rent on the Original Leases and the cross-default provisions in the operative documents. Dkt. No. 106 ¶ 71. Frontier contested the termination and after unsuccessful attempts to have AMCK withdraw the termination, paid all outstanding rents on May 13, 2020, curing any alleged default. Id. ¶¶ 75-76.

During this negotiation period throughout April and May 2020, AMCK ceased sending its customary chase alerts that had historically informed Frontier when rent was past due and needed to be paid immediately. Id. ¶ 54. Additionally, AMCK did not send any rent invoices, except for MSN 10038, which Frontier paid. Id. ¶ 55. After Frontier became current on rent, AMCK reinstated its previous practices.

Following AMCK's termination, Frontier was faced with the imminent delivery of five aircraft without lessor financing and was at risk of having to fully fund their delivery or default on its agreement with Airbus. To avoid either scenario, Frontier entered into sale-leaseback arrangements with CDB Aviation Lease Finance DAC for three of the remaining aircraft and Jackson Square Aviation for the other two. Id. ¶ 83. The terms of these agreements were materially worse for Frontier than the Framework Agreement was, costing Frontier approximately $53 million in

11

damages ($46.3 million when discounted to present value). Id. ¶
84. AMCK also offered to enter into new agreements for the
aircraft but AMCK's terms were significantly worse than the
Framework Agreement and those offered by the alternative
lessors. Id. ¶ 82.

Frontier brought this suit alleging that AMCK utilized
Frontier's outstanding rent payments as a pretext to terminate
its commitments with Frontier when the commitments were no
longer financially advantageous. Dkt. No. 1. Specifically,
Frontier asserts claims for breach of contract of the Framework
Agreement and the Lease Agreements, promissory estoppel, and
fraud against AMCK, Accipiter, Vermillion, UMB, and Wells Fargo.
Id. Upon a denial of their motion to dismiss, defendant AMCK
asserted a crossclaim for Indemnification. Dkt. No. 47.
Defendants now move for summary judgment dismissing all the
claims. Dkt. No. 93.

## Analysis

### I.   Legal Standards

Summary judgment is appropriate where "there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts do
not "weigh the evidence," but rather "view the facts in the
light most favorable to the nonmoving party and resolve all
factual ambiguities in its favor . . . to determine whether

12

there is a genuine issue for trial." <u>Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.</u>, 444 F.3d 158, 162 (2d Cir. 2006). "A genuine issue of fact for trial exists when there is sufficient evidence on which a jury could reasonably find for the plaintiff." <u>Id.</u>

## II.  Contract and Quasi-Contract Claims

Frontier alleges the AMCK breached the Framework Agreement and the Lease Agreements for fifteen aircraft. New York law requires a plaintiff claiming breach of contract to show "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." <u>Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.</u>, 375 F.3d 168, 177 (2d Cir. 2004).  The parties do not dispute that the Framework Agreement and Lease Agreements were valid contracts. Instead, they contest whether Frontier failed to uphold its duties under them and, consequently, whether AMCK's termination of the Framework Agreement was valid or amounts to a breach.

### 1) March 2020 Framework Agreement

### A. Anticipatory Repudiation Breach of Contract Against AMCK (Claim 1)

Frontier claims AMCK breached the Framework Agreement by an express anticipatory repudiation and by failing to provide reasonable assurances that it will perform under the Agreement. The Court disagrees, finding there is insufficient evidence for

a reasonable factfinder to find AMCK anticipatorily repudiated
the Framework Agreement.

### i. Express Anticipatory Repudiation

"Anticipatory repudiation occurs when, before the time for
performance has arisen, a party to a contract declares his
intention not to fulfill a contractual duty." Lucente v. Int'l
Bus. Mach. Corp., 310 F.3d 243, 258 (2d Cir. 2002). A party is
considered to have repudiated if it "attempt[s] to advance an
unwarranted interpretation of the contract" or vows to "perform
only if certain 'extracontractual' conditions are satisfied." In
re Best Payphones, Inc., 432 B.R. 46, 54 (S.D.N.Y. 2010), aff'd,
450 F. App'x 8 (2d Cir. 2011); see also Palazzetti Imp./Exp.,
Inc. v. Morson, No. 98 Civ. 722, 2001 WL 1568317, at *9
(S.D.N.Y. Dec. 6, 2001). "[A] repudiation can be determined to
have occurred only when it is shown that 'the announcement of an
intention not to perform was positive and unequivocal.'" DiFolco
v. MSNBC Cable L.L.C., 622 F.3d 104, 112 (2d Cir. 2010) (quoting
Tenavision, Inc. v. Neuman, 379 N.E.2d 1166, 1168 (N.Y. 1978).

Generally, whether a particular communication constitutes a
repudiation is a question of fact that requires the
interpretation of evidence at trial. Id. However, "[a]n
exception applies where the repudiation is in writing, in which
case the court may resolve the issue of repudiation as a matter
of law." Id. Although, if the writing has ambiguous terms, then

the determination of whether it constitutes a repudiation is to be made by the finder of fact. Id.

Frontier argues AMCK repudiated the Framework Agreement when it conditioned its performance thereunder upon Frontier caving to its extracontractual demands. In support of its argument, Frontier points to a string of emails and text messages the parties exchanged over the course of a month. However, none of those written communications contain unequivocal statements that AMCK planned to not perform the Framework Agreement.

The first instance of alleged repudiation occurred on March 26, 2020 when AMCK said in an email:

> [W]e are prepared to make the following offer of short term assistance to Frontier in response to your request, but with certain conditions attached. We will agree to the Frontier request for 3 months' rent deferral, commencing April 2020, in respect of 14 of our 15 delivered aircraft (i.e. excluding the A320neo delivered on 16 March 2020), with such deferred rent to be paid over the subsequent 4 months, subject to the following conditions being met:
> 1. With respect to the SLB aircraft that is scheduled to be delivered in April 2020 (MSN 9549), we will require 12 months' rent to be pre-paid upon closing/leasing commencement, i.e. there will be a "holdback" from the agreed $51M PP of approximately $3M;
> 2. With respect to the remaining 4 SLB aircraft that are scheduled to be delivered in May through July 2020, the delivery schedule will be delayed, between Frontier and Airbus, by 3-6 months; and
> 3. Any failure by Frontier to pay the deferred rent on time will constitute an EOD under the framework agreement and permit AMCK to terminate the delivery obligation for the remaining SLB aircraft; and

15

> 4. Deferral interest at 8% will apply to the deferred
>    amounts. . .
> Please let me know if you would like to discuss today?

Dkt. No. 116 Ex. 29.

Nowhere in that email does AMCK make a positive and unequivocal statement of its intent to not perform under the Framework Agreement. Rather the email unambiguously shows that AMCK is proposing as part of a negotiation that began because Frontier requested a rent deferral. Within that context, AMCK's terms are nothing more than a counteroffer; they are not extracontractual conditions that AMCK is making its performance under the Framework Agreement contingent upon.

The remaining written communications relied upon by Frontier also happened within the context of negotiations for a rent deferral. On March 31, 2020, AMAK emailed, in pertinent part:

> We are not comfortable proceeding with closing on the
> 5 remaining sale & leaseback aircraft if they are
> going to go straight into storage for an uncertain
> period of time. We really believe it's in both
> parties' interest to defer delivery of these aircraft
> by 3-6 months. We can issue the rent deferral draft to
> you but it needs to be understood by all that above is
> our shareholder position.

Dkt. No. 116 Ex. 29.  AMCK thereafter conveyed via an April 3, 2020 email that it would grant the three-month rent deferral "strictly on the basis that we suspend the SLB for six months." Dkt. No. 116 Ex. 32. Then, in an April 30, 2020 email, AMCK proposed extending the leases on twelve other aircraft by four

16

years and removing the early Termination provision from the
Framework Agreement and, "for the avoidance of doubt," made
clear the proposal was "for discussion purposes only." Dkt. No.
116 Ex. 45

    To cast these communications as a repudiation, as Frontier
urges the Court to do, would require the Court to read them in
isolation and out of the context of the ongoing negotiation to
permit Frontier to defer rent. While it is true that the
remaining emails and text messages show that AMCK wanted to
adjust the terms of the Framework Agreement to minimize their
losses, that demand was only linked to AMCK agreeing to defer
Frontier's rent. The communications are a quid pro quo that is
standard in all negotiations, and they do not approach the level
of an unequivocal repudiation.

    Even if Frontier had not begun the negotiation by asking
for a rent deferral, these communications could not be
considered repudiations. In that scenario, these communications
are best characterized as offers by AMCK to amend the parties'
outstanding obligations. AMCK's statement that it is "not
comfortable proceeding" unless Frontier alters its duties to
perform is not an unequivocal forecast that AMCK will not
perform.

    The closest that AMCK gets to conditioning its performance
under the Framework Agreement on Frontier agreeing to

extracontractual demands is in an April 25, 2020 text message, which states:

> [AMCK] need[s] some quid pro quo to fund $250M of capex on terms that now appear to be wildly off market, and we are seeing many parties walk from 2019 priced commitments due to the unprecedented crisis we are in. Our thinking here is that a QPQ [quid pro quo] which would be of value to us is a 4yr lease extension of the earlier block of Neo deliveries from Accipiter to take those leases to 12 yr[.] Let's chat later today if you're available?

Dkt. No. 116 Ex. 31. But even here, this is not an unequivocal statement of intent to not perform. It reads as an attempt to negotiate an amendment.

There can be no dispute; the unambiguous written communications show no repudiation of the Framework Agreement by AMCK.

### ii.  Failure to Give Adequate Assurance

Frontier claims AMCK repudiated the Framework Agreement when it declined to provide adequate assurances in response to Frontier's inquiries into whether it was going to perform. Frontier argues that its communications with AMCK over March and April 2020 gave it reasonable grounds to fear AMCK would not purchase the remaining five aircraft as required by the Framework Agreement.

"When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance." N.Y. U.C.C. Law §

2-609(1). If a party receives a justified demand but does not provide, within a reasonable time not exceeding thirty days, adequate assurance of its performance, the unresponsive party is said to have repudiated the contract. Id. § 2-609(4).

Frontier argues that AMCK's nonresponses were a reasonable basis on which Frontier could fear nonperformance under the Framework Agreement. Between merchants, like the parties are here, the reasonableness of the grounds for insecurity is "determined according to commercial standards." N.Y. U.C.C. Law § 2-609(2). Reasonable grounds for insecurity arise out of the objective conduct of the contracting parties and not from their subjective speculations. Remuda Jet Five LLC v. EMBRAER-- Empressa Brasileira de Aeronautica, S.A., No. 10 CIV. 8369, 2012 WL 1142296, at *12 (S.D.N.Y. Mar. 27, 2012). While it is generally a question of fact whether the grounds were reasonable, there are circumstances "where this issue may be resolved as a matter of law." BAII Banking Corp. v. UPG, Inc., 985 F.2d 685, 702 (2d Cir. 1993).

Here, the events that proceeded Frontier's alleged demands show that the parties were engaged in a negotiation to amend the Framework Agreement, which was initiated unilaterally by Frontier and become quid pro quo bargaining only at the insistence of AMCK. Frontier itself confirmed that understanding in an April 6, 2020 email—

> [Frontier's] reading of [AMCK's] email assumes that
> [AMCK] will only agree [sic] the rent deferral if
> [Frontier] defer[s] aircraft deliveries with Airbus?
> As a result, [Frontier] can only deduce that [AMCK]
> will finance the aircraft deliveries and honour your
> commitment to Frontier if we do not put a rent
> deferral in place.

Dkt. No. 116 Ex. 32.

Frontier puts forward no evidence to show that the dynamics

of the negotiations ever flipped such that AMCK was seeking a

unilateral concession from Frontier. On April 1, 2020, Frontier

asked AMCK via text message: "If we're unable to delay the

deliveries and your is [sic] pulling out of the 5 remaining

A320s we need to know ASAP[.]" Dkt. No. 116 Ex. 31. AMCK

responded to Frontier's request with a phone call and their text

messages thereafter show that the parties continued to discuss

the arrangement within the context of the original negotiations.

The evidence shows that AMCK was consistently willing to provide

adequate consideration in exchange for an amendment to delay

delivery under the Framework Agreement. AMCK confirmed as much

on April 13, 2020, conveying it wanted "to tie the deliveries to

having no outstanding deferrals so it would only work if we

recast the deferral agreement." Dkt. No. 116 Ex. 35.  The

parties' email exchange on April 27, 2020 further confirms that

AMCK's insistence to delay its performance of the Framework

Agreement resulted from its proposed grant of rent deferrals to

Frontier. DKt. No. 116 Ex. 43. Based upon this evidence, no

reasonable fact finder could find that Frontier had reasonable

grounds to believe AMCK would unilaterally not perform the
Framework Agreement.

Frontier's argument that AMCK anticipatorily repudiated
when it failed to give adequate assurances also fails because
Frontier's requests for assurance were procedurally
insufficient. Frontier's demand on April 7, 2020, to which AMCK
responded that it could not say at this stage what it would do
if the delivery deferrals were not granted, fails as a matter of
law because it was made in a phone call and not in writing. See
N.Y. U.C.C. Law § 2-609(1).

Accordingly, the Court finds as a matter of law that there
were no reasonable grounds to demand assurances and, therefore,
AMCK's alleged failure to give assurances is not a repudiation
of the Framework Agreement.

AMCK did not unequivocally vow to perform the Framework
Agreement only if Frontier conceded to extracontractual terms.
Frontier did not have reasonable grounds to fear nonperformance.
No reasonable fact finder could find that the Framework
Agreement was repudiated. The claim is thus dismissed.

**B. Breach of Contract Against AMCK (Claim 2)**

AMCK argues that its termination of the Framework Agreement
was justified by Frontier's non-payment of April and May 2020
rents, which constituted a cross-default under the MSN 10038
Lease and triggered an Event of Default under the Framework

21

Agreement. Frontier claims AMCK was not entitled to terminate the Framework Agreement and its unilateral action to do so was a total breach. Frontier's argument is that AMCK waived its right to declare a default arising from the deferred rent, and thus had no grounds on which to terminate the Agreement.

"A party may, by words or conduct, waive a provision in a contract," including the time or performance or time of payment. Oleg Cassini, Inc. v. Couture Coordinates, Inc., 297 F. Supp. 821, 831-32 (S.D.N.Y. 1969); see Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 585 (2d Cir. 2006) ("A breach of contract may be waived by the non-breaching party."). A waiver is "the voluntary abandonment or relinquishment of a known [contract] right." Randolph Equities, LLC v. Carbon Cap., Inc., 648 F. Supp. 2d 507, 516 (S.D.N.Y. 2009) (quoting Jefpaul Garage Corp. v. Presbyterian Hosp., 462 N.E.2d 1176, 1177 (1984)). The party asserting waiver has the burden of proving the non-breaching party expressed a clear manifestation of its intent to relinquish its right. Id. Because it is a question of intent, whether a party waived is generally a matter of fact. Id.

The Framework Agreement mandates that a party may only waive its rights under the Agreement "by an express waiver or variation in writing. . . and no act or course of conduct or negotiation on the part of such party or on its behalf shall in

any way preclude it from exercising any such right or constitute
a suspension or any variation of any such right."[1] Dkt. No. 94
Ex. 4 § 8.4.1 ("Framework Agreement"). The parties dispute
whether the written requirement applies only to variations or if
it is also applies to waivers. Giving life to the plain meaning
of the unambiguous text, the Court finds that the written
requirement is limited to variations. Generally, in New York,

---

[1] Frontier argues that AMCK's course of dealing during the
negotiation period is evidence of AMCK's consent to the rent
deferral. Frontier primarily relies on the fact that AMCK ceased
sending chase alerts to Frontier to notify it that rent was past
due, as AMCK had allegedly done so habitually for all other
rents that became due proceeding and following the period of
negotiation. Dkt. No. 113 ¶¶ 38, 41, 54-56, 78-79. While a
party, in general, "may waive its contractual rights through its
subsequent course of conduct," Randolph Equities, 648 F. Supp.
2d at 517, the Framework Agreement expressly forbids a waiver by
course of conduct. Frontier's argument thus fails as a matter of
law. See Ronis v. Carmine's Broadway Feast, Inc., No. 10 CIV.
3355 TPG, 2011 WL 4444307, at *3 (S.D.N.Y. Sept. 26, 2011)
("[B]y including a "no-waiver" provision in their contract,
parties may limit the effect of a waiver of contractual rights
through a course of conduct inconsistent with the contract's
terms.").
    Frontier's argument that AMCK breached the Framework
Agreement by continuing to negotiate with it after it allegedly
defaulted fares no better. The Framework Agreement says that a
negotiation will not waive a party's right, and Frontier
provides no authority to override the unambiguous terms of the
contract. Instead, Frontier relies on Oleg Cassini, Inc. v.
Couture Coordinates, Inc., 297 F. Supp. 821 (S.D.N.Y. 1969) for
the proposition that if, during a period of negotiations, a party
waives a contractual provision calling for timely payments, then the
waving party cannot use the fact that there are outstanding
payments as a basis to terminate the contract unless the party
provides notice and an opportunity to cure. However, Oleg
Cassini has no relevance to this case as the contract before the
Court, unlike the contract in Oleg Cassini, excludes relying on
negotiations as a basis for finding a party waived its rights.

there is no requirement that the express waiver be in writing. The express waiver can be "established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage." Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P., 7 N.Y.3d 96, 104, 850 N.E.2d 653 (2006)

There are clear questions of fact whether the parties' oral and written communications amount to an agreement to suspend payments through May 15, 2020, or while the parties were negotiating, or on a month-to-month basis. To begin with, the parties dispute the central communication Frontier relies upon in support of its argument for a waiver—a phone call on April 7, 2020 between Frontier's CFO and AMCK's CEO. Frontier argues that during the call AMCK agreed to the deferral on a month-to-month basis. However, AMCK acknowledges that while the parties discussed the deferral on that call, they did not agree on all material terms (i.e. the repayment period for deferred rent) and thus could not have reached a binding agreement. The parties' internal written communications do not definitively show that an agreement was reached on that phone call, as both sides' reports of the conversation differ. Further, the external written communications between the parties also fail to provide a clear answer whether an agreement was reached to extend the deferrals until May 15, 2020. Those emails and text messages often

reference previous phone calls or respond to a written inquiry with a request for a phone call. The record of the parties' communications is thus inconclusive, precluding a finding of summary judgment dismissing the claim. That is a question that can only be resolved by the finder of fact after an evaluation of the witnesses' credibility on direct and cross-examination and after weighing the totality of the parties' communications.

Accordingly, AMCK's motion for summary judgment dismissing the breach of contract claim is denied.

### C. Breach of Implied Covenant of Good Faith and Fair Dealing Against AMCK (Claim 4)

AMCK argues that Frontier's breach of the implied covenant claim is based on the same allegations and seeks the same damages as its claims for breach of contract of the Framework Agreement and therefore should be dismissed.

Generally, New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Harris v. Provident Life & Acc. Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002). Such a claim may therefore survive dismissal if it is "based on allegations different than those underlying the accompanying breach of contract claim." EUA Cogenex Corp. v. N. Rockland Cent. Sch. Dist., 124 F. Supp. 2d 861, 873 (S.D.N.Y. 2000). A separate cause of action for breach of the duty of good faith and fair dealing may be brought "where

one party's conduct, though not breaching the terms of the contract in a technical sense, nonetheless deprived the other party of the benefit of its bargain." Sauer v. Xerox Corp., 95 F. Supp. 2d 125, 132 (W.D.N.Y. 2000), aff'd, 5 F. App'x 52 (2d Cir. 2001); see Butvin v. DoubleClick, Inc., No. 99 CIV 4727 JFK, 2001 WL 228121, at *8 (S.D.N.Y. Mar. 7, 2001), aff'd, 22 F. App'x 57 (2d Cir. 2001) (recognizing a separate cause of action for breach of the implied duty of good faith may survive "in cases involving efforts by one party to a contract to subvert the contract itself"). Nonetheless, "where the relief sought by the plaintiff in claiming a breach of the implied covenant of good faith is 'intrinsically tied to the damages allegedly resulting from the breach of contract,' there is no separate and distinct wrong that would give rise to an independent claim." Toto, Inc. v. Sony Music Ent., No. 12 CIV 1434 LAK AJP, 2012 WL 6136365, at *14 (S.D.N.Y. Dec. 11, 2012), report and recommendation adopted, No. 12 CIV 1434 RJS, 2013 WL 163826 (S.D.N.Y. Jan. 15, 2013).

Frontier's claim for breach of the implied covenant of good faith and fair dealing rests on the same facts that comprise the basis of its breach of contract claim. Frontier argues that AMCK breached the covenant when it threatened to not perform the Framework Agreement unless Frontier agreed to extracontractual quid pro quo. This argument carries no weight as the Court has

26

already found that the evidence shows that AMCK never threatened to not perform the Framework Agreement. Rather, AMCK offered a conditional grant of rent deferrals. AMCK was not depriving Frontier of the benefit of the Framework Agreement and Frontier could have obtained the full benefit if it had promptly paid the rent. What AMCK would have done in response is speculative and theorizing that it would have not performed is insufficient to grant the relief Frontier seeks.

Alternatively, Frontier asserts that AMCK breached the covenant by using the parties' negotiations over rent deferrals as a pretext to subvert the Framework Agreement. Even if Frontier put forward evidence to show that the breach of good faith claims rests on separate facts from the breach of contract claim, the relief Frontier seeks under both (damages in the amount of no less than $53,000,000) is indistinguishable.

Because a purely duplicative claim cannot survive, Frontier's claim for breach of the implied duty of good faith and fair dealing is dismissed.

### D. Breach of Framework Agreement Against Remaining Defendants

Frontier brings the claims arising out of the Framework Agreement (Claims 1, 2, and 4) against Accipiter, Vermillion, UMB, and Wells Fargo.[2] AMCK argues that dismissal of those claims

---

[2] UMB and Wells Fargo are dismissed because, as Frontier says, they are only nominal defendants and dismissal is warranted

against these defendants is warranted because they are not
signatories to the Framework Agreement and Frontier has not pled
any facts to show they are corporate entities related to AMCK or
to pierce their corporate veil. Frontier contests that
characterization and counters that it sued Accipiter,
Vermillion, UMB, and Wells Fargo in their roles as guarantors,
which have rights arising from the contracts at issue.

But Accipiter and Vermillion only guaranteed the due and
punctual performance of the Lessors' (UMB and Wells Fargo)
obligations under each of the Lease Agreements, not the
Framework Agreement. Frontier tries to cure the issue by arguing
that the Framework Agreement and Lease Agreements should be
considered to form a single transaction and must be read
together.

Under New York law, contemporaneous writings are to be read
together, even if they are not between the same parties, when
they form part of a single transaction, relate to the same
subject matter, and are intended to effectuate the same purpose.
This Is Me, Inc. v. Taylor, 157 F.3d 139, 143 (2d Cir. 1998);
Nau v. Vulcan Rail & Constr. Co., 286 N.Y. 188, 197, 36 N.E.2d

---

when, as here, "a defendant's presence is not necessary to
afford all the requested relief." Benson v. RMJ Sec. Corp., 683
F. Supp. 359, 378 (S.D.N.Y. 1988).

106, 110 (1941) (finding those agreements at issue "were executed at substantially the same time, related to the same subject-matter, were contemporaneous writings and must be read together as one."). It is for the jury to determine whether contemporaneous writings were intended to impose on separate parties the same binding obligations, even though the obligations were defined in different documents. TVT Recs. v. Island Def Jam Music Grp., 412 F.3d 82, 89 (2d Cir. 2005).

The Framework Agreement was executed on March 16, 2020 between Frontier and AMCK. The purpose of the Framework Agreement was to secure financing and leasing of six aircraft, including MSC 10038. Specifically, "AMCK Aviation has agreed to cause the relevant Lessor to purchase each Aircraft from the Manufacturer pursuant to the Purchase Agreement Assignment for the purpose of leasing such Aircraft to Frontier pursuant to the relevant Lease Agreement." Dkt. No. 94 Ex. 4. ¶ 2.5; see also id. ¶ 2.1. The Agreement defines Lessor to mean the Trust Company, solely in its capacity as owner trustee, and identifies UMB Bank, N.A. as the Trust Company. Id. ¶ 1.1.

On the same date, Frontier entered into two additional agreements: an Aircraft Lease Agreement with UMB Bank, N.A. as Lessor to lease MSN 10038, Dkt. No. 94 Ex. 6, a Guaranty Agreement for MSN 10038 with Vermillion to guarantee the due and punctual payment and performance of all of the obligations of

Lessor under the Aircraft Lease Agreement, Dkt. No. 94 Ex. 7. Additionally, Vermillion and UMB Bank entered into a Trust Agreement for MSN 10038 to convey title to MSN 10038 to UMB.

As the agreements are contemporaneous and related to the same transaction, the financing and leasing of MSN 10038, there is sufficient evidence to put before the jury whether the parties intended the Framework Agreement to be binding on Vermillion. Therefore, the claims relating to breach of the Framework Agreement are not dismissed as to Vermillion.

The same can be said for Accipiter. Although Accipiter did not enter into a Lease Agreement for any aircraft governed by the Framework Agreement, Accipiter Holdings DAC, a parent company to Accipiter, Dkt. No. 22 ("Rule 7.1 Corporate Disclosure Statement"), signed a letter of intent to finance six aircraft. Dkt. No. 114 Ex. 1. The letter's key terms were then incorporated into the Framework Agreement. It is thus a question of fact whether the parties intended the writings to be construed as one agreement.

Therefore, the claims that are proceeding against AMCK will also proceed against Accipiter and Vermillion.

**E. Promissory Estoppel (Claim 6)**

"In New York, promissory estoppel has three elements: a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made, and an injury

sustained by the party asserting the estoppel by reason of the reliance." Cyberchron Corp. v. Calldata Sys. Dev., Inc., 47 F.3d 39, 44 (2d Cir. 1995).

Frontier alleges that AMCK promised to defer rents on a month-to-month basis. Regardless of the accuracy of that allegation, Frontier's promissory estoppel claim is based on the same course of events that gave rise to its breach of contract claim and thus is precluded because a separate claim may not give rise to liability "unless a legal duty independent of the contract . . . has been violated." Nungesser v. Columbia Univ., 169 F. Supp. 3d 353, 374 (S.D.N.Y. 2016); see also Grossman v. N.Y. Life Ins. Co., 935 N.Y.S.2d 643, 645 (2d Dep't 2011) (holding that "the existence of valid and enforceable written contracts precludes recovery under . . . promissory estoppel" when the contract and promissory estoppel claims "arise out of the same subject matter").

Frontier argues to the contrary that a promissory estoppel claim can be maintained where, as it is here, it is unclear whether a valid contract governs the dispute. In support of its argument, Frontier relies on MBIA Ins. Corp. v. Patriarch Partners VIII, LLC, 842 F. Supp. 2d 682 (S.D.N.Y. 2012) which held that "[b]ecause there is a dispute concerning [defendant's] obligation to use commercially reasonable efforts to seek the ratings, it would be inappropriate to grant [defendant's] motion

31

for summary judgment on [plaintiff's] claim for promissory
estoppel." Id. at 712. However, that case is inapposite here. It
is an accepted principle that "[p]laintiffs who allege the
existence of a valid contract may nonetheless plead the
alternative theor[y] of promissory estoppel . . . when the
defendant does not concede the enforceability of such contract."
Personal Watercraft Prod. SARL v. Robinson, 2017 WL 4329790, at
*11 (S.D.N.Y. Sept. 1, 2017). But the enforceability of the
Framework Agreement is not at issue here. It is undisputed that
the Framework Agreement is a valid and enforceable contract. The
issue presented is whether AMCK waived its right to assert
nonpayment of April and May rents constituted a default. AMCK's
motion to dismiss the promissory estoppel claim is therefore
granted.

### 2) Aircraft Lease Agreements

Frontier asserts two claims for breach of contract against
AMCK, Vermillion, and Accipiter for breach of the 15 Aircraft
Lease Agreements. Because the evidence cannot sustain either
claim, both are dismissed as a matter of law.

### A. Breach of Contract (Claim Three)

AMCK, through various subsidiaries and owner trustees, owns
and leases back fifteen aircraft, including MSN 10038, to
Frontier. Each arrangement is governed by a separate Aircraft
Lease Agreement. The Lease Agreement for MSN 10038 states that

an Event of Default occurs when Frontier "fails to pay (i) any
Basic Rent or Security when due . . ., or (ii) any other sum due
from it under this Agreement or any other Operative Document . .
. in the currency and in the manner stipulated within five (5)
Business Days of written notice of such failure from Lessor."
Dkt. No. 116 Ex. 10 ("MSN 10038 Lease Agreement") § 16.1(a).
Operative Documents include the Lease Agreements of the 14 other
aircraft. Id. § 1.1. Under the Framework Agreement, an Event of
Default occurs when "Frontier fails to pay any amount due under
any of the Transaction Documents," which includes each Operative
Document as defined In the MSN 10038 Lease Agreement.  Dkt. No.
116 Ex. 7 ("Framework Agreement") §§ 1.1, 6.1.1.

Frontier, therefore, argues that the fifteen AMCK-
affiliated lessors wrongfully breached their respective Lease
Agreements when they declared Frontier's suspension of rents
under the 14 Lease Agreements (excluding the MSN 10038 Leases)
amounted to an Event of Default that triggered the cross-default
provision under the Agreement for MSN 10038 and the Framework
Agreement. In other words, Frontier argues that defendants
breached the Fifteen Leases Agreements when they wrongfully
declared Frontier to be in default of them and used that as a
basis to abandon the remaining obligations under the Framework
Agreement.

Even assuming Frontier's characterization of the events to
be true, there is no evidence that defendants breached the Lease
Agreements. A breach of contract "is the unexcused failure" to
"carry[ ] out the contract by doing what it requires or
permits." Nasdaq, Inc. v. Exch. Traded Managers Grp., LLC, 431
F. Supp. 3d 176, 240 (S.D.N.Y. 2019). Defendants' alleged
refusal to finance and lease the five aircraft as specified in
the Framework Agreement could constitute a failure to perform
under the Framework Agreement, but not under the Lease
Agreements. Frontier points to no provision in the Lease
Agreements that require defendants to perform under the
Framework Agreement. The obligations made under the Lease
Agreements and Framework Agreements cannot be conflated and a
breach of one cannot be said to be a breach of the other unless
such integration is explicitly agreed to by the parties in the
contracts.

The only action that defendants took under the Lease
Agreement is to declare Frontier to be in default. But a
declaration that the opposing party defaulted is alone
insufficient to warrant a breach by the non-defaulting party,
especially when the non-defaulting party did not use the alleged
default as grounds to anticipatorily breach the agreement.

Because there is no underlying failure to perform, there is
no evidence that Accipiter or Vermillion breached their

34

guarantees, which apply only when the lessor fails to make due and punctual payments or perform all its obligations under the Lease Agreement. Dkt. No. 91 Exs. 3, 7 § 1. Because there is no evidence that defendants failed to perform under the Lease Agreements, the claim for beach of them is dismissed as a matter of law.

### B. Breach of the Covenant of Quiet Enjoyment (Claim Five)

The covenant of quiet enjoyment is the "promise by the lessor that it will not interfere with the rights granted" under a lease. Trans Pac. Leasing Corp. v. Aero Micronesia, Inc., 26 F. Supp. 2d 698, 706 (S.D.N.Y. 1998). "To establish a breach of the covenant of quiet enjoyment, a tenant must show either an actual or constructive eviction." Grammer v. Turits, 706 N.Y.S.2d 453, 455-56 (N.Y. App. Div. 2000). "A constructive eviction occurs where the landlord's wrongful acts substantially and materially deprive the tenant of the beneficial use and enjoyment of the leased premises." Id.

In the Complaint, Frontier alleges that by wrongfully claiming an Event of Default under the Lease Agreements and asserting default remedies, including the termination of the Framework Agreement, defendants improperly interfered with Frontier's use of its entire aircraft fleet, including the existing fifteen AMCK leased aircraft. But there is no evidence that Frontier has been prevented from using or enjoying the

35

fifteen aircraft. Frontier clings to the theory that the lessors might in the future exercise their termination rights under the Lease Agreements, including by repossessing the aircraft. That threat carries no weight. It is unfounded as defendants acknowledge they no longer have the right to terminate the Lease Agreements because Frontier has paid all rent on the aircraft.

In its Opposition to Defendants' Motion for Summary Judgment, Frontier argues for the first time that it was constructively evicted from the five remaining Framework Agreement aircraft. However, as there were no leases for those aircraft, there was no covenant of quiet enjoyment to break. The claim is therefore dismissed.

### III. Fraud

Frontier alleges that AMCK, to cover up its anticipatory breach, devised a scheme whereby it falsely represented that it would consider retracting its repudiations and grant rent deferrals if Frontier would defer the delivery dates in order to induce Frontier into not timely paying rent. AMCK argues that dismissal of the fraud claim is warranted because it is duplicative of the breach of contract claim.

"Under New York law, the five elements of fraud are '(1) a material misrepresentation or omission of fact (2) made by [a] defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff;

36

and (5) resulting damage to the plaintiff.'" Loreley Fin.
(Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 13 F.4th 247, 259
(2d Cir. 2021). Because alleged fraudulent representations are
in essence restatements of a plaintiff's claim for breach of
contract, "a cause of action for fraud will not arise when the
only fraud charged relates to a breach of contract." Value Time,
Inc. v. Windsor Toys, Inc., 700 F. Supp. 6, 7 (S.D.N.Y. 1988)
(quoting Trusthouse Forte (Garden City) Mgt., Inc. v. Garden
City Hotel, Inc., 483 N.Y.S.2d 216, 218 (1st Dept. 1984). Thus,
for a fraud claim to be maintained alongside a breach of
contract claim, the plaintiff must either "'(i) demonstrate a
legal duty separate from the duty to perform under the contract;
or (ii) demonstrate a fraudulent misrepresentation collateral or
extraneous to the contract; or (iii) seek special damages that
are caused by the misrepresentation and unrecoverable as
contract damages.'" IMG Fragrance Brands, LLC v. Houbigant,
Inc., 679 F. Supp. 2d 395, 409 (S.D.N.Y. 2009) (quoting
Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98
F.3d 13, 20 (2d Cir. 1996)).

Frontier argues that its fraud claim is not duplicative of
its breach of contract claim and can be sustained because AMCK
made a misrepresentation that was collateral to the contract.
But being collateral to the contract is alone insufficient for a
finding of fraud. The statement must also "serve[] as an

inducement for the contract." Rouse v. Elliot Stevens, Ltd., 2016 WL 8674688, at *5 (S.D.N.Y. June 24, 2016).

Frontier alleges that AMCK made a false representation that it would retract its repudiation of the Framework Agreement if Frontier could achieve extracontractual delivery deferrals with Airbus, and in the meantime, Frontier did not need to pay rent. In other words, Frontier is claiming that it was induced to allegedly breach the Framework Agreement. That is not an inducement extraneous from the contract.

Therefore, the claim for fraud is dismissed as duplicative of the breach of contract claim.

### CONCLUSION

Defendants' motion for summary judgment is denied as to the second claim for breach of the Framework Agreement against AMCK, Accipiter, and Vermillion, but is granted as to all other claims.

So Ordered.

Dated: New York, New York
       July 6, 2023

Louis L. Stanton
LOUIS L. STANTON
U.S.D.J.

04A3FRO1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   FRONTIER AIRLINES, INC.,

4              Plaintiff,

5         v.                          20 Civ. 9713 (LLS)

6   AMCK AVIATION HOLDINGS IRELAND
    LIMITED, ACCIPITER INVESTMENT
7   4 LIMITED, VERMILLION AVIATION
    (TWO) LIMITED,
8
               Defendants.
9
    ------------------------------x
10                                   Bench Trial

11                                   New York, N.Y.
                                     April 10, 2024
12                                   11:00 a.m.

13  Before:

14             HON. LOUIS L. STANTON,

15                                   District Judge

16                    APPEARANCES

17  LANE POWELL PC
         Attorneys for Plaintiff
18  BY:  DAVID G. HOSENPUD
         AARON SCHAER
19
    CLIFFORD CHANCE US LLP
20       Attorneys for Defendants
    BY:  JEFF E. BUTLER
21       JOHN P. ALEXANDER
         RISHIKA JIKARIA
22       GINA CROSBY

23

24

25

O4A3FRO3

|     |                                                                      |
|-----|----------------------------------------------------------------------|
| 1   | MR. HOSENPUD:  Your Honor, our next witness will be                  |
| 2   | Dr. Kevin Neels, and I want to just alert the Court that by          |
| 3   | agreement between the parties, to accommodate the defendant's        |
| 4   | expert, we agreed that defendant's expert would follow the           |
| 5   | testimony of Dr. Neels, our expert, in this period of time,          |
| 6   | today and tomorrow.  Just for efficiencies due to defendant's        |
| 7   | expert being unavailable the following week.                         |
| 8   | THE COURT:  That's fine.                                             |
| 9   | MR. HOSENPUD:  Thank you, sir.                                       |
| 10  | MR. BUTLER:  Your Honor, I'd just like to raise to                   |
| 11  | address another housekeeping issue with respect to Dr. Neels,        |
| 12  | the damages expert for the plaintiff.                                |
| 13  | We raised this in our trial brief.  We have a Daubert                |
| 14  | objection, a rule, Federal Rule of Evidence 702 objection to         |
| 15  | the admission of his opinions.                                       |
| 16  | Of course, this being a bench trial, there are a lot                 |
| 17  | of ways in which this could be addressed, but I did want to          |
| 18  | rise before Dr. Neels takes the stand to move to exclude             |
| 19  | Dr. Neels, based on the principles of Rule 702 and Daubert.          |
| 20  | I'm happy to make some argument on that point, we could reserve      |
| 21  | it for later, whatever the Court would prefer.                       |
| 22  | THE COURT:  Well, I've read your submissions on that                 |
| 23  | as part of your briefs, and I don't see any chance of a Daubert      |
| 24  | motion succeeding.  There are various arguments that could be        |
| 25  | made pro and con to Dr. Neels' product, but I think it's a real      |

O4A3FRO3                    Neels - Direct

1    enough issue that it should be hammered out in court.  And we

2    can start that process.

3             MR. BUTLER:  Thank you, your Honor.

4             THE COURT:  But the Daubert motion is denied.

5             MR. BUTLER:  Thank you, your Honor.

6             THE COURT:  Thanks.

7     JOHN KEVIN NEELS,

8         called as a witness by the Plaintiff,

9         having been duly sworn, testified as follows:

10   DIRECT EXAMINATION

11   BY MR. HOSENPUD:

12   Q.  Good afternoon, Dr. Neels.

13   A.  Good afternoon.

14   Q.  Dr. Neels, did my office retain you to analyze Frontier

15   Airlines' damages in this case?

16   A.  It did.

17   Q.  Could you briefly outline for the Court your employment

18   history, qualifications, and higher education.  Starting first

19   with your employment history.

20   A.  I was, right out of graduate school, I was employed in the

21   transportation practice of the firm now known as KPMG.

22   Subsequently I worked in the transportation practice at the

23   Urban Institute, a policy research firm, and at the RAND

24   Corporation, another policy research firm.  Subsequent to that

25   I worked in a number of economic consulting firms.  I was the

ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/14/24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -X
FRONTIER AIRLINES, INC.,

                    Plaintiff,                    20 Civ. 9713 (LLS)

        - against -                               OPINION & ORDER

AMCK AVIATION HOLDINGS IRELAND
LIMITED, ACCIPITER INVESTMENT 4
LIMITED, VERMILLION AVIATION
(TWO) LIMITED, WELLS FARGO TRUST
COMPANY, N.A., solely in its
capacity As OWNER TRUSTEE, and
UMB BANK, N.A., solely in its
capacity as OWNER TRUSTEE,

                    Defendants.
- - - - - - - - - - - - - - - - - - -X

### Introduction

     This is a breach of contract action between plaintiff

Frontier Airlines, Inc. ("Frontier"), a commercial passenger

airline, and defendant AMCK Aviation Holdings Ireland Limited

("AMCK"), an aircraft leasing company. AMCK buys and leases

aircraft through various affiliates, subsidiaries, and owner

trustee entities, including Accipiter Investments 4 Limited

("Accipiter") and Vermillion Aviation (Two) Limited

("Vermillion"), the other defendants in this case. In late 2019,

AMCK and Frontier entered into the Framework Agreement, which

required AMCK to purchase six new Airbus aircraft and lease them

back to Frontier.

     After the COVID-19 pandemic severely limited air travel in

March of 2020, the parties began negotiating changes to the

1

Framework Agreement, including deferral of monthly aircraft
rents. In May of 2020, after the parties failed to reach a
formal agreement, AMCK held Frontier in default and terminated
the Framework Agreement. Frontier brought this action alleging
breach of the Framework Agreement, among other claims that were
dismissed on summary judgment.

After a bench trial, and for the reasons that follow, the
Court finds that AMCK breached the Framework Agreement, and
Accipiter and Vermillion are proper defendants.

## Factual Findings

All background facts are incorporated from the Summary
Judgment Opinion & Order (Dkt. No. 123), and familiarity is
assumed. The findings of fact necessary to resolve the remaining
issues are made as follows.

### I.   Parties

Frontier is a Colorado-headquartered passenger airline that
operates commercial passenger aircraft leased from various
aircraft lessors. Agreed Findings of Fact ¶ 1 ("AFF") (Dkt. No.
135). During the relevant timeframe, Jimmy Dempsey was
Frontier's Executive Vice President and Chief Financial Officer,
and he is currently Frontier's President. Id. ¶ 2. Spencer
Thwaytes was Frontier's former Vice President and Treasurer,
reporting to Mr. Dempsey. Id. Robert Fanning was Frontier's
Director of Fleet, responsible for overseeing the making of rent

2

payments and reporting to Mr. Dempsey. Id. He is currently
Frontier's Vice President for Fleet. Id.

During the relevant timeframe, defendant AMCK was an
aircraft leasing company organized under the laws of Ireland and
with its principal place of business in Ireland. Id. ¶ 3. Paul
Sheridan was AMCK's Chief Executive Officer, and Jane
O'Callaghan was the Chief Commercial Officer. Id. ¶ 4. Gerald Ma
was an Executive Committee Member at CK Asset Holdings, which
was AMCK's largest shareholder, and a member of the AMCK Board
of Directors. Id. Francis Lee was a Chief Manager of Corporate
Business Development at CK Asset Holdings, reporting to Mr. Ma,
and served as an alternative member of the AMCK Board of
Directors. Id.

## II.  Framework Agreement

Sale and leaseback ("SLB") arrangements are a common method
used by airlines to finance new aircraft acquisitions. Id. ¶ 5.
Frontier relies on SLBs for 100% of its fleet. Id. An SLB
arrangement is comprised of multiple parts: First, an airline
(such as Frontier) has an existing purchase agreement with an
airline manufacturer (such as Airbus), which obligates the
airline to take delivery of aircraft pursuant to a delivery
schedule. The airline makes pre-delivery payments ("PDP") to the
manufacturer as the construction of each aircraft progresses.
Id. ¶ 6.

3

Second, around six months prior to an aircraft delivery,
the airline enters an SLB arrangement with an aircraft lessor
(such as AMCK or an affiliate), in which the lessor agrees to
(i) buy the aircraft from the manufacturer when the aircraft
delivers and (ii) simultaneously lease the aircraft to the
airline in return for monthly rent payments. Id. The purchase
price and rent payments of the aircraft are negotiated solely
between the airline and the lessor. Id.

Third, shortly before or on the date of delivery, the
lessor pays the purchase price to the manufacturer and takes
title to the aircraft, the airline accepts delivery of the
aircraft from the lessor under the lease, and the airline begins
making monthly rent payments to the lessor. Id. Depending on the
purchase price, the airline may receive a refund from the
manufacturer for PDP overpayments. Id. Until the lessor pays the
manufacturer, the airline remains responsible for purchasing the
aircraft and will not receive any PDP overpayment refunds. Id.
¶ 7. If the lessor fails to pay, the airline must use its own
funds, enter an SLB arrangement with another lessor, or risk
defaulting on its purchase agreement with the manufacturer. Id.

Frontier is a party to the Airbus Purchase Agreement (with
amendments, "Airbus Agreement") with Airbus, whereby Frontier is
obligated to purchase more than 150 aircraft, and make PDPs,
according to a decade-long schedule. Id. ¶ 8. By the end of

4

September 2019, AMCK, through subsidiaries and owner trustees, owned and leased 14 aircraft to Frontier that were delivered under the Airbus Agreement pursuant to 14 individual lease agreements ("Original Leases"). Id. ¶ 9; Joint Exhibit 2 ("JX") (MSN 8402 Lease); JX-7 (MSN 9177 Lease).

On September 10, 2019, Frontier and AMCK's affiliate, Accipiter Holdings, DAC, the parent company of Accipiter, signed a letter of intent to enter into a sale and leaseback arrangement for six additional aircraft under the Airbus Agreement. AFF ¶ 12; JX-5. On March 16, 2020, Frontier and AMCK executed the Framework Agreement, which incorporated the key terms from the September 2019 letter of intent. AFF ¶ 13; JX-24. The Framework Agreement obligated AMCK to purchase six aircraft and lease them back to Frontier through Owner Trustee/Lessor UMB Bank, N.A., according to the following schedule: (i) three aircraft in March 2020; (ii) one in May 2020; (iii) one in June 2020; and (iv) one in August 2020. AFF ¶ 7; JX-24, Schedule 1.

Also on March 16, 2020, AMCK purchased the first of these six aircraft, MSN 10038. AFF ¶ 7. AMCK, by and through its affiliates, executed corresponding lease documents with Frontier. Id. ¶ 14. In particular, Vermillion executed a trust agreement with UMB, relating to the ownership of MSN 10038. Id.; JX-25 (MSN 10038 Trust Agreement). UMB, not in its individual capacity but solely as owner trustee, executed a corresponding

5

lease with Frontier. AFF ¶ 14; JX-29 (MSN 10038 Lease).
Vermillion provided a guaranty in favor of Frontier. AFF ¶ 14;
JX-26 (MSN 10038 Guaranty). Under the Framework Agreement and
resulting lease documents, AMCK paid Airbus $51 million for MSN
10038, and Frontier agreed to pay AMCK $269,525.94 in monthly
rent. AFF ¶ 15. Frontier received delivery of MSN 10038 from
Airbus on this same day. Id. ¶ 16. Under the Framework
Agreement, the five remaining aircraft would be purchased at the
same price and leased at a similar monthly rent. Id. ¶ 17.

The contracts at issue — including the Framework Agreement,
as well as the Lease Agreements, Trust Agreements, Guarantees,
and all other "Operative Documents" (as defined in the Framework
Agreement) relating to the 15 aircraft under lease between
Frontier and AMCK — are deeply intertwined and make numerous
cross-references to each other. JX-1-4; JX-7; JX-24, §§ 1.1,
2.1.1, 3.3.1; JX-25, §§ 1, 2, 8.01-.02, 9.01(b); JX-26 at 1,
§ 1; JX-29 at 1, 15.

### III. Rent Deferral Agreement

Also on March 16, 2020, Frontier sent a letter to AMCK
requesting a temporary deferral of monthly rent payments under
the Original Leases and the MSN 10038 Lease due to the COVID-19
pandemic. JX-28. Frontier requested a voluntary (i) one-time,
three-month aircraft rent deferral on the 15 aircraft under
lease; and (ii) return of one-month's security deposit for each

6

aircraft. Id. Frontier explained it would fully repay those
amounts, with interest, over a nine-month period starting on
July 1, 2020. Id. Frontier also represented that it had a
"strong balance sheet with $685 million of free cash" in order
to assure AMCK that it could make its payments, with interest,
when the proposed deferral expired. Id.

Deferral requests of this nature were common given the
sudden impact of the COVID-19 pandemic on air travel. Frontier
sent concession request letters to all of its lessors, and AMCK
received concession request letters from 32 of its 34 airline
partners, prompting AMCK to create an inter-company deferral
team. JX-12; JX-15; JX-36.

As part of the negotiations, AMCK requested that Frontier
achieve delivery delays with Airbus for the upcoming aircraft.
JX-61. This was a substantial request for Frontier. The Airbus
contract was its "single largest contract," and Frontier had
$250 million of PDPs on deposit with Airbus. Trial Transcript
522:23-25 ("Tr."). Airbus also had little incentive to grant
deferrals, as the aircraft were nearly complete, and Airbus had
no space at its Mobile, Alabama assembly facility to store them.
JX-60; Tr. 50:14-23. When Frontier initially asked for a
delivery deferral, Airbus's "immediate reaction ha[d] been to
threaten Frontier with default" of the greater Airbus Agreement.
JX-61; Tr. 76:7-13. If Airbus declared a default, Frontier would

7

lose all of its PDP payments for upcoming aircraft, and it "could cripple the airline to where it may potentially put [it] out of business" and need to seek Chapter 11 bankruptcy protection. JX-190 at 85-90; JX-17 at 2-3; JX-65; Tr. 524:4-7. Delivery delays would benefit AMCK by lessening and delaying its payment obligations. JX-40; JX-44; JX-55.

## IV. Waiver

To reach a formal agreement on rent deferral with AMCK, Frontier needed additional time to negotiate with Airbus. On April 6, Sheridan sent an email to Dempsey granting a waiver of timely rent payment for ten business days, from April 6, 2020, to April 21, 2020. JX-60. Sheridan stated that AMCK "won't take any actions or call any defaults linked to non payment of rents on any aircraft where the rent is due." Id. Sheridan specified that he was "[m]indful of the time it might take [Frontier] to reach agreement with Airbus or to make some other arrangements and therefore of the ability for us to reach a deferral agreement." Id.

Dempsey and Sheridan spoke again on April 7, 2020, this time by phone. Tr. 529:8-9. Dempsey explained the complex negotiation process with Airbus and the fact that the Mobile, Alabama factory would be closed until at least April 28, 2020, meaning that the next aircraft delivery would not be until May at the earliest. Tr. 529:18-25; Tr. 530:1-6. These factors

8

necessitated a deferral beyond the initial ten-day period, which was set to end on April 21, 2020. Tr. 530:7-13. Dempsey formally asked Sheridan to move the deferral to a month-to-month basis to give Frontier time to get an agreement in place with Airbus and, in turn, reach a formal rent deferral with AMCK. Tr. 530:13-17. Dempsey said that Sheridan understood the need for time and agreed to a month-to-month deferral, with no outstanding rent at the point of the next aircraft delivery. Tr. 532:9-19; Tr. 534:18-21.

Immediately after, Dempsey confirmed this with his team, texting Fanning and Thwaytes, "Just spoke to Paul Sheridan. He has agreed to do the deferral on a month to month basis." JX-73. Thereafter, Sheridan and other Frontier associates continued to negotiate with Airbus about delivery delays, inform AMCK of their progress, and make offers to become current on rent.

On April 8, 2020, Sheridan emailed Gerald Ma, Francis Lee, and other representatives of AMCK's shareholder about the April 7 phone call, explaining that Frontier "asked for us to do the deferral on a month by month basis (they are also conscious that they don't want to be in default with us). Since the next delivery isn't going to be in April now that the Mobile plant is shut I think we can agree to this and give them a bit more time to work with Airbus." JX-76.

9

AMCK associates referenced this informal rent deferral agreement multiple times thereafter. For example, on April 30, Mr. Sheridan cited "an informal deferral pending agreement with Airbus on delivery delays." JX-121. AMCK also knew Frontier did not want to be in default, and Frontier repeatedly offered to become current on all rent. AMCK associates did not once ask Frontier to pay or express that they might be in default.

After those discussions about a waiver, the parties continued to engage in substantial negotiations over a formal rent deferral agreement from March through May of 2020. They exchanged numerous proposals, and both parties understood that any deferral of rent pursuant to this request would be documented in a written agreement. JX-28; JX-53; JX-73; JX-79. However, they never reached a formal written agreement on rent deferral. Tr. 625:6-8.

## V.    Termination

On May 8, 2020, AMCK sent Frontier a Notice of Termination due to non-payment of rent in April 2020. JX-146. This was based on the interconnection of AMCK and Frontier's various contracts: Frontier's alleged failure to pay rent on the Original Leases created a breach of the MSN 10038 Lease and a cross-default under the Framework Agreement. Id.; JX-2; JX-7; JX-24; JX-29. On May 13, 2020, three business days and five calendar days later,

10

Frontier paid all outstanding rent. JX-14; JX-148; JX-150-51. AMCK nonetheless terminated the Framework Agreement and did not consummate the SLB arrangements for the remaining five aircraft. JX-14; JX-148; JX-150-51.

As a result of this termination, Frontier began looking for alternate leasing companies to finance the five remaining aircraft. Given the changed market conditions, their proposed terms were substantially worse for Frontier than those in the Framework Agreement. PX-6; JX-156-59; Tr. 107:10-15. In fact, AMCK itself reached out to Frontier on June 18, 2020 and offered to enter SLBs for the three July 2020 aircraft. PX-6. The terms were much less favorable for Frontier than those in the Framework Agreement, and AMCK's proposal was "conditioned on the release and waiver of any potential legal claims by Frontier arising from the termination of the Framework Agreement." Id.; Tr. 108:17-110:14.

Frontier ultimately found other lessors to enter SLB arrangements for all five remaining aircraft. It contracted with China Development Bank (CDB) for the three July aircraft and Jackson Square Aviation (JSA) for the remaining two aircraft. JX-156; JX-158-59; PX-10; JX-162; JX-164; JX-166-69. While the terms were better than those offered by AMCK on June 18, 2020, they were still much worse for Frontier than the terms of the

11

Framework Agreement. JX-156; JX-158-59; PX-10; JX-162; JX-164; JX-166-69.

## Procedural History

Frontier brought this suit to recover losses from AMCK's termination of the Framework Agreement. This Court dismissed all of Frontier's claims on summary judgment, except for its claim against AMCK, Accipiter, and Vermillion for breach of the Framework Agreement. A bench trial took place from April 8 to 16, 2024, to resolve whether AMCK breached that contract, with a specific focus on whether it waived its right to timely payment during an April 7, 2020 phone call or in other communications.

## Legal Standards

### I.   Waiver

A right can be waived under the Framework Agreement only "by an express waiver or variation in writing...and no act or course of conduct or negotiation on the part of such party or on its behalf shall in any way preclude it from exercising any such right or constitute a suspension or any variation of any such right." JX-24, § 8.4.1. The Framework Agreement further states that the "provisions of this Agreement shall not be varied otherwise than by an instrument in writing executed by or on behalf of AMCK Aviation and Frontier." Id. § 8.4.2.

"A party may, by words or conduct, waive a provision in a

12

contract," including the time of performance or time of payment. Oleg Cassini, Inc. v. Couture Coordinates, Inc., 297 F. Supp. 821, 831-32 (S.D.N.Y. 1969); see Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 585 (2d Cir. 2006) ("A breach of contract may be waived by the non-breaching party."). A waiver is "the voluntary abandonment or relinquishment of a known [contract] right." Randolph Equities, LLC v. Carbon Cap., Inc., 648 F. Supp. 2d 507, 516 (S.D.N.Y. 2009) (alteration in the original) (quoting Jefpaul Garage Corp. v. Presbyterian Hosp., 462 N.E.2d 1176, 1177 (1984)). The party asserting waiver has the burden of proving the non-breaching party expressed a clear manifestation of its intent to relinquish its right. Id. Because it is a question of intent, whether a party waived is generally a matter of fact. Id. "[A]ny alleged subjective and unstated intent" is irrelevant. Natale v. Ernst, 63 A.D.3d 1406, 1409 (2009). An express waiver can be "established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage." Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P., 7 N.Y.3d 96, 104 (2006). On Summary Judgment, this Court held that an express waiver need not be in writing. Dkt. No. 123 at 23.

When a waiver is supported by consideration or reasonable and justified reliance, it "form[s] a new contract or a binding

13

modification of the original contract and may not be retracted without mutual consent." 13 Williston on Contracts § 39:20 (4th ed.). "Where an executory contract fixes the time within which it is to be performed and performance within that time is waived by the parties to the agreement, neither party can thereafter rescind the contract on account of such delay without notice to the other." Sherwood v. Gordon Bros., 116 N.Y.S.2d 306, 308 (City Ct. 1952). "The notice must be clear, distinct and unequivocal; fix a reasonable time within which to act; and inform the other party that failure to perform by that date will be considered a default." Hidden Brook Air, Inc. v. Thabet Aviation Int'l Inc., 241 F. Supp. 2d 246, 270 (S.D.N.Y. 2002); see also N.Y. U.C.C. Law § 2-A-208(4) (McKinney 2023) ("A party who has made a waiver affecting an executory portion of a lease contract may retract the waiver by reasonable notification received by the other party that strict performance will be required of any term waived, unless the retraction would be unjust in view of a material change of position in reliance on the waiver."); U.C.C. § 2-209(5) (2022) (same); 13 Williston on Contracts § 39:20 (4th ed.) ("[H]aving once waived strict compliance with the terms of a contract, a party can assert its right to strict compliance in the future only by notifying the other party of its intent to do so and by allowing a reasonable time for the other party to comply.").

14

"The requirement of reasonable notice to the party whose nonperformance has been excused by waiver, as well as a reasonable opportunity to comply, are generally not obviated by an antiwaiver clause in the parties' contract." 13 Williston on Contracts § 39:20 (4th ed.).

## II. **Proper Defendants**

"It is hornbook law that a non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract." Ferring B.V. v. Allergan, Inc., 4 F. Supp. 3d 612, 625 (S.D.N.Y. 2014) (internal quotation marks omitted). However, under New York law, contemporaneous writings are to be read together, even if they are not between the same parties, when they form part of a single transaction, relate to the same subject matter, and are intended to effectuate the same purpose. This Is Me, Inc. v. Taylor, 157 F.3d 139, 143 (2d Cir. 1998); Nau v. Vulcan Rail & Constr. Co., 286 N.Y. 188, 197 (1941) (finding those agreements at issue "were executed at substantially the same time, related to the same subject-matter, were contemporaneous writings and must be read together as one"). It is for the factfinder to determine whether contemporaneous writings were intended to impose on separate parties the same binding obligations, even though the obligations were defined in different documents.

15

TVT Recs. v. Island Def Jam Music Grp., 412 F.3d 82, 89 (2d Cir.
2005).

## Discussion

### I.   AMCK Waived Its Right to Timely Payment.

There is no debate that the parties did not reach a formal
deferral agreement. Both sides agree that it is common industry
practice to document formal rent deferral agreements in writing,
and the Framework Agreement requires as much. JX-24, § 8.4.2;
JX-28; Tr. 624:23-625:1. A formal deferral agreement also would
have required "a manifestation of mutual assent sufficiently
definite to assure that the parties are truly in agreement with
respect to all material terms," including how long the rent
deferral would last, what the payment period would be, and what
the interest rate would be. Stonehill Cap. Mgmt., LLC v. Bank of
the W., 28 N.Y.3d 439, 448-49 (2016) (internal quotation marks
omitted). All parties acknowledge that they did not solidify
these material terms orally or in writing. However, they
disagree over whether there was a waiver of timely payment in
place while the parties were negotiating the specific contours
of the deferral agreement.

There is no dispute that AMCK instituted an initial waiver
on April 6, 2020. In an email to Dempsey, Sheridan stated
clearly that they "won't take any actions or call any defaults
linked to non payment of rents on any aircraft where the rent is

16

due from today to 21 April." JX-60. Sheridan confirmed this at
trial, explaining that, "because there were rent payments that
were due on that day, and because the discussions with Airbus
were going to be difficult, and take a little bit of time, that
we grant them a 10-day grace period where we said we would not
take action under the lease agreements or the other
agreements...if there were no rent payments during that 10
business day period." Tr. 672:19-25. The central debate is
whether that waiver was modified – or whether a new waiver was
created – during a phone call between the same parties the next
day. After testimony from both key witnesses, the Court finds
that it was.

Dempsey, a generally reliable and honest witness, recounted
his call with Sheridan in detail. After explaining the
intricacies of Frontier's negotiations with Airbus, and the
resulting delivery delays from the closing of the Mobile
factory, Dempsey asked Sheridan for a month-to-month waiver
while negotiations were ongoing. Tr. 525:13-15; Tr. 529:18-
530:17; Tr. 612:10-14. Dempsey confidently stated that Sheridan
had agreed: "My clear understanding coming out of this call was
that we had a deferral in place, and the earliest date that we
had to pay the rent was at the point of the next aircraft
delivery. That was my clear understanding at that time."
Tr. 534:18-21. While Dempsey "certainly expected the formal

17

agreement that we were negotiating with Airbus and also the
formal agreement that we would have negotiated with AMCK" to be
in writing, he did not feel this informal waiver needed to be
written: "I have known Paul for sometime, and I trusted that his
word was good. He was the chief executive of AMCK...It didn't
need to be documented in a written agreement. It was an
agreement between two principals that were parties to it." Tr.
624:17-25.

Dempsey's actions after the call confirm this account, as
he texted Thwaytes and Fanning, "Just spoke to Paul Sheridan. He
has agreed to do the deferral on a month to month basis." JX-73.
Thereafter, Dempsey and his team continued to negotiate with
Airbus about delivery delays, inform AMCK of their progress, and
work towards a formal agreement with AMCK - all consistent with
there being a month-to-month deferral in place.

Sheridan, on the other hand, contested this account. He
testified that he did not remember what his response to
Dempsey's request for a month-to-month deferral was or whether
he told Dempsey that a written agreement would be entered.
Tr. 728:10-16. However, he said that he did not intend to waive
any rights to payment. Tr. 677:3-7. Sheridan claimed that his
email to the shareholder's representatives after the call
confirmed that he did not agree to a month-to-month deferral, as
he described it as something that "we *can* agree to," not that

18

they had agreed to. JX-76 (emphasis added). He also stated that
he would have needed to receive higher approval from the
shareholder before implementing that waiver. Tr. 680:2-8.

Sheridan's account is the less credible one for a few
reasons. First, it is notably lacking in detail, as he did not
recall the conversation with nearly as much specificity as
Dempsey did. Sheridan's shareholder approval argument falls flat
because there is no indication that he received shareholder
approval for the April 6 waiver already in place. JX-63; JX-65.
Sheridan also never suggested to Dempsey that he lacked
authority as chief executive to grant a month-to-month deferral.
Tr. 714:16-18; Tr. 728:17-20.

Additionally, Sheridan and other AMCK employees'
communications and actions after April 7 reveal that they did in
fact understand that a longer deferral was in place, even if
Sheridan's initial email to the shareholder used less definite
language. On April 30, Sheridan clearly referenced "an informal
deferral pending agreement with Airbus on delivery delays" in an
internal email to Ma and others. JX-121. When asked at trial
what he meant by an "informal deferral," Sheridan claimed he was
referring to the April 6 deferral. Tr. 692:16-19. However, this
is inconsistent considering that the April 6 deferral had
expired on April 21, 9 days before that email was sent.

19

Additionally, Dempsey and Sheridan had repeated contact after April 7, and Sheridan did not once attempt to clarify what he meant on that call. On April 27, Dempsey told Sheridan he was operating under the impression that Frontier just needed to have no outstanding payments at the time of the next delivery, and Sheridan did not dispute that. JX-111. Similarly, on April 29, Fanning told O'Callaghan that one solution to their negotiation was that the "current rent deferral would stay in place," and she said nothing to alter that understanding. JX-17. AMCK associates knew Frontier was continuing to negotiate with Airbus, and they continued to negotiate with Frontier themselves, yet they did not once tell Frontier to cease negotiations because they were in default. Frontier also repeatedly offered to pay, with AMCK consistently declining its offers and failing to send any chase alerts or payment requests. JX-120-21; JX-123; PX-7-8.

AMCK argues that, to the extent anything said on the April 7 call could be construed as an express waiver, that waiver was withdrawn on April 9, when AMCK sent a draft forbearance agreement indicating that, absent agreement, AMCK expected Frontier to be bound by the lease terms. JX-79. However, this is also inconsistent, as the communications referenced above, which clearly allude to the existence of an informal rent deferral, all occurred well after that April 9 email.

20

While the Framework Agreement forbids looking at course of conduct for the creation of a waiver, the parties' actions after April 7 help to confirm Dempsey's account that a waiver was made on that phone call. If Sheridan's subjective intent was not to grant a month-to-month deferral, he did not make that sufficiently clear to Dempsey or anyone else at Frontier. All parties acted as if a month-to-month waiver was in place following the phone call. Ultimately, Dempsey's descriptions of what the parties said on the April 7 call are consistent with what the parties actually did, while Sheridan's are not.

The Court finds that AMCK waived its right to timely payment during the April 7 phone call. That waiver was supported by consideration, as Frontier made a substantial sacrifice to achieve deferrals with Airbus. It risked default on its single largest contract, which could have exposed the company to Chapter 11 bankruptcy proceedings and resulted in the loss of $250 million in PDPs. Tr. 518:3-519:4; Tr. 521:7-524:12. With each aircraft deferral, Frontier also lost repayment of $15 million, at a time when it was desperate for liquidity. Tr. 564:10-565:4. In turn, AMCK received the benefit of delaying its payments of $51 million per aircraft. Tr. 566:7-567:19.

Withdrawal of that waiver required mutual assent or, at a minimum, notice and a reasonable opportunity to cure. AMCK did not provide any of those elements, and it terminated the

21

Framework Agreement even after Frontier became current on all rent on May 13, 2020. JX-14; JX-148; JX-150-51. This was a reasonable time period well within the three-day grace period and five-day cure provisions in other contracts between the parties. JX-2 (MSN 8402 Lease); JX-7 (MSN 9177 Lease); JX-24 (Framework Agreement); JX-29 (MSN 10038 Lease).

AMCK is therefore liable for breach of the Framework Agreement.

## II. Accipiter and Vermillion Are Proper Defendants.

AMCK argues that Accipiter and Vermillion, AMCK's affiliates, are not parties to the Framework Agreement and therefore cannot be held liable for breach of contract. However, the Court finds that they are proper defendants.

Accipiter and Vermillion's related contracts should be read as one with the Framework Agreement. Vermillion entered into its agreements - the MSN 10038 Trust Agreement (JX-25) and the MSN 10038 Guaranty (JX-26) - on the same day that the Framework Agreement was executed, and the agreements related to the purchase of the first aircraft under the Framework Agreement. Tr. 54:20-22; Tr. 55:20-23. Accipiter similarly signed a letter of intent to finance six aircraft under the Framework Agreement, and the letter's key terms were incorporated into the Framework Agreement. Tr. 44:15-49:2. All documents were intended to effectuate the same purpose: the financing and leasing of

22

aircraft between Frontier and AMCK through the Framework Agreement. They therefore "were executed at substantially the same time, related to the same subject-matter, were contemporaneous writings and must be read together as one." Vulcan Rail, 286 N.Y. at 197.

The Framework Agreement imposes binding obligations on Accipiter and Vermillion. All of the contracts at issue are interconnected and have numerous cross-references. In fact, it was through this very interrelation that AMCK held Frontier to be in default of the Framework Agreement, using Frontier's alleged outstanding rent payments on the Original Leases (to which Accipiter Holdings DAC, Accipiter's parent company, was a party) to create a breach of the MSN 10038 Lease and a cross-default under the Framework Agreement. JX-1-4; Tr. 32:12-43:4. The May 8 Termination Notice specifically relied on the interrelatedness of those contracts and the relevant parties, with numerous references to them. JX-146, ¶¶ 2, 4, 7. It would make little sense to allow Accipiter and Vermillion to avoid the very mechanism of interconnection through which AMCK claimed Frontier to be in default.

Accipiter and Vermillion are proper parties to this action and are liable for breach of the Framework Agreement.

23

## Conclusion

For the foregoing reasons, AMCK breached the Framework Agreement, and Accipiter and Vermillion are proper defendants. Accordingly, judgment will be entered in favor of Frontier and against AMCK, Accipiter, and Vermillion in the amount of $48,660,000, plus interest from the date of breach at a rate of 9%. The Court accepts Dr. Neels's damages calculation because, while a pre-tax approach is standard, his use of a constant tax rate yielded the same result, and his rent computations comported with Frontier's internal estimates and actual payments. Additionally, AMCK is liable to Frontier for all losses, fees, costs, and expenses — including attorneys' fees — under the Original Leases and the Framework Agreement. JX-2 & 7, § 17.1(a); JX-24, § 7.1.

The Clerk is directed to enter judgment accordingly.

So ordered.

Dated:  New York, New York
        June 14, 2024

_____
LOUIS L. STANTON
U.S.D.J.

24

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
FRONTIER AIRLINES, INC.,

                        Plaintiff,                                    20 **CIVIL** 9713 (LLS)

        -v-                                                          <u>**JUDGMENT**</u>

AMCK AVIATION HOLDINGS IRELAND
LIMITED , ACCIPITER INVESTMENT 4
LIMITED , VERMILLION AVIATION
(TWO) LIMITED, WELLS FARGO TRUST
COMPANY , N.A., solely in its
capacity As OWNER TRUSTEE, and
UMB BANK , N. A., solely in its
capacity as OWNER TRUSTEE,

                        Defendants.
----------------------------------------------------------------X

        It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons

stated in the Court's Opinion & Order dated June 14, 2024, judgment is entered in favor of

Frontier and against AMCK, Accipiter, and Vermillion in the amount of $48,660,000, plus

interest from (5/8/2020) the date of breach at a rate of 9% for the total interest amount of

$18,009,532.60. The Court accepts Dr. Neels's damages calculation because, while a pre-tax

approach is standard, his use of a constant tax rate yielded the same result, and his rent

computations comported with Frontier's internal estimates and actual payments. Additionally,

AMCK is liable to Frontier for all losses, fees, costs, and expenses - including attorneys' fees -

under the Original Leases and the Framework Agreement. JX-2 & 7, § 17.l(a); JX-24, § 7.1.

**Dated:** New York, New York

        June 17, 2024

**DANNY ORTIZ**
**Acting, Clerk of Court**

BY:

_____
**Deputy Clerk**

ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/1/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -X
FRONTIER AIRLINES, INC.,

                    Plaintiff,                 20 Civ. 9713 (LLS)

      - against -                     AMENDED OPINION & ORDER

AMCK AVIATION HOLDINGS IRELAND
LIMITED, ACCIPITER INVESTMENT 4
LIMITED, VERMILLION AVIATION
(TWO) LIMITED, WELLS FARGO TRUST
COMPANY, N.A., solely in its
capacity As OWNER TRUSTEE, and
UMB BANK, N.A., solely in its
capacity as OWNER TRUSTEE,

                    Defendants.
- - - - - - - - - - - - - - - - - - - -X

## Introduction

     This is a breach of contract action between plaintiff

Frontier Airlines, Inc. ("Frontier"), a commercial passenger

airline, and defendant AMCK Aviation Holdings Ireland Limited

("AMCK"), an aircraft leasing company. AMCK buys and leases

aircraft through various affiliates, subsidiaries, and owner

trustee entities, including Accipiter Investments 4 Limited

("Accipiter") and Vermillion Aviation (Two) Limited

("Vermillion"), the other defendants in this case. In late 2019,

AMCK and Frontier entered into the Framework Agreement, which

required AMCK to purchase six new Airbus aircraft and lease them

back to Frontier.

     After the COVID-19 pandemic severely limited air travel in

March of 2020, the parties began negotiating changes to the

1

Framework Agreement, including deferral of monthly aircraft
rents. In May of 2020, after the parties failed to reach a
formal agreement, AMCK held Frontier in default and terminated
the Framework Agreement. Frontier brought this action alleging
breach of the Framework Agreement, among other claims that were
dismissed on summary judgment.

After a bench trial, and for the reasons that follow, the
Court finds that AMCK breached the Framework Agreement, and
Accipiter and Vermillion are proper defendants.

### Factual Findings

All background facts are incorporated from the Summary
Judgment Opinion & Order (Dkt. No. 123), and familiarity is
assumed. The findings of fact necessary to resolve the remaining
issues are made as follows.

### I.   Parties

Frontier is a Colorado-headquartered passenger airline that
operates commercial passenger aircraft leased from various
aircraft lessors. Agreed Findings of Fact ¶ 1 ("AFF") (Dkt. No.
135). During the relevant timeframe, Jimmy Dempsey was
Frontier's Executive Vice President and Chief Financial Officer,
and he is currently Frontier's President. Id. ¶ 2. Spencer
Thwaytes was Frontier's former Vice President and Treasurer,
reporting to Mr. Dempsey. Id. Robert Fanning was Frontier's
Director of Fleet, responsible for overseeing the making of rent

2

payments and reporting to Mr. Dempsey. Id. He is currently
Frontier's Vice President for Fleet. Id.

During the relevant timeframe, defendant AMCK was an
aircraft leasing company organized under the laws of Ireland and
with its principal place of business in Ireland. Id. ¶ 3. Paul
Sheridan was AMCK's Chief Executive Officer, and Jane
O'Callaghan was the Chief Commercial Officer. Id. ¶ 4. Gerald Ma
was an Executive Committee Member at CK Asset Holdings, which
was AMCK's largest shareholder, and a member of the AMCK Board
of Directors. Id. Francis Lee was a Chief Manager of Corporate
Business Development at CK Asset Holdings, reporting to Mr. Ma,
and served as an alternative member of the AMCK Board of
Directors. Id.

## II.   Framework Agreement

Sale and leaseback ("SLB") arrangements are a common method
used by airlines to finance new aircraft acquisitions. Id. ¶ 5.
Frontier relies on SLBs for 100% of its fleet. Id. An SLB
arrangement is comprised of multiple parts: First, an airline
(such as Frontier) has an existing purchase agreement with an
airline manufacturer (such as Airbus), which obligates the
airline to take delivery of aircraft pursuant to a delivery
schedule. The airline makes pre-delivery payments ("PDP") to the
manufacturer as the construction of each aircraft progresses.
Id. ¶ 6.

Second, around six months prior to an aircraft delivery, the airline enters an SLB arrangement with an aircraft lessor (such as AMCK or an affiliate), in which the lessor agrees to (i) buy the aircraft from the manufacturer when the aircraft delivers and (ii) simultaneously lease the aircraft to the airline in return for monthly rent payments. Id. The purchase price and rent payments of the aircraft are negotiated solely between the airline and the lessor. Id.

Third, shortly before or on the date of delivery, the lessor pays the purchase price to the manufacturer and takes title to the aircraft, the airline accepts delivery of the aircraft from the lessor under the lease, and the airline begins making monthly rent payments to the lessor. Id. Depending on the purchase price, the airline may receive a refund from the manufacturer for PDP overpayments. Id. Until the lessor pays the manufacturer, the airline remains responsible for purchasing the aircraft and will not receive any PDP overpayment refunds. Id. ¶ 7. If the lessor fails to pay, the airline must use its own funds, enter an SLB arrangement with another lessor, or risk defaulting on its purchase agreement with the manufacturer. Id.

Frontier is a party to the Airbus Purchase Agreement (with amendments, "Airbus Agreement") with Airbus, whereby Frontier is obligated to purchase more than 150 aircraft, and make PDPs, according to a decade-long schedule. Id. ¶ 8. By the end of

4

September 2019, AMCK, through subsidiaries and owner trustees, owned and leased 14 aircraft to Frontier that were delivered under the Airbus Agreement pursuant to 14 individual lease agreements ("Original Leases"). Id. ¶ 9; Joint Exhibit 2 ("JX") (MSN 8402 Lease); JX-7 (MSN 9177 Lease).

On September 10, 2019, Frontier and AMCK's affiliate, Accipiter Holdings, DAC, the parent company of Accipiter, signed a letter of intent to enter into a sale and leaseback arrangement for six additional aircraft under the Airbus Agreement. AFF ¶ 12; JX-5. On March 16, 2020, Frontier and AMCK executed the Framework Agreement, which incorporated the key terms from the September 2019 letter of intent. AFF ¶ 13; JX-24. The Framework Agreement obligated AMCK to purchase six aircraft and lease them back to Frontier through Owner Trustee/Lessor UMB Bank, N.A., according to the following schedule: (i) three aircraft in March 2020; (ii) one in May 2020; (iii) one in June 2020; and (iv) one in August 2020. AFF ¶ 7; JX-24, Schedule 1.

Also on March 16, 2020, AMCK purchased the first of these six aircraft, MSN 10038. AFF ¶ 7. AMCK, by and through its affiliates, executed corresponding lease documents with Frontier. Id. ¶ 14. In particular, Vermillion executed a trust agreement with UMB, relating to the ownership of MSN 10038. Id.; JX-25 (MSN 10038 Trust Agreement). UMB, not in its individual capacity but solely as owner trustee, executed a corresponding

lease with Frontier. AFF ¶ 14; JX-29 (MSN 10038 Lease).
Vermillion provided a guaranty in favor of Frontier. AFF ¶ 14;
JX-26 (MSN 10038 Guaranty). Under the Framework Agreement and
resulting lease documents, AMCK paid Airbus $51 million for MSN
10038, and Frontier agreed to pay AMCK $269,525.94 in monthly
rent. AFF ¶ 15. Frontier received delivery of MSN 10038 from
Airbus on this same day. Id. ¶ 16. Under the Framework
Agreement, the five remaining aircraft would be purchased at the
same price and leased at a similar monthly rent. Id. ¶ 17.

The contracts at issue — including the Framework Agreement,
as well as the Lease Agreements, Trust Agreements, Guarantees,
and all other "Operative Documents" (as defined in the Framework
Agreement) relating to the 15 aircraft under lease between
Frontier and AMCK — are deeply intertwined and make numerous
cross-references to each other. JX-1-4; JX-7; JX-24, §§ 1.1,
2.1.1, 3.3.1; JX-25, §§ 1, 2, 8.01-.02, 9.01(b); JX-26 at 1,
§ 1; JX-29 at 1, 15.

### III. Rent Deferral Agreement

Also on March 16, 2020, Frontier sent a letter to AMCK
requesting a temporary deferral of monthly rent payments under
the Original Leases and the MSN 10038 Lease due to the COVID-19
pandemic. JX-28. Frontier requested a voluntary (i) one-time,
three-month aircraft rent deferral on the 15 aircraft under
lease; and (ii) return of one-month's security deposit for each

6

aircraft. Id. Frontier explained it would fully repay those
amounts, with interest, over a nine-month period starting on
July 1, 2020. Id. Frontier also represented that it had a
"strong balance sheet with $685 million of free cash" in order
to assure AMCK that it could make its payments, with interest,
when the proposed deferral expired. Id.

Deferral requests of this nature were common given the
sudden impact of the COVID-19 pandemic on air travel. Frontier
sent concession request letters to all of its lessors, and AMCK
received concession request letters from 32 of its 34 airline
partners, prompting AMCK to create an inter-company deferral
team. JX-12; JX-15; JX-36.

As part of the negotiations, AMCK requested that Frontier
achieve delivery delays with Airbus for the upcoming aircraft.
JX-61. This was a substantial request for Frontier. The Airbus
contract was its "single largest contract," and Frontier had
$250 million of PDPs on deposit with Airbus. Trial Transcript
522:23-25 ("Tr."). Airbus also had little incentive to grant
deferrals, as the aircraft were nearly complete, and Airbus had
no space at its Mobile, Alabama assembly facility to store them.
JX-60; Tr. 50:14-23. When Frontier initially asked for a
delivery deferral, Airbus's "immediate reaction ha[d] been to
threaten Frontier with default" of the greater Airbus Agreement.
JX-61; Tr. 76:7-13. If Airbus declared a default, Frontier would

7

lose all of its PDP payments for upcoming aircraft, and it "could cripple the airline to where it may potentially put [it] out of business" and need to seek Chapter 11 bankruptcy protection. JX-190 at 85-90; JX-17 at 2-3; JX-65; Tr. 524:4-7. Delivery delays would benefit AMCK by lessening and delaying its payment obligations. JX-40; JX-44; JX-55.

## IV. Waiver

To reach a formal agreement on rent deferral with AMCK, Frontier needed additional time to negotiate with Airbus. On April 6, Sheridan sent an email to Dempsey granting a waiver of timely rent payment for ten business days, from April 6, 2020, to April 21, 2020. JX-60. Sheridan stated that AMCK "won't take any actions or call any defaults linked to non payment of rents on any aircraft where the rent is due." Id. Sheridan specified that he was "[m]indful of the time it might take [Frontier] to reach agreement with Airbus or to make some other arrangements and therefore of the ability for us to reach a deferral agreement." Id.

Dempsey and Sheridan spoke again on April 7, 2020, this time by phone. Tr. 529:8-9. Dempsey explained the complex negotiation process with Airbus and the fact that the Mobile, Alabama factory would be closed until at least April 28, 2020, meaning that the next aircraft delivery would not be until May at the earliest. Tr. 529:18-25; Tr. 530:1-6. These factors

8

necessitated a deferral beyond the initial ten-day period, which was set to end on April 21, 2020. Tr. 530:7-13. Dempsey formally asked Sheridan to move the deferral to a month-to-month basis to give Frontier time to get an agreement in place with Airbus and, in turn, reach a formal rent deferral with AMCK. Tr. 530:13-17. Dempsey said that Sheridan understood the need for time and agreed to a month-to-month deferral, with no outstanding rent at the point of the next aircraft delivery. Tr. 532:9-19; Tr. 534:18-21.

Immediately after, Dempsey confirmed this with his team, texting Fanning and Thwaytes, "Just spoke to Paul Sheridan. He has agreed to do the deferral on a month to month basis." JX-73. Thereafter, Sheridan and other Frontier associates continued to negotiate with Airbus about delivery delays, inform AMCK of their progress, and make offers to become current on rent.

On April 8, 2020, Sheridan emailed Gerald Ma, Francis Lee, and other representatives of AMCK's shareholder about the April 7 phone call, explaining that Frontier "asked for us to do the deferral on a month by month basis (they are also conscious that they don't want to be in default with us). Since the next delivery isn't going to be in April now that the Mobile plant is shut I think we can agree to this and give them a bit more time to work with Airbus." JX-76.

AMCK associates referenced this informal rent deferral agreement multiple times thereafter. For example, on April 30, Mr. Sheridan cited "an informal deferral pending agreement with Airbus on delivery delays." JX-121. AMCK also knew Frontier did not want to be in default, and Frontier repeatedly offered to become current on all rent. AMCK associates did not once ask Frontier to pay or express that they might be in default.

After those discussions about a waiver, the parties continued to engage in substantial negotiations over a formal rent deferral agreement from March through May of 2020. They exchanged numerous proposals, and both parties understood that any deferral of rent pursuant to this request would be documented in a written agreement. JX-28; JX-53; JX-73; JX-79. However, they never reached a formal written agreement on rent deferral. Tr. 625:6-8.

## V. **Termination**

On May 8, 2020, AMCK sent Frontier a Notice of Termination due to non-payment of rent in April 2020. JX-146. This was based on the interconnection of AMCK and Frontier's various contracts: Frontier's alleged failure to pay rent on the Original Leases created a breach of the MSN 10038 Lease and a cross-default under the Framework Agreement. Id.; JX-2; JX-7; JX-24; JX-29. On May 13, 2020, three business days and five calendar days later,

10

Frontier paid all outstanding rent. JX-14; JX-148; JX-150-51.
AMCK nonetheless terminated the Framework Agreement and did not
consummate the SLB arrangements for the remaining five aircraft.
JX-14; JX-148; JX-150-51.

As a result of this termination, Frontier began looking for
alternate leasing companies to finance the five remaining
aircraft. Given the changed market conditions, their proposed
terms were substantially worse for Frontier than those in the
Framework Agreement. PX-6; JX-156-59; Tr. 107:10-15. In fact,
AMCK itself reached out to Frontier on June 18, 2020 and offered
to enter SLBs for the three July 2020 aircraft. PX-6. The terms
were much less favorable for Frontier than those in the
Framework Agreement, and AMCK's proposal was "conditioned on the
release and waiver of any potential legal claims by Frontier
arising from the termination of the Framework Agreement." Id.;
Tr. 108:17-110:14.

Frontier ultimately found other lessors to enter SLB
arrangements for all five remaining aircraft. It contracted with
China Development Bank (CDB) for the three July aircraft and
Jackson Square Aviation (JSA) for the remaining two aircraft.
JX-156; JX-158-59; PX-10; JX-162; JX-164; JX-166-69. While the
terms were better than those offered by AMCK on June 18, 2020,
they were still much worse for Frontier than the terms of the

11

Framework Agreement. JX-156; JX-158-59; PX-10; JX-162; JX-164; JX-166-69.

## Procedural History

Frontier brought this suit to recover losses from AMCK's termination of the Framework Agreement. This Court dismissed all of Frontier's claims on summary judgment, except for its claim against AMCK, Accipiter, and Vermillion for breach of the Framework Agreement. A bench trial took place from April 8 to 16, 2024, to resolve whether AMCK breached that contract, with a specific focus on whether it waived its right to timely payment during an April 7, 2020 phone call or in other communications.

## Legal Standards

### I.    Waiver

A right can be waived under the Framework Agreement only "by an express waiver or variation in writing...and no act or course of conduct or negotiation on the part of such party or on its behalf shall in any way preclude it from exercising any such right or constitute a suspension or any variation of any such right." JX-24, § 8.4.1. The Framework Agreement further states that the "provisions of this Agreement shall not be varied otherwise than by an instrument in writing executed by or on behalf of AMCK Aviation and Frontier." Id. § 8.4.2.

"A party may, by words or conduct, waive a provision in a

12

contract," including the time of performance or time of payment.
Oleg Cassini, Inc. v. Couture Coordinates, Inc., 297 F. Supp.
821, 831-32 (S.D.N.Y. 1969); see Beth Israel Med. Ctr. v.
Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573,
585 (2d Cir. 2006) ("A breach of contract may be waived by the
non-breaching party."). A waiver is "the voluntary abandonment
or relinquishment of a known [contract] right." Randolph
Equities, LLC v. Carbon Cap., Inc., 648 F. Supp. 2d 507, 516
(S.D.N.Y. 2009) (alteration in the original) (quoting Jefpaul
Garage Corp. v. Presbyterian Hosp., 462 N.E.2d 1176, 1177
(1984)). The party asserting waiver has the burden of proving
the non-breaching party expressed a clear manifestation of its
intent to relinquish its right. Id. Because it is a question of
intent, whether a party waived is generally a matter of fact.
Id. "[A]ny alleged subjective and unstated intent" is
irrelevant. Natale v. Ernst, 63 A.D.3d 1406, 1409 (2009). An
express waiver can be "established by affirmative conduct or by
failure to act so as to evince an intent not to claim a
purported advantage." Fundamental Portfolio Advisors, Inc. v.
Tocqueville Asset Mgmt., L.P., 7 N.Y.3d 96, 104 (2006). On
Summary Judgment, this Court held that an express waiver need
not be in writing. Dkt. No. 123 at 23.

When a waiver is supported by consideration or reasonable
and justified reliance, it "form[s] a new contract or a binding

13

modification of the original contract and may not be retracted
without mutual consent." 13 Williston on Contracts § 39:20 (4th
ed.). "Where an executory contract fixes the time within which
it is to be performed and performance within that time is waived
by the parties to the agreement, neither party can thereafter
rescind the contract on account of such delay without notice to
the other." Sherwood v. Gordon Bros., 116 N.Y.S.2d 306, 308
(City Ct. 1952). "The notice must be clear, distinct and
unequivocal; fix a reasonable time within which to act; and
inform the other party that failure to perform by that date will
be considered a default." Hidden Brook Air, Inc. v. Thabet
Aviation Int'l Inc., 241 F. Supp. 2d 246, 270 (S.D.N.Y. 2002);
see also N.Y. U.C.C. Law § 2-A-208(4) (McKinney 2023) ("A party
who has made a waiver affecting an executory portion of a lease
contract may retract the waiver by reasonable notification
received by the other party that strict performance will be
required of any term waived, unless the retraction would be
unjust in view of a material change of position in reliance on
the waiver."); U.C.C. § 2-209(5) (2022) (same); 13 Williston on
Contracts § 39:20 (4th ed.) ("[H]aving once waived strict
compliance with the terms of a contract, a party can assert its
right to strict compliance in the future only by notifying the
other party of its intent to do so and by allowing a reasonable
time for the other party to comply.").

14

"The requirement of reasonable notice to the party whose nonperformance has been excused by waiver, as well as a reasonable opportunity to comply, are generally not obviated by an antiwaiver clause in the parties' contract." 13 Williston on Contracts § 39:20 (4th ed.).

## II.  **Proper Defendants**

"It is hornbook law that a non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract." Ferring B.V. v. Allergan, Inc., 4 F. Supp. 3d 612, 625 (S.D.N.Y. 2014) (internal quotation marks omitted). However, under New York law, contemporaneous writings are to be read together, even if they are not between the same parties, when they form part of a single transaction, relate to the same subject matter, and are intended to effectuate the same purpose. This Is Me, Inc. v. Taylor, 157 F.3d 139, 143 (2d Cir. 1998); Nau v. Vulcan Rail & Constr. Co., 286 N.Y. 188, 197 (1941) (finding those agreements at issue "were executed at substantially the same time, related to the same subject-matter, were contemporaneous writings and must be read together as one"). It is for the factfinder to determine whether contemporaneous writings were intended to impose on separate parties the same binding obligations, even though the obligations were defined in different documents.

15

TVT Recs. v. Island Def Jam Music Grp., 412 F.3d 82, 89 (2d Cir. 2005).

## Discussion

### I.   AMCK Waived Its Right to Timely Payment.

There is no debate that the parties did not reach a formal deferral agreement. Both sides agree that it is common industry practice to document formal rent deferral agreements in writing, and the Framework Agreement requires as much. JX-24, § 8.4.2; JX-28; Tr. 624:23-625:1. A formal deferral agreement also would have required "a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms," including how long the rent deferral would last, what the payment period would be, and what the interest rate would be. Stonehill Cap. Mgmt., LLC v. Bank of the W., 28 N.Y.3d 439, 448-49 (2016) (internal quotation marks omitted). All parties acknowledge that they did not solidify these material terms orally or in writing. However, they disagree over whether there was a waiver of timely payment in place while the parties were negotiating the specific contours of the deferral agreement.

There is no dispute that AMCK instituted an initial waiver on April 6, 2020. In an email to Dempsey, Sheridan stated clearly that they "won't take any actions or call any defaults linked to non payment of rents on any aircraft where the rent is

16

due from today to 21 April." JX-60. Sheridan confirmed this at trial, explaining that, "because there were rent payments that were due on that day, and because the discussions with Airbus were going to be difficult, and take a little bit of time, that we grant them a 10-day grace period where we said we would not take action under the lease agreements or the other agreements...if there were no rent payments during that 10 business day period." Tr. 672:19-25. The central debate is whether that waiver was modified — or whether a new waiver was created — during a phone call between the same parties the next day. After testimony from both key witnesses, the Court finds that it was.

Dempsey, a generally reliable and honest witness, recounted his call with Sheridan in detail. After explaining the intricacies of Frontier's negotiations with Airbus, and the resulting delivery delays from the closing of the Mobile factory, Dempsey asked Sheridan for a month-to-month waiver while negotiations were ongoing. Tr. 525:13-15; Tr. 529:18-530:17; Tr. 612:10-14. Dempsey confidently stated that Sheridan had agreed: "My clear understanding coming out of this call was that we had a deferral in place, and the earliest date that we had to pay the rent was at the point of the next aircraft delivery. That was my clear understanding at that time." Tr. 534:18-21. While Dempsey "certainly expected the formal

17

agreement that we were negotiating with Airbus and also the formal agreement that we would have negotiated with AMCK" to be in writing, he did not feel this informal waiver needed to be written: "I have known Paul for sometime, and I trusted that his word was good. He was the chief executive of AMCK...It didn't need to be documented in a written agreement. It was an agreement between two principals that were parties to it." Tr. 624:17-25.

Dempsey's actions after the call confirm this account, as he texted Thwaytes and Fanning, "Just spoke to Paul Sheridan. He has agreed to do the deferral on a month to month basis." JX-73. Thereafter, Dempsey and his team continued to negotiate with Airbus about delivery delays, inform AMCK of their progress, and work towards a formal agreement with AMCK – all consistent with there being a month-to-month deferral in place.

Sheridan, on the other hand, contested this account. He testified that he did not remember what his response to Dempsey's request for a month-to-month deferral was or whether he told Dempsey that a written agreement would be entered. Tr. 728:10-16. However, he said that he did not intend to waive any rights to payment. Tr. 677:3-7. Sheridan claimed that his email to the shareholder's representatives after the call confirmed that he did not agree to a month-to-month deferral, as he described it as something that "we *can* agree to," not that

18

they had agreed to. JX-76 (emphasis added). He also stated that he would have needed to receive higher approval from the shareholder before implementing that waiver. Tr. 680:2-8.

Sheridan's account is the less credible one for a few reasons. First, it is notably lacking in detail, as he did not recall the conversation with nearly as much specificity as Dempsey did. Sheridan's shareholder approval argument falls flat because there is no indication that he received shareholder approval for the April 6 waiver already in place. JX-63; JX-65. Sheridan also never suggested to Dempsey that he lacked authority as chief executive to grant a month-to-month deferral. Tr. 714:16-18; Tr. 728:17-20.

Additionally, Sheridan and other AMCK employees' communications and actions after April 7 reveal that they did in fact understand that a longer deferral was in place, even if Sheridan's initial email to the shareholder used less definite language. On April 30, Sheridan clearly referenced "an informal deferral pending agreement with Airbus on delivery delays" in an internal email to Ma and others. JX-121. When asked at trial what he meant by an "informal deferral," Sheridan claimed he was referring to the April 6 deferral. Tr. 692:16-19. However, this is inconsistent considering that the April 6 deferral had expired on April 21, 9 days before that email was sent.

19

Additionally, Dempsey and Sheridan had repeated contact after April 7, and Sheridan did not once attempt to clarify what he meant on that call. On April 27, Dempsey told Sheridan he was operating under the impression that Frontier just needed to have no outstanding payments at the time of the next delivery, and Sheridan did not dispute that. JX-111. Similarly, on April 29, Fanning told O'Callaghan that one solution to their negotiation was that the "current rent deferral would stay in place," and she said nothing to alter that understanding. JX-17. AMCK associates knew Frontier was continuing to negotiate with Airbus, and they continued to negotiate with Frontier themselves, yet they did not once tell Frontier to cease negotiations because they were in default. Frontier also repeatedly offered to pay, with AMCK consistently declining its offers and failing to send any chase alerts or payment requests. JX-120-21; JX-123; PX-7-8.

AMCK argues that, to the extent anything said on the April 7 call could be construed as an express waiver, that waiver was withdrawn on April 9, when AMCK sent a draft forbearance agreement indicating that, absent agreement, AMCK expected Frontier to be bound by the lease terms. JX-79. However, this is also inconsistent, as the communications referenced above, which clearly allude to the existence of an informal rent deferral, all occurred well after that April 9 email.

20

While the Framework Agreement forbids looking at course of conduct for the creation of a waiver, the parties' actions after April 7 help to confirm Dempsey's account that a waiver was made on that phone call. If Sheridan's subjective intent was not to grant a month-to-month deferral, he did not make that sufficiently clear to Dempsey or anyone else at Frontier. All parties acted as if a month-to-month waiver was in place following the phone call. Ultimately, Dempsey's descriptions of what the parties said on the April 7 call are consistent with what the parties actually did, while Sheridan's are not.

The Court finds that AMCK waived its right to timely payment during the April 7 phone call. That waiver was supported by consideration, as Frontier made a substantial sacrifice to achieve deferrals with Airbus. It risked default on its single largest contract, which could have exposed the company to Chapter 11 bankruptcy proceedings and resulted in the loss of $250 million in PDPs. Tr. 518:3-519:4; Tr. 521:7-524:12. With each aircraft deferral, Frontier also lost repayment of $15 million, at a time when it was desperate for liquidity. Tr. 564:10-565:4. In turn, AMCK received the benefit of delaying its payments of $51 million per aircraft. Tr. 566:7-567:19.

Withdrawal of that waiver required mutual assent or, at a minimum, notice and a reasonable opportunity to cure. AMCK did not provide any of those elements, and it terminated the

21

Framework Agreement even after Frontier became current on all
rent on May 13, 2020. JX-14; JX-148; JX-150-51. This was a
reasonable time period well within the three-day grace period
and five-day cure provisions in other contracts between the
parties. JX-2 (MSN 8402 Lease); JX-7 (MSN 9177 Lease); JX-24
(Framework Agreement); JX-29 (MSN 10038 Lease).

AMCK is therefore liable for breach of the Framework
Agreement.

## II.   Accipiter and Vermillion Are Proper Defendants.

AMCK argues that Accipiter and Vermillion, AMCK's
affiliates, are not parties to the Framework Agreement and
therefore cannot be held liable for breach of contract. However,
the Court finds that they are proper defendants.

Accipiter and Vermillion's related contracts should be read
as one with the Framework Agreement. Vermillion entered into its
agreements - the MSN 10038 Trust Agreement (JX-25) and the MSN
10038 Guaranty (JX-26) - on the same day that the Framework
Agreement was executed, and the agreements related to the
purchase of the first aircraft under the Framework Agreement.
Tr. 54:20-22; Tr. 55:20-23. Accipiter similarly signed a letter
of intent to finance six aircraft under the Framework Agreement,
and the letter's key terms were incorporated into the Framework
Agreement. Tr. 44:15-49:2. All documents were intended to
effectuate the same purpose: the financing and leasing of

22

aircraft between Frontier and AMCK through the Framework Agreement. They therefore "were executed at substantially the same time, related to the same subject-matter, were contemporaneous writings and must be read together as one." Vulcan Rail, 286 N.Y. at 197.

The Framework Agreement imposes binding obligations on Accipiter and Vermillion. All of the contracts at issue are interconnected and have numerous cross-references. In fact, it was through this very interrelation that AMCK held Frontier to be in default of the Framework Agreement, using Frontier's alleged outstanding rent payments on the Original Leases (to which Accipiter Holdings DAC, Accipiter's parent company, was a party) to create a breach of the MSN 10038 Lease and a cross-default under the Framework Agreement. JX-1-4; Tr. 32:12-43:4. The May 8 Termination Notice specifically relied on the interrelatedness of those contracts and the relevant parties, with numerous references to them. JX-146, ¶¶ 2, 4, 7. It would make little sense to allow Accipiter and Vermillion to avoid the very mechanism of interconnection through which AMCK claimed Frontier to be in default.

Accipiter and Vermillion are proper parties to this action and are liable for breach of the Framework Agreement.

23

## Conclusion

For the foregoing reasons, AMCK breached the Framework Agreement, and Accipiter and Vermillion are proper defendants. Accordingly, judgment will be entered in favor of Frontier and against AMCK, Accipiter, and Vermillion in the amount of $48,660,000, plus interest from April 8, 2024 at a rate of 9%. The Court accepts Dr. Neels's damages calculation because, while a pre-tax approach is standard, his use of a constant tax rate yielded the same result, and his rent computations comported with Frontier's internal estimates and actual payments. Additionally, AMCK is liable to Frontier for all losses, fees, costs, and expenses — including attorneys' fees — under the Original Leases and the Framework Agreement. JX-2 & 7, § 17.1(a); JX-24, § 7.1.

The Clerk is directed to enter judgment accordingly.

So ordered.

Dated:  New York, New York
        July 1, 2024

                                    _Louis L. Stanton_
                                    LOUIS L. STANTON
                                    U.S.D.J.

24

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X
FRONTIER AIRLINES, INC.,

                         Plaintiff,                      20 **CIVIL** 9713 (LLS)

       -v-                                    **AMENDED JUDGMENT**


AMCK AVIATION HOLDINGS IRELAND
LIMITED , ACCIPITER INVESTMENT 4
LIMITED , VERMILLION AVIATION
(TWO) LIMITED, WELLS FARGO TRUST
COMPANY , N.A., solely in its
capacity As OWNER TRUSTEE, and
UMB BANK , N. A., solely in its
capacity as OWNER TRUSTEE,

                         Defendants.
--------------------------------------------------------------X


       It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons

stated in the Court's Amended Opinion & Order dated July 1, 2024 and the Court's Order dated

July 1, 2024, Defendants' June 25, 2024 Motion to Amend the Judgment (Dkt. No. 173) is

granted.  Accordingly, judgment is entered in favor of Frontier and against AMCK, Accipiter,

and Vermillion in the amount of $48,660,000, plus interest at 9% from April 8, 2024 of

$839,884.93 for a total sum of $49,499,884,93.

**Dated:**  New York, New York

      July 02, 2024

                                         **DANNY ORTIZ**
                                 **Acting, Clerk of Court**

                   **BY:**

                              _____
                                **Deputy Clerk**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

FRONTIER AIRLINES, INC.,

                Plaintiff,

     v.

AMCK AVIATION HOLDINGS IRELAND
LIMITED, ACCIPITER INVESTMENT 4
LIMITED, VERMILLION AVIATION (TWO)
LIMITED, WELLS FARGO TRUST COMPANY,
N.A., solely in its capacity as OWNER TRUSTEE,
and UMB BANK, N.A., solely in its capacity as
OWNER TRUSTEE,

                Defendants.

20 Civ. 9713 (LLS)

**NOTICE OF APPEAL**

**PLEASE TAKE NOTICE** that Defendants AMCK Aviation Holdings Ireland Limited,

Accipiter Investments Aircraft 4 Limited, and Vermillion Aviation (Two) Limited

("Defendants"), hereby appeal to the United States Court of Appeals for the Second Circuit from

the (i) Opinion and Order dated June 14, 2024 (ECF No. 170), (ii) the Judgment dated June 17,

2024 (ECF No. 171), (iii) the Amended Opinion and Order dated July 1, 2024 (ECF No. 175),

(iv) the Amended Judgment dated July 2, 2024 (ECF No. 180), and (v) all other orders entered in

the case that were adverse, either in whole or in part, to Defendants.

Dated: July 12, 2024           Respectfully submitted,

                              s/ Jeff E. Butler

                          Jeff E. Butler
                          John P. Alexander
                          Giannina Crosby
                          CLIFFORD CHANCE US LLP
                          Two Manhattan West
                          375 9th Avenue
                          New York, New York 10001

                          *Attorneys for Defendants*

ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -X
FRONTIER AIRLINES, INC.,

                      Plaintiff,

        - against -

AMCK AVIATION HOLDINGS IRELAND
LIMITED, ACCIPITER INVESTMENT 4
LIMITED, VERMILLION AVIATION
(TWO) LIMITED, WELLS FARGO TRUST
COMPANY, N.A., solely in its
capacity As OWNER TRUSTEE, and
UMB BANK, N.A., solely in its
capacity as OWNER TRUSTEE,

                 Defendants.
- - - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| USDC SDNY | |
| DOCUMENT | |
| ELECTRONICALLY FILED | |
| DOC | |
| DATE FILED: 8/14/24 | |

20 Civ. 9713 (LLS)

OPINION

     For the reasons stated in the Court's Summary Judgment

Opinion (Dkt. No. 123), defendants' Rule 52(b) Motion for

Judgment as a Matter of Law (Dkt. No. 181) is denied.

     So ordered.

Dated:  New York, New York
       August 14, 2024

                              Louis L. Stanton
                          LOUIS L. STANTON
                            U.S.D.J.

(100 of 140), Page 100 of 140
Case: 24-1916, 09/03/2024, DktEntry: 20.1, Page 100 of 140
Case 1:20-cv-09713-LLS   Document 196   Filed 08/19/24   Page 1 of 6

ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _8/19/24_

## MEMORANDUM ENDORSEMENT

Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland
Limited et al.,
20 Civ. 9713 (LLS)

On June 14, 2024, this Court held that defendants AMCK
Aviation Holdings Ireland Limited ("AMCK"), Accipiter
Investments 4 Limited ("Accipiter"), and Vermillion Aviation
(Two) Limited ("Vermillion") breached their Framework Agreement
with plaintiff Frontier Airlines, Inc. ("Frontier") and were
liable for all losses, fees, costs, and expenses, including
attorneys' fees (Dkt. No. 170). Plaintiff's attorneys now move
for attorneys' fees and costs pursuant to provisions in the
parties' contracts (Dkt. No. 177). That motion is granted.

Although in this country attorneys' fees are typically not
recoverable, "parties may agree by contract to permit recovery
of attorneys' fees, and a federal court will enforce contractual
rights to attorneys' fees if the contract is valid under
applicable state law." U.S. Fid. & Guar. Co. v. Braspetro Oil
Servs. Co., 369 F.3d 34, 74 (2d Cir. 2004) (internal quotations
and citations omitted). "Under New York law, a contract that
provides for an award of reasonable attorneys' fees to the
prevailing party in an action to enforce the contract is
enforceable if the contractual language is sufficiently clear."

1

NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175
(2d Cir. 2008).

Though this case involves breach of the Framework Agreement
specifically, that termination was predicated on breaches of
other interrelated contracts pertaining to the sale and
leaseback of numerous aircraft. For each aircraft, the parties
executed lease agreements, trust agreements, and guaranty
agreements. The aircraft at issue were guaranteed by Vermillion
(MSN 10038 Lease), Accipiter (Original Leases), or Accipiter
Holdings, DAC (Original Leases), which is the parent company of
Accipiter. The guaranty agreements required those parties to
ensure unconditional performance of the leases, and each
guaranty agreement included the following provision:

> **2.2 Expenses.** Guarantor agrees to be liable for the
> payment of all reasonable fees and expenses, including
> attorney's fees, incurred by Lessee in connection with
> the enforcement of this Guaranty.

See, e.g., MSN 10038 Guaranty Agreement (Dkt. No. 116, Ex. 12).
This clearly contemplates the payment of attorneys' fees and
costs.

Frontier's requested attorneys' fees are reasonable, and,
notably, defendants do not challenge the amount in question.
Frontier seeks $1,997,575.10 in fees for 3,949.1 hours of work
by Lane Powell PC and $36,249.50 in fees for 58.6 hours of work
by Binder & Schwartz LLP. Those rates reflect the actual costs

incurred by Frontier over the course of nearly four years of litigation and are reasonable. Danaher Corp. v. Travelers Indem. Co., 2014 WL 4898754, at *2 (S.D.N.Y. Sept. 30, 2014) ("[T]he amount actually paid to counsel by paying clients is compelling evidence of a reasonable market rate."). They also comport with prevailing market rates in the Southern District of New York and are appropriate given the time and experience required to handle a multi-year matter concerning millions of dollars, valuable business relationships, a complex structure of contracts, a global pandemic, and a nearly two-week bench trial.

Frontier's costs and expenses are also reasonable, and the amount is similarly uncontested by the defendants. Frontier seeks $240,300.49 for costs and expenses related to travel, depositions, and trial transcripts, as well as $307,602.41 for expert witness costs and expenses. Those comport with amounts typically awarded in this district. See, e.g., Austrian Airlines Oesterreichische Luftverkehrs AG v. UT Fin. Corp., 2008 WL 4833025, at *1, 9 (S.D.N.Y. Nov. 3, 2008) (approving $568,148 in expert and consultant fees in a case involving more than $47.9 million in alleged damages).

Frontier's request for an additional $10,102.35 in fees and expenses related to the instant motion is denied. In the Second Circuit, parties are typically not entitled to recover fees

incurred in connection with seeking fees – even where a contract expressly allows for the recovery of legal fees – unless the contract specifically allows for it. See <u>F.H. Krear & Co. v. Nineteen Named Trustees</u>, 810 F.2d 1250, 1266 (2d Cir. 1987) ("[A] general contract provision for the shifting of attorneys' fees does not authorize an award of fees for time spent in seeking the fees themselves."); <u>Thor 725 8th Ave. LLC v. Goonetilleke</u>, 675 F. App'x 31, 35 (2d Cir. 2017) (holding that "there is no basis for disturbing <u>F.H. Krear</u>" and "[t]he district court correctly denied [plaintiff's] request for 'fees on fees'"); <u>Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC</u>, 2022 WL 413229, at *11 (S.D.N.Y. Feb. 9, 2022) (rejecting application for the "cost of litigating amount of fees" absent "specific language" in the contract.

Frontier is entitled to $2,581,727.50 in attorneys' fees and costs. The Clerk is directed to issue a supplemental judgment and close the case.

So ordered.

Dated:  New York, New York
        August 19, 2024

                                        Louis L. Stanton
                                LOUIS L. STANTON
                                    U.S.D.J.

4

**MEMO ENDORSED**

## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

FRONTIER AIRLINES, INC.                     Case No.: 1:20-cv-09713-LLS

            Plaintiff,

    v.

AMCK AVIATION HOLDINGS IRELAND
LIMITED, ACCIPITER INVESTMENT 4
LIMITED, VERMILLION AVIATION
(TWO) LIMITED, WELLS FARGO TRUST
COMPANY, N.A., solely in its capacity as
OWNER TRUSTEE, and UMB BANK,
N.A., solely in its capacity as OWNER
TRUSTEE,

            Defendants.

---

### PLAINTIFF FRONTIER AIRLINES, INC.'S NOTICE OF
### MOTION FOR ATTORNEY'S FEES, COSTS, AND EXPENSES

**PLEASE TAKE NOTICE** that, pursuant to the Court's June 14, 2024, Order (Dkt. 170)

and June 17, 2024, Judgment (Dkt. 171) finding Defendants AMCK Aviation Holdings Ireland

Limited, Accipiter Investment 4 Limited, and Vermillion Aviation (Two) Limited (collectively,

Defendants) "liable to Frontier for all losses, fees, costs, and expenses – including attorneys' fees

– under the Original Leases and the Framework Agreement," Plaintiff Frontier Airlines, Inc.

(Frontier) hereby moves this Court before the Honorable Louis L. Stanton, United States District

Judge, at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, Courtroom

21C, New York, New York 10007, on a date and time to be determined by the Court, for an order

granting Frontier's motion for attorney's fees and costs, which combined total $2,581.727.09,

ordering Defendants to pay Frontier this amount, and for such other relief as this Court may deem

just and proper.

022510.0155/9791222.1

**PLEASE TAKE FURTHER NOTICE** that additional fees and costs incurred in connection with prosecuting this application or responding to any post-trial filings made by Defendants shall be sought in a supplemental filing.

**PLEASE TAKE FURTHER NOTICE** that, in support of its motion, Frontier will rely on the brief and the supporting Declaration of David G. Hosenpud, including exhibits, all of which are being electronically filed on this date.

DATED: July 1, 2024

**LANE POWELL PC**

By:  s/ David G. Hosenpud
    David G. Hosenpud (*pro hac vice*)
    601 SW Second Avenue, Suite 2100
    Portland, Oregon  97204-3158
    Telephone No.:  503.778.2100
    Facsimile No.:  503.778.2200
    E-mail:  hosenpudd@lanepowell.com

    Aaron Schaer, (*pro hac vice*)
    1420 Fifth Avenue, Suite 4200
    P.O. Box 91302
    Seattle, WA  98111-9402
    Telephone:  206.223.7103
    Facsimile:  206.223.7107
    E-mail:  schaera@lanepowell.com

    -and-

    **BINDER & SCHWARTZ LLP**
    Neil S. Binder
    675 Third Avenue, 26th Floor
    New York, New York  10017
    Telephone No.:  212.510.7008
    Facsimile No.:  212.510.7299
    E-mail:  nbinder@binderschwartz.com

    *Attorneys for Plaintiff, Frontier Airlines, Inc.*

022510.0155/9791222.1

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

FRONTIER AIRLINES , INC .,

                        Plaintiff,                    20 **CIVIL** 9713 (LLS)

        -against-                              **SUPPLEMENTAL JUDGMENT**
                                                For Attorney's Fees and Costs

AMCK AVIATION HOLDINGS IRELAND
LIMITED, ACCIPITER INVESTMENT 4
LIMITED, VERMILLION AVIATION
(TWO) LIMITED , WELLS FARGO TRUST
COMPANY , N.A., solely in its
capacity As OWNER TRUSTEE , and
UMB BANK , N. A. , solely in its
capacity as OWNER TRUSTEE,

                        Defendants.

------------------------------------------------------------------------X

        It is hereby **ORDERED, ADJUDGED AND DECREED:**  That for the reasons

stated in the Court's Memo Endorsed Order dated August 19, 2024, that Frontier is entitled to

$2,581,727.50 in attorneys' fees and costs. Accordingly, the case is closed.

**Dated:**  New York, New York

        August 20, 2024

                                        **DANIEL ORTIZ**
                                      **Acting Clerk of Court**

                        **BY:**  _____
                                        **Deputy Clerk**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FRONTIER AIRLINES, INC., | |
| Plaintiff, | |
| v. | 20 Civ. 9713 (LLS) |
| AMCK AVIATION HOLDINGS IRELAND LIMITED, ACCIPITER INVESTMENT 4 LIMITED, VERMILLION AVIATION (TWO) LIMITED, WELLS FARGO TRUST COMPANY, N.A., solely in its capacity as OWNER TRUSTEE, and UMB BANK, N.A., solely in its capacity as OWNER TRUSTEE, | **AMENDED NOTICE OF APPEAL** |
| Defendants. | |

**NOTICE IS HEREBY GIVEN** that Defendants AMCK Aviation Holdings Ireland

Limited, Accipiter Investments Aircraft 4 Limited, and Vermillion Aviation (Two) Limited

("Defendants"), hereby appeal to the United States Court of Appeals for the Second Circuit from

the (i) Opinion and Order dated June 14, 2024 (ECF No. 170), (ii) the Judgment dated June 17,

2024 (ECF No. 171), (iii) the Amended Opinion and Order dated July 1, 2024 (ECF No. 175),

(iv) the Amended Judgment dated July 2, 2024 (ECF No. 180), (v) the Opinion dated August 14,

2024 (ECF No. 195), (vi) the Memorandum Endorsement dated August 19, 2024 (ECF No. 196),

(vii) the Supplemental Judgment dated August 20, 2024 (ECF No. 198), and (viii) all other orders

entered in the case that were adverse, either in whole or in part, to Defendants.


[*Remainder of page blank*]

Dated: August 26, 2024

Respectfully submitted,

 s/ Jeff E. Butler

Jeff E. Butler
John P. Alexander
Giannina Crosby
CLIFFORD CHANCE US LLP
Two Manhattan West
375 9th Avenue
New York, New York 10001
212-878-8000
Jeff.butler@cliffordchance.com

*Attorneys for Defendants*

Query    Reports ▾    Utilities ▾    Help    Log Out

CLOSED,APPEAL,ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:20-cv-09713-LLS

| | |
|---|---|
| Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Limited et al | Date Filed: 11/18/2020 |
| Assigned to: Judge Louis L. Stanton | Date Terminated: 06/17/2024 |
| Demand: $9,999,000 | Jury Demand: None |
| Cause: 28:1332bc Diversity-Breach of Contract | Nature of Suit: 190 Contract: Other |
| | Jurisdiction: Diversity |

**Plaintiff**

**Frontier Airlines, Inc.**                    represented by    **Aaron Schaer**
Lane Powell PC
1420 Fifth Ave, Ste 4200
P.O. Box 91302
Seattle, WA 98111-9402
206-223-7000
Email: SchaerA@lanepowell.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David G. Hosenpud**
Lane Powell PC
601 SW Second Avenue
Ste 2100
Portland, OR 97204
503-778-2141
Fax: 503-778-2200
Email: hosenpudd@lanepowell.com
*ATTORNEY TO BE NOTICED*

**Peter Douglas Hawkes**
Angeli Law Group LLC
121 SW Morrison St.
Suite 400
Portland, OR 97204
971-420-0220
Fax: 503-227-0880
Email: peter@angelilaw.com
*TERMINATED: 06/04/2021*

**Sarah Esther Molinoff**
Holland & Knight LLP
601 SW Second Avenue
Suite 1800
Portland, OR 97204
503-517-2912

Email: sarah.molinoff@hklaw.com
*TERMINATED: 10/28/2021*

**Neil Stephen Binder**
Binder & Schwartz LLP
675 Third Avenue
Ste 26th Floor
New York, NY 10017
212-510-7031
Fax: 212-510-7299
Email: nbinder@binderschwartz.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**AMCK Aviation Holdings Ireland Limited**            represented by  **Jeff Edward Butler**
Clifford Chance US LLP
Two Manhattan West
375 9th Avenue
New York, NY 10001
212-878-8000
Email: jeff.butler@cliffordchance.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Minji Reem**
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022
212-756-2310
Email: Minji.Reem@srz.com
*TERMINATED: 03/20/2024*

**Defendant**

**Accipiter Investment 4 Limited**            represented by  **Jeff Edward Butler**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Minji Reem**
(See above for address)
*TERMINATED: 03/20/2024*

**Defendant**

**Vermillion Aviation (Two) Limited**            represented by  **Jeff Edward Butler**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Minji Reem**
(See above for address)
*TERMINATED: 03/20/2024*

**Defendant**

**Wells Fargo Trust Company, N.A.**
*solely in its capacity as Owner Trustee*

represented by **Jeff Edward Butler**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Minji Reem**
(See above for address)
*TERMINATED: 03/20/2024*

**Defendant**

**UMB Bank, N.A.**
*solely in its capacity as Owner Trustee*

represented by **Jeff Edward Butler**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Minji Reem**
(See above for address)
*TERMINATED: 03/20/2024*

**Counter Claimant**

**AMCK Aviation Holdings Ireland Limited**

represented by **Jeff Edward Butler**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Minji Reem**
(See above for address)
*TERMINATED: 03/20/2024*

V.

**Counter Defendant**

**Frontier Airlines, Inc.**

represented by **David G. Hosenpud**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter Douglas Hawkes**
(See above for address)
*TERMINATED: 06/04/2021*

**Sarah Esther Molinoff**
(See above for address)
*TERMINATED: 10/28/2021*

**Neil Stephen Binder**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|

| 11/18/2020 | 1 | COMPLAINT against AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A.. (Filing Fee $ 400.00, Receipt Number ANYSDC-22644104)Document filed by Frontier Airlines, Inc...(Binder, Neil) (Entered: 11/18/2020) |
|---|---|---|
| 11/18/2020 | 2 | CIVIL COVER SHEET filed..(Binder, Neil) (Entered: 11/18/2020) |
| 11/18/2020 | 3 | REQUEST FOR ISSUANCE OF SUMMONS as to AMCK Aviation Holdings Ireland Limited, re: 1 Complaint,. Document filed by Frontier Airlines, Inc...(Binder, Neil) (Entered: 11/18/2020) |
| 11/18/2020 | 4 | REQUEST FOR ISSUANCE OF SUMMONS as to Accipiter Investment 4 Limited, re: 1 Complaint,. Document filed by Frontier Airlines, Inc...(Binder, Neil) (Entered: 11/18/2020) |
| 11/18/2020 | 5 | REQUEST FOR ISSUANCE OF SUMMONS as to Vermillion Aviation (Two) Limited, re: 1 Complaint,. Document filed by Frontier Airlines, Inc...(Binder, Neil) (Entered: 11/18/2020) |
| 11/18/2020 | 6 | REQUEST FOR ISSUANCE OF SUMMONS as to Wells Fargo Trust Company, N.A., re: 1 Complaint,. Document filed by Frontier Airlines, Inc...(Binder, Neil) (Entered: 11/18/2020) |
| 11/18/2020 | 7 | REQUEST FOR ISSUANCE OF SUMMONS as to UMB Bank, N.A., re: 1 Complaint,. Document filed by Frontier Airlines, Inc...(Binder, Neil) (Entered: 11/18/2020) |
| 11/18/2020 | 8 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Frontier Airlines, Inc...(Binder, Neil) (Entered: 11/18/2020) |
| 11/19/2020 | | ***NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney Neil Stephen Binder. The party information for the following party/parties has been modified: Wells Fargo Trust Company, N.A., UMB Bank, N.A.. The information for the party/parties has been modified for the following reason/reasons: party text was omitted;. (pc) (Entered: 11/19/2020) |
| 11/19/2020 | | ***NOTICE TO ATTORNEY REGARDING CIVIL. CASE OPENING STATISTICAL ERROR CORRECTION: Notice to attorney Neil Stephen Binder. The following case opening statistical information was erroneously selected/entered: Dollar Demand $53,000,000,000; County code New York;. The following correction(s) have been made to your case entry: the Dollar Demand has been modified to $9,999,000; the County code has been modified to XX Out of State;. (pc) (Entered: 11/19/2020) |
| 11/19/2020 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Analisa Torres. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.uscourts.gov/judges/district-judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at https://nysd.uscourts.gov/rules/ecf-related-instructions..(pc) (Entered: 11/19/2020) |
| 11/19/2020 | | Magistrate Judge Debra C. Freeman is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018-06/AO-3.pdf. (pc) (Entered: 11/19/2020) |
| 11/19/2020 | | Case Designated ECF. (pc) (Entered: 11/19/2020) |

| 11/19/2020 | 9 | ELECTRONIC SUMMONS ISSUED as to AMCK Aviation Holdings Ireland Limited.. (pc) (Entered: 11/19/2020) |
|---|---|---|
| 11/19/2020 | 10 | ELECTRONIC SUMMONS ISSUED as to Vermillion Aviation (Two) Limited..(pc) (Entered: 11/19/2020) |
| 11/19/2020 | 11 | ELECTRONIC SUMMONS ISSUED as to UMB Bank, N.A...(pc) (Entered: 11/19/2020) |
| 11/19/2020 | 12 | ELECTRONIC SUMMONS ISSUED as to Wells Fargo Trust Company, N.A...(pc) (Entered: 11/19/2020) |
| 11/19/2020 | 13 | ELECTRONIC SUMMONS ISSUED as to Accipiter Investment 4 Limited..(pc) (Entered: 11/19/2020) |
| 11/20/2020 | 14 | INITIAL PRETRIAL CONFERENCE ORDER: Counsel for all parties are directed to appear for an initial pretrial conference, in accordance with Rule 16 of the Federal Rules of Civil Procedure, at 11:00 a.m. on January 19, 2021, to be held telephonically. The parties are directed to dial 888-398-2342 or 215-861-0674, and enter access code 5598827. Principal trial counsel must appear at this and all subsequent conferences. Initial Conference set for 1/19/2021 at 11:00 AM before Judge Analisa Torres. (Signed by Judge Analisa Torres on 11/20/2020) (kv) (Entered: 11/20/2020) |
| 11/20/2020 | 15 | ORDER: To protect the public health, while promoting the "just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, it is ORDERED pursuant to Rules 30(b)(3) and 30(b)(4) of the Federal Rules of Civil Procedure that all depositions in this action may be taken via telephone, videoconference, or other remote means. It is further ORDERED pursuant to Rule 30(b)(5) that a deposition will be deemed to have taken place "before an officer appointed or designated under Rule 28" if such officer attends the deposition using the same remote means used to connect all other participants, so long as all participants (including the officer) can clearly hear and be heard by all other participants. The parties are encouraged to engage in discovery through remote means at every available opportunity. SO ORDERED. (Signed by Judge Analisa Torres on 11/20/2020) (kv) (Entered: 11/20/2020) |
| 11/20/2020 | 16 | ORDER: To conserve resources, to promote judicial efficiency, and in an effort to achieve a faster disposition of this matter, it is hereby ORDERED that the parties discuss whether they are willing to consent, under 28 U.S.C. § 636(c), to conducting all further proceedings before the assigned Magistrate Judge. (as further set forth herein). SO ORDERED. (Signed by Judge Analisa Torres on 11/20/2020) (kv) (Entered: 11/20/2020) |
| 12/09/2020 | 17 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MOTION for David G. Hosenpud to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-22956733. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Frontier Airlines, Inc...(Hosenpud, David) Modified on 12/9/2020 (vba). (Entered: 12/09/2020) |
| 12/09/2020 | 18 | AFFIDAVIT of David G. Hosenpud in Support re: 17 MOTION for David G. Hosenpud to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-22956733. **Motion and supporting papers to be reviewed by Clerk's Office staff..** Document filed by Frontier Airlines, Inc...(Hosenpud, David) (Entered: 12/09/2020) |
| 12/09/2020 | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice to RE-FILE Document No. 17 MOTION for David G. Hosenpud to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-22956733. Motion and supporting papers to be reviewed by Clerk's Office staff... The filing is deficient for the following reason(s): missing Certificate of Good Standing from SUPREME COURT OF OREGON SUPREME COURT OF CALIFORNIA; missing Proposed Order; MISSING NOTARIZED AFFIDAVIT OR DECLARATION;. Re-** |

| | | |
|---|---|---|
| | | **file the motion as a Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Proposed Order.. (vba)** (Entered: 12/09/2020) |
| 12/09/2020 | 19 | PROPOSED ORDER. Document filed by Frontier Airlines, Inc.. Related Document Number: 17 ..(Hosenpud, David) **Proposed Order to be reviewed by Clerk's Office staff.** (Entered: 12/09/2020) |
| 12/09/2020 | 20 | NOTICE OF APPEARANCE by Jeff Edward Butler on behalf of AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A...(Butler, Jeff) (Entered: 12/09/2020) |
| 12/09/2020 | 21 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Mitsubishi Corporation, Corporate Parent CK Asset Holdings Limited, Corporate Parent Vermillion Aviation Finance S.a r.l., Corporate Parent Vermillion Aviation Holdings Limited for AMCK Aviation Holdings Ireland Limited. Document filed by AMCK Aviation Holdings Ireland Limited..(Butler, Jeff) (Entered: 12/09/2020) |
| 12/09/2020 | 22 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent CK Asset Holdings Limited, Corporate Parent Accipiter Holdings DAC, Corporate Parent Accipiter Investments Holdings DAC, Corporate Parent Accipiter Investments Limited, Corporate Parent CK Capital Limited for Accipiter Investment 4 Limited. Document filed by Accipiter Investment 4 Limited..(Butler, Jeff) (Entered: 12/09/2020) |
| 12/09/2020 | 23 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Mitsubishi Corporation, Corporate Parent AMCK Aviation Holdings Ireland Limited, Corporate Parent CK Asset Holdings Limited, Corporate Parent Vermillion Aviation Finance S.a r.l., Corporate Parent Vermillion Aviation Holdings Limited for Vermillion Aviation (Two) Limited. Document filed by Vermillion Aviation (Two) Limited..(Butler, Jeff) (Entered: 12/09/2020) |
| 12/09/2020 | 24 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent UMB Financial Corporation for UMB Bank, N.A.. Document filed by UMB Bank, N.A... (Butler, Jeff) (Entered: 12/09/2020) |
| 12/09/2020 | 25 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Wells Fargo & Company, Corporate Parent WFC Holdings, LLC for Wells Fargo Trust Company, N.A.. Document filed by Wells Fargo Trust Company, N.A...(Butler, Jeff) (Entered: 12/09/2020) |
| 12/09/2020 | 26 | NOTICE OF APPEARANCE by Minji Reem on behalf of AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A...(Reem, Minji) (Entered: 12/09/2020) |
| 12/10/2020 | 27 | LETTER MOTION for Extension of Time *of the initial pretrial conference and for an extension of the deadline to submit a joint letter* addressed to Judge Analisa Torres from Jeff E. Butler dated 12/10/2020. Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A...(Butler, Jeff) (Entered: 12/10/2020) |
| 12/11/2020 | | NOTICE OF CASE REASSIGNMENT to Judge Louis L. Stanton. Judge Analisa Torres is no longer assigned to the case..(wb) (Entered: 12/11/2020) |
| 12/11/2020 | 28 | LETTER MOTION for Extension of Time to File Answer addressed to Judge Louis L. Stanton from Jeff E. Butler dated 12/11/2020. Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion |

| | | |
|---|---|---|
| | | Aviation (Two) Limited, Wells Fargo Trust Company, N.A...(Butler, Jeff) (Entered: 12/11/2020) |
| 12/14/2020 | 29 | ORDER granting 27 Letter Motion for Extension of Time. So Ordered. (Signed by Judge Louis L. Stanton on 12/14/2020) (rro) (Entered: 12/14/2020) |
| 12/14/2020 | 30 | ORDER granting 28 Letter Motion for Extension of Time to Answer re 1 Complaint. So Ordered. (AMCK Aviation Holdings Ireland Limited answer due 1/29/2021; Accipiter Investment 4 Limited answer due 1/29/2021; UMB Bank, N.A. answer due 1/29/2021; Vermillion Aviation (Two) Limited answer due 1/29/2021; Wells Fargo Trust Company, N.A. answer due 1/29/2021) (Signed by Judge Louis L. Stanton on 12/14/2020) (rro) (Entered: 12/14/2020) |
| 12/22/2020 | 31 | MOTION for David G. Hosenpud to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Frontier Airlines, Inc.. (Attachments: # 1 Affidavit, # 2 Exhibit Oregon Certificate of Good Standing, # 3 Exhibit California Certificate of Good Standing, # 4 Text of Proposed Order).(Hosenpud, David) (Entered: 12/22/2020) |
| 12/22/2020 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 31 MOTION for David G. Hosenpud to Appear Pro Hac Vice . Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 12/22/2020) |
| 12/22/2020 | 32 | ORDER GRANTING MOTION FOR ADMISSION PRO HAC VICE granting 31 Motion for David G. Hosenpud to Appear Pro Hac Vice. (Signed by Judge Louis L. Stanton on 12/22/2020) (rro) (Entered: 12/22/2020) |
| 12/30/2020 | 33 | AFFIDAVIT OF SERVICE of Summons and Complaint,. Accipiter Investment 4 Limited served on 11/25/2020, answer due 1/29/2021; Vermillion Aviation (Two) Limited served on 11/25/2020, answer due 1/29/2021. Service was made by Mail. Document filed by Frontier Airlines, Inc.. (Attachments: # 1 Exhibit Ex 1 - FedEx Proof of Delivery on Def Accipter, # 2 Exhibit Ex 2 - FedEx Proof of Delivery - Vermillion).(Hosenpud, David) (Entered: 12/30/2020) |
| 12/30/2020 | 34 | AFFIDAVIT OF SERVICE of Summons and Complaint,. AMCK Aviation Holdings Ireland Limited served on 12/1/2020, answer due 1/29/2021. Service was accepted by Robin Hutt, clerk on duty at office of the registered agent. Document filed by Frontier Airlines, Inc...(Hosenpud, David) (Entered: 12/30/2020) |
| 12/30/2020 | 35 | AFFIDAVIT OF SERVICE of Summons and Complaint,. UMB Bank, N.A. served on 12/2/2020, answer due 1/29/2021. Service was accepted by Kenneth Miller, Legal Process Specialist and person in charge at office of Registered Agent. Document filed by Frontier Airlines, Inc...(Hosenpud, David) (Entered: 12/30/2020) |
| 12/30/2020 | 36 | AFFIDAVIT OF SERVICE of Summons and Complaint,. Wells Fargo Trust Company, N.A. served on 12/3/2020, answer due 1/29/2021. Service was accepted by Wendy Phippen, Clerk at Office of Registered Agent. Document filed by Frontier Airlines, Inc... (Hosenpud, David) (Entered: 12/30/2020) |
| 01/29/2021 | 37 | MOTION to Dismiss - *Partial Motion for Dismissal*. Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A...(Butler, Jeff) (Entered: 01/29/2021) |
| 01/29/2021 | 38 | MEMORANDUM OF LAW in Support re: 37 MOTION to Dismiss - *Partial Motion for Dismissal*. . Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter |

|            |     |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                   |
|------------|-----|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|            |     | Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A...(Butler, Jeff) (Entered: 01/29/2021)                                                                                                                                                                                                                                                                                                                                                                                                      |
| 01/29/2021 | 39  | DECLARATION of Jeff E. Butler in Support re: 37 MOTION to Dismiss - *Partial Motion for Dismissal*.. Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A.. (Attachments: # 1 Exhibit 1 Aircraft Operating Lease Agreement dated 6/9/2014, # 2 Exhibit 2 Aircraft Operating Lease Agreement dated 9/30/2019, # 3 Exhibit 3 Excerpts of a Guaranty dated 9/30/2019, # 4 Exhibit 4 Framework Agreement dated 3/16/2020, # 5 Exhibit 5 Aircraft Lease Agreement dated 3/16/2020, # 6 Exhibit 6 Excerpts of a Guaranty dated 3/16/2020, # 7 Exhibit 7 Email dated 4/30/2020, # 8 Exhibit 8 Email dated 4/9/2020, # 9 Exhibit 9 Notice of Termination dated 5/8/2020).(Butler, Jeff) (Entered: 01/29/2021) |
| 02/10/2021 | 40  | LETTER MOTION for Extension of Time addressed to Judge Louis L. Stanton from David G. Hosenpud dated February 10, 2021. Document filed by Frontier Airlines, Inc...(Hosenpud, David) (Entered: 02/10/2021)                                                                                                                                                                                                                                                                                                                                           |
| 02/10/2021 | 41  | ORDER granting 40 Letter Motion for Extension of Time. SO ORDERED. (Signed by Judge Louis L. Stanton on 2/10/2021) (nb) (Entered: 02/10/2021)                                                                                                                                                                                                                                                                                                                                                                                                       |
| 02/10/2021 |     | Set/Reset Deadlines: AMCK Aviation Holdings Ireland Limited answer due 4/9/2021; Accipiter Investment 4 Limited answer due 4/9/2021; UMB Bank, N.A. answer due 4/9/2021; Vermillion Aviation (Two) Limited answer due 4/9/2021; Wells Fargo Trust Company, N.A. answer due 4/9/2021. Responses due by 2/26/2021 Replies due by 3/12/2021. (nb) (Entered: 02/10/2021)                                                                                                                                                                                   |
| 02/26/2021 | 42  | RESPONSE in Opposition to Motion re: 37 MOTION to Dismiss - *Partial Motion for Dismissal*. . Document filed by Frontier Airlines, Inc...(Hosenpud, David) (Entered: 02/26/2021)                                                                                                                                                                                                                                                                                                                                                                     |
| 03/12/2021 | 43  | REPLY MEMORANDUM OF LAW in Support re: 37 MOTION to Dismiss - *Partial Motion for Dismissal*. . Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A...(Butler, Jeff) (Entered: 03/12/2021)                                                                                                                                                                                                                                     |
| 03/12/2021 | 44  | LETTER addressed to Judge Louis L. Stanton from Jeff E. Butler dated 3/12/2021 re: Request for oral argument in connection with Defendants' Partial Motion to Dismiss (Doc. 37). Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A...(Butler, Jeff) (Entered: 03/12/2021)                                                                                                                                                     |
| 05/05/2021 | 45  | MEMORANDUM & ORDER denying as moot 37 Motion to Dismiss. Accordingly, the motions for dismissal of the claims against Accipiter, Vermillion, UMB and Wells Fargo are denied as moot. (Signed by Judge Louis L. Stanton on 5/5/2021) (rro) (Entered: 05/05/2021)                                                                                                                                                                                                                                                                                      |
| 05/10/2021 | 46  | NOTICE OF APPEARANCE by Sarah Esther Molinoff on behalf of Frontier Airlines, Inc...(Molinoff, Sarah) (Entered: 05/10/2021)                                                                                                                                                                                                                                                                                                                                                                                                                         |
| 05/19/2021 | 47  | ANSWER to 1 Complaint,,, COUNTERCLAIM against Frontier Airlines, Inc.. Document filed by AMCK Aviation Holdings Ireland Limited..(Butler, Jeff) (Entered: 05/19/2021)                                                                                                                                                                                                                                                                                                                                                                                |
| 05/19/2021 | 48  | ANSWER to 1 Complaint,. Document filed by Accipiter Investment 4 Limited..(Butler, Jeff) (Entered: 05/19/2021)                                                                                                                                                                                                                                                                                                                                                                                                                                      |
| 05/19/2021 | 49  | ANSWER to 1 Complaint,. Document filed by Vermillion Aviation (Two) Limited..(Butler, Jeff) (Entered: 05/19/2021)                                                                                                                                                                                                                                                                                                                                                                                                                                   |

SDNY CM/ECF NextGen Version 1.7

| | | |
|---|---|---|
| 05/19/2021 | 50 | ANSWER to 1 Complaint,. Document filed by UMB Bank, N.A...(Butler, Jeff) (Entered: 05/19/2021) |
| 05/19/2021 | 51 | ANSWER to 1 Complaint,. Document filed by Wells Fargo Trust Company, N.A... (Butler, Jeff) (Entered: 05/19/2021) |
| 06/03/2021 | 52 | MOTION for Peter D. Hawkes to Withdraw as Attorney . Document filed by Frontier Airlines, Inc...(Molinoff, Sarah) (Entered: 06/03/2021) |
| 06/03/2021 | 53 | DECLARATION of Peter D. Hawkes in Support re: 52 MOTION for Peter D. Hawkes to Withdraw as Attorney .. Document filed by Frontier Airlines, Inc...(Molinoff, Sarah) (Entered: 06/03/2021) |
| 06/03/2021 | 54 | PROPOSED ORDER FOR WITHDRAWAL OF ATTORNEY. Document filed by Frontier Airlines, Inc.. Related Document Number: 52 ..(Molinoff, Sarah) (Entered: 06/03/2021) |
| 06/04/2021 | 55 | ORDER FOR CONFERENCE PURSUANT TO RULE 16(b): This action is scheduled for a conference in accordance with Fed. R. Civ. P. 16(b) on Friday, July 9, 2021 at 3:00 P.M. The parties must be prepared to discuss, at the conference, the subjects set forth in subdivisions (b) and (c) of Rule 16. At least one week before the time of the conference, the parties are jointly to prepare, sign and submit to me a proposed Scheduling Order, containing the following: as set forth herein. Initial Conference set for 7/9/2021 at 03:00 PM before Judge Louis L. Stanton. (Signed by Judge Louis L. Stanton on 6/04/2021) (ama) (Entered: 06/04/2021) |
| 06/04/2021 | 56 | ORDER: granting 52 Motion to Withdraw as Attorney. Upon the motion for Peter D. Hawkes for leave to withdraw from this action as counsel for Plaintiff, IT IS HEREBY ORDERED: The motion is granted. SO ORDERED. Attorney Peter Douglas Hawkes terminated. (Signed by Judge Louis L. Stanton on 6/04/2021) (ama) (Entered: 06/04/2021) |
| 06/09/2021 | 57 | ANSWER to 47 Counterclaim. Document filed by Frontier Airlines, Inc...(Hosenpud, David) (Entered: 06/09/2021) |
| 07/01/2021 | 58 | PROPOSED SCHEDULING ORDER. Document filed by Frontier Airlines, Inc... (Hosenpud, David) (Entered: 07/01/2021) |
| 07/07/2021 | | Set/Reset Hearings: Initial Conference set for 7/9/2021 at 03:00 PM in Courtroom 21C, 500 Pearl Street, New York, NY 10007 before Judge Louis L. Stanton. (ml) (Entered: 07/07/2021) |
| 07/09/2021 | | Minute Entry for proceedings held before Judge Louis L. Stanton: Initial Pretrial Conference held on 7/9/2021. (ml) (Entered: 07/09/2021) |
| 07/09/2021 | 59 | SCHEDULING ORDER: Joinder of Parties due by 7/30/2021. Fact Discovery due by 3/25/2022. The parties will complete depositions by March 25, 2022, with particular deposition datesto be agreed upon by the parties. Each side reserves its rights to challenge any of the followingproposed depositions. The parties estimate the trial will last 5-6 days. The parties request a bench trial. This Scheduling Order may be altered or amended only on a showing of good cause not foreseeable at the time of the conference or when justice so requires. SO ORDERED. (Signed by Judge Louis L. Stanton on 7/9/2021) (rro) (Entered: 07/09/2021) |
| 10/26/2021 | 60 | MOTION for Sarah E. Molinoff to Withdraw as Attorney . Document filed by Frontier Airlines, Inc...(Molinoff, Sarah) (Entered: 10/26/2021) |
| 10/26/2021 | 61 | DECLARATION of Sarah E. Molinoff in Support re: 60 MOTION for Sarah E. Molinoff to Withdraw as Attorney .. Document filed by Frontier Airlines, Inc...(Molinoff, Sarah) |

|  |  | (Entered: 10/26/2021) |
|---|---|---|
| 10/26/2021 | 62 | PROPOSED ORDER FOR WITHDRAWAL OF ATTORNEY. Document filed by Frontier Airlines, Inc.. Related Document Number: 60 ..(Molinoff, Sarah) (Entered: 10/26/2021) |
| 10/28/2021 | 63 | ORDER granting 60 Motion to Withdraw as Attorney. IT IS HEREBY ORDERED: The motion is granted. Attorney Sarah Esther Molinoff terminated. (Signed by Judge Louis L. Stanton on 10/28/2021) (rro) (Entered: 10/28/2021) |
| 11/04/2021 | 64 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MOTION for Aaron Schaer to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-25292143. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Frontier Airlines, Inc.. (Attachments: # 1 Affidavit, # 2 Certificate of Good Standing, # 3 Certificate of Good Standing, # 4 Text of Proposed Order).(Schaer, Aaron) Modified on 11/5/2021 (aea). (Entered: 11/04/2021) |
| 11/05/2021 |  | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice to RE-FILE Document No. 64 MOTION for Aaron Schaer to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-25292143. Motion and supporting papers to be reviewed by Clerk's Office staff... The filing is deficient for the following reason(s): missing Certificate of Good Standing from SUPREME COURT OF WASHINGTON. Re-file the motion as a Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Proposed Order. (aea)** (Entered: 11/05/2021) |
| 11/09/2021 | 65 | MOTION for Aaron Schaer to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Frontier Airlines, Inc.. (Attachments: # 1 Affidavit, # 2 Certificate of Good Standing, # 3 Certificate of Good Standing, # 4 Text of Proposed Order).(Schaer, Aaron) (Entered: 11/09/2021) |
| 11/10/2021 |  | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 65 MOTION for Aaron Schaer to Appear Pro Hac Vice . Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 11/10/2021) |
| 12/10/2021 | 66 | ORDER GRANTING MOTION FOR ADMISSION PRO HAC VICE granting 65 Motion for Aaron Schaer to Appear Pro Hac Vice. IT IS HEREBY ORDERED that Applicant is admitted to practice pro hac vice in the above-captioned case in the United States District Court for the Southern District of New York. All attorneys appearing before this Court are subject to the Local Rules of this Court, including the Rules governing discipline of attorneys. (Signed by Judge Louis L. Stanton on 12/10/2021) (mml) (Entered: 12/10/2021) |
| 12/10/2021 | 67 | LETTER MOTION for Extension of Time addressed to Judge Louis L. Stanton from David G. Hosenpud dated December 10, 2021. Document filed by Frontier Airlines, Inc... (Schaer, Aaron) (Entered: 12/10/2021) |
| 12/13/2021 | 68 | ORDER granting 67 Letter Motion for Extension of Time. Granted. (Signed by Judge Louis L. Stanton on 12/13/2021) (rro) (Entered: 12/13/2021) |
| 12/30/2021 | 69 | JOINT MOTION for Protective Order *Regarding Confidential Information and Documents*. Document filed by Frontier Airlines, Inc...(Schaer, Aaron) (Entered: 12/30/2021) |
| 12/30/2021 | 70 | PROPOSED ORDER. Document filed by Frontier Airlines, Inc.. Related Document Number: 69 ..(Schaer, Aaron) **Proposed Order to be reviewed by Clerk's Office staff.** |

| | | (Entered: 12/30/2021) |
|---|---|---|
| 01/03/2022 | | ***NOTICE TO COURT REGARDING PROPOSED ORDER. Document No. 70 Proposed Order was reviewed and approved as to form. (dt) (Entered: 01/03/2022) |
| 01/04/2022 | 71 | STIPULATED PROTECTIVE ORDER REGARDING CONFIDENTIAL INFORMATION AND DOCUMENTS...regarding procedures to be followed that shall govern the handling of confidential material... as modified by the Court in P.2, Paragraph 4 above. IT IS SO ORDERED. Motions terminated: 69 JOINT MOTION for Protective Order *Regarding Confidential Information and Documents* filed by Frontier Airlines, Inc. (Signed by Judge Louis L. Stanton on 1/4/2022) (vfr) (Entered: 01/04/2022) |
| 01/10/2022 | 72 | LETTER MOTION for Extension of Time addressed to Judge Louis L. Stanton from David G. Hosenpud dated January 10, 2022. Document filed by Frontier Airlines, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D).(Schaer, Aaron) (Entered: 01/10/2022) |
| 01/11/2022 | 73 | LETTER addressed to Judge Louis L. Stanton from Jeff E. Butler dated 1/11/2022 re: in response to the letter from Plaintiff dated January 10, 2022. Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A.. (Attachments: # 1 Exhibit A - Press release).(Butler, Jeff) (Entered: 01/11/2022) |
| 01/14/2022 | 74 | ORDER granting 72 Letter Motion for Extension of Time. Granted. (Signed by Judge Louis L. Stanton on 1/14/2022) (rro) (Entered: 01/14/2022) |
| 02/16/2022 | 75 | LETTER MOTION for Conference addressed to Judge Louis L. Stanton from David G. Hosenpud dated February 16, 2022. Document filed by Frontier Airlines, Inc... (Hosenpud, David) (Entered: 02/16/2022) |
| 02/23/2022 | | Set/Reset Hearings: Status Conference set for 5/27/2022 at 12:00 PM in Courtroom 21C, 500 Pearl Street, New York, NY 10007 before Judge Louis L. Stanton. (ml) (Entered: 02/23/2022) |
| 03/01/2022 | 76 | JOINT LETTER MOTION for Extension of Time to Complete Discovery addressed to Judge Louis L. Stanton from David G. Hosenpud dated March 1, 2022. Document filed by Frontier Airlines, Inc...(Hosenpud, David) (Entered: 03/01/2022) |
| 03/02/2022 | 77 | LETTER MOTION for Conference *, requesting a pre-motion conference,* addressed to Judge Louis L. Stanton from Jeff E. Butler dated 3/2/2022. Document filed by AMCK Aviation Holdings Ireland Limited..(Butler, Jeff) (Entered: 03/02/2022) |
| 03/03/2022 | 78 | ORDER granting 76 Letter Motion for Extension of Time to Complete Discovery. Granted. (Signed by Judge Louis L. Stanton on 3/3/2022) (rro) (Entered: 03/03/2022) |
| 03/03/2022 | | Set/Reset Deadlines: Deposition due by 4/15/2022. Fact Discovery due by 4/15/2022. (rro) (Entered: 03/03/2022) |
| 03/04/2022 | 79 | LETTER MOTION to Seal addressed to Judge Louis L. Stanton from David G. Hosenpud dated March 4, 2022. Document filed by Frontier Airlines, Inc...(Hosenpud, David) (Entered: 03/04/2022) |
| 03/04/2022 | 80 | ***SELECTED PARTIES***DECLARATION of David G. Hosenpud in Support re: 79 LETTER MOTION to Seal addressed to Judge Louis L. Stanton from David G. Hosenpud dated March 4, 2022.. Document filed by All Defendants. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)Motion or Order to File Under Seal: 79 . (Hosenpud, David) (Entered: 03/04/2022) |

| | | |
|---|---|---|
| 03/04/2022 | 81 | LETTER addressed to Judge Louis L. Stanton from David G. Hosenpud dated March 4, 2022 re: in response to the Letter Motion filed by Defendant AMCK dated March 2, 2022 (ECF No. 77). Document filed by Frontier Airlines, Inc...(Hosenpud, David) (Entered: 03/04/2022) |
| 03/10/2022 | 82 | ORDER denying 79 Letter Motion to Seal. Plaintiff seeks leave to file under seal documents submitted in support of its Response to Defendant's Letter Motion to request a protective order precluding the depositions of Messrs. Gerald Ma and Francis Lee. In support of its application, Plaintiff cites to the Stipulated Protective Order Regarding Confidential Information and Documents (Dkt. No. 71). The Court has reviewed the documents and none of them present a "most compelling reason" to seal them from public access. Lugosch v. Pyramid Co., 435 F.3d 110, 126 (2d Cir. 2006) ("Because the First Amendment presumption gives rise to a higher burden on the party seeking to prevent disclosure than does the common law presumption, the presumption of access here can be overcome only by specific, on-the-record findings that higher values necessitate a narrowly tailored sealing."). A stipulated protective order does not consider the special (and Constitutional) public interest in access to materials submitted to a court to influence a judicial action. Accordingly, it does not serve as an independent basis for sealing of documents submitted in court applications. Plaintiff's application is denied. (Signed by Judge Louis L. Stanton on 3/10/2022) (rro) (Entered: 03/10/2022) |
| 03/21/2022 | 83 | ORDER denying 77 Letter Motion for Conference addressed to Judge Louis L. Stanton from Jeff E. Butler dated 3/2/2022. The application for a protective order is denied. (Signed by Judge Louis L. Stanton on 3/21/2022) (vfr) (Entered: 03/21/2022) |
| 04/08/2022 | 84 | LETTER MOTION for Extension of Time *of fact discovery cutoff* addressed to Judge Louis L. Stanton from Jeff E. Butler dated April 8, 2022. Document filed by AMCK Aviation Holdings Ireland Limited..(Butler, Jeff) (Entered: 04/08/2022) |
| 04/12/2022 | 85 | ORDER granting 84 Letter Motion for Extension of Time. So Ordered. (Signed by Judge Louis L. Stanton on 4/11/2022) (rro) (Entered: 04/12/2022) |
| 04/12/2022 | | Set/Reset Deadlines: Fact Discovery due by 4/29/2022. (rro) (Entered: 04/12/2022) |
| 04/28/2022 | | NOTICE OF REDESIGNATION TO ANOTHER MAGISTRATE JUDGE. The above entitled action has been redesignated to Magistrate Judge Valerie Figueredo. Please note that this is a reassignment of the designation only. (nb) (Entered: 04/28/2022) |
| 05/17/2022 | 86 | LETTER MOTION to Continue *Status Conference* addressed to Judge Louis L. Stanton from David G. Hosenpud dated May 17, 2022. Document filed by Frontier Airlines, Inc... (Hosenpud, David) (Entered: 05/17/2022) |
| 05/23/2022 | | Set/Reset Hearings: Status Conference set 5/27/2022 is adjourned to 7/15/2022 at 12:00 PM in Courtroom 21C, 500 Pearl Street, New York, NY 10007 before Judge Louis L. Stanton. (ml) (Entered: 05/23/2022) |
| 07/08/2022 | 87 | LETTER addressed to Judge Louis L. Stanton from Jeff E. Butler dated 7/8/2022 re: Local Civil Rule 1.6. Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A...(Butler, Jeff) (Entered: 07/08/2022) |
| 07/11/2022 | 88 | LETTER MOTION to Adjourn Conference addressed to Judge Louis L. Stanton from David G. Hosenpud dated July 11, 2022. Document filed by Frontier Airlines, Inc... (Hosenpud, David) (Entered: 07/11/2022) |
| 07/11/2022 | 89 | PROPOSED SCHEDULING ORDER. Document filed by Frontier Airlines, Inc... (Hosenpud, David) (Entered: 07/11/2022) |

| 07/11/2022 | 90 | ORDER granting 88 Letter Motion to Adjourn Conference. Granted. (Signed by Judge Louis L. Stanton on 7/11/2022) (jca) (Entered: 07/11/2022) |
| --- | --- | --- |
| 07/11/2022 | 91 | JOINT AMENDED SCHEDULING ORDER:David G. Hosenpud, counsel for plaintiff, and Jeff Butler, counsel for the defendants, having met and conferred, submit the following proposed amended scheduling order. Depositions have been completed in this matter. The schedule below sets forth the remaining discovery deadlines. Motions due by 11/11/2022. Responses due by 12/9/2022 Replies due by 12/30/2022. Deposition due by 10/28/2022. Pretrial Conference set for 1/13/2023 at 12:00 PM before Judge Louis L. Stanton. Pretrial Order due by 1/10/2023. The parties estimate the trial will last 5-6 days. The parties request a bench trial. This Scheduling Order may be altered or amended only on a showing of good cause not foreseeable at the time of the conference or when justice so requires. (And as further set forth herein.) APPROVED. (Signed by Judge Louis L. Stanton on 7/11/2022) (jca) (Entered: 07/11/2022) |
| 07/13/2022 | 92 | ORDER: Accordingly, plaintiff's letter motion to relate the cases (Dk. No. 87) is denied. So ordered. (Signed by Judge Louis L. Stanton on 7/13/2022) (jca) (Entered: 07/13/2022) |
| 11/11/2022 | 93 | MOTION for Summary Judgment . Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A...(Butler, Jeff) (Entered: 11/11/2022) |
| 11/11/2022 | 94 | DECLARATION of Jane OCallaghan in Support re: 93 MOTION for Summary Judgment .. Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A.. (Attachments: # 1 Exhibit 1- MSN 6184 Aircraft Lease Agreement, # 2 Exhibit 2- MSN 9177 Aircraft Lease Agreement, # 3 Exhibit 3- MSN 9177 Lessor Guarantee, # 4 Exhibit 4- Framework Agreement, # 5 Exhibit 5- Second Amendment, # 6 Exhibit 6- MSN10038 Aircraft Lease Agreement, # 7 Exhibit 7- MSN 10038 Lessor Guarantee, # 8 Exhibit 8- Concession Letter, # 9 Exhibit 9- March 25 draft, # 10 Exhibit 10- April 1 email, # 11 Exhibit 11- March 18 email, # 12 Exhibit 12- March 23 email, # 13 Exhibit 13- March 26 email, # 14 Exhibit 14- March 31 email, # 15 Exhibit 15- Text messages, # 16 Exhibit 16- April 9 email, # 17 Exhibit 17- Receivables Report, # 18 Exhibit 18- May 14 email).(Butler, Jeff) (Entered: 11/11/2022) |
| 11/11/2022 | 95 | DECLARATION of Paul Sheridan in Support re: 93 MOTION for Summary Judgment .. Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A.. (Attachments: # 1 Exhibit 1- April 3 email, # 2 Exhibit 2- April 6 email, # 3 Exhibit 3- April 6 email, # 4 Exhibit 4- April 6 email confirmation, # 5 Exhibit 5- April 6 email, # 6 Exhibit 6- April 8 email, # 7 Exhibit 7- Under seal, # 8 Exhibit 8- April 13 email, # 9 Exhibit 9- April13 email response, # 10 Exhibit 10- April 30 email, # 11 Exhibit 11- April 30 email, # 12 Exhibit 12- May 8 email, # 13 Exhibit 13- May 9 email). (Butler, Jeff) (Entered: 11/11/2022) |
| 11/11/2022 | 96 | DECLARATION of Jeff E. Butler in Support re: 93 MOTION for Summary Judgment .. Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A.. (Attachments: # 1 Exhibit 1- Nov. 13 Email - Under Seal, # 2 Exhibit 2- Nov. 26 Email - Under Seal, # 3 Exhibit 3- Atty's Eyes Only - Under Seal, # 4 Exhibit 4- April 6 Texts - Under Seal, # 5 Exhibit 5- April 6 Texts - Under Seal, # 6 Exhibit 6- April 6 Texts - Under Seal, # 7 Exhibit 7- April 7 Texts - Under Seal, # 8 Exhibit 8- Atty's Eyes Only - Under Seal, # 9 Exhibit 9- Atty's Eyes Only - Under Seal, # 10 Exhibit 10- Atty's Eyes Only - Under Seal, # 11 Exhibit 11- Atty's Eyes Only - Under Seal, # 12 Exhibit 12- April 23 Texts - Under Seal, # 13 Exhibit 13- April 25 Texts - Under Seal, # 14 Exhibit 14- April 29 Texts - Under Seal, # 15 Exhibit 15- May 1 Text - Under Seal, # 16 Exhibit |

| | | |
|---|---|---|
| | | 16- Atty's Eyes Only - Under Seal, # 17 Exhibit 17- May 8 Email - Under Seal, # 18 Exhibit 18- May 8 Email - Under Seal, # 19 Exhibit 19- May13 Email - Under Seal, # 20 Exhibit 20- Complaint, # 21 Exhibit 21- Form S-1 Excerpt, # 22 Exhibit 22- Aug. 23 RFA - Under Seal, # 23 Exhibit 23- Thwaytes Transcript - Under Seal, # 24 Exhibit 24- Bindu Transcript - Under Seal, # 25 Exhibit 25- Fanning Transcript - Under Seal, # 26 Exhibit 26- Dempsey Transcript - Under Seal, # 27 Exhibit 27- Apr. 29 RFA).(Butler, Jeff) (Entered: 11/11/2022) |
| 11/11/2022 | 97 | MEMORANDUM OF LAW in Support re: 93 MOTION for Summary Judgment . . Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A...(Butler, Jeff) (Entered: 11/11/2022) |
| 11/11/2022 | 98 | RULE 56.1 STATEMENT. Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A...(Butler, Jeff) (Entered: 11/11/2022) |
| 11/11/2022 | 99 | LETTER MOTION to Seal addressed to Judge Louis L. Stanton from Jeff E. Butler dated 11/11/2022. Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A...(Butler, Jeff) (Entered: 11/11/2022) |
| 11/11/2022 | 100 | ***SELECTED PARTIES***DECLARATION of Paul Sheridan in Support re: 99 LETTER MOTION to Seal addressed to Judge Louis L. Stanton from Jeff E. Butler dated 11/11/2022., 93 MOTION for Summary Judgment .. Document filed by UMB Bank, N.A., Vermillion Aviation (Two) Limited, Accipiter Investment 4 Limited, AMCK Aviation Holdings Ireland Limited, Wells Fargo Trust Company, N.A., Frontier Airlines, Inc.. (Attachments: # 1 Exhibit 1- April 3 Email, # 2 Exhibit 2- April 6 Email, # 3 Exhibit 3- April 6 Email, # 4 Exhibit 4- April 6 Confirmation, # 5 Exhibit 5- April 6 Email, # 6 Exhibit 6- April 8 Email, # 7 Exhibit 7- April 11 Text Message, # 8 Exhibit 8- April 13 Email, # 9 Exhibit 9- April 13 Response, # 10 Exhibit 10- April 30 Email, # 11 Exhibit 11- April 30 Email, # 12 Exhibit 12- May 8 Email, # 13 Exhibit 13- May 9 Email)Motion or Order to File Under Seal: 99 .(Butler, Jeff) (Entered: 11/11/2022) |
| 11/11/2022 | 101 | ***SELECTED PARTIES***DECLARATION of Jeff E. Butler in Support re: 99 LETTER MOTION to Seal addressed to Judge Louis L. Stanton from Jeff E. Butler dated 11/11/2022., 93 MOTION for Summary Judgment .. Document filed by UMB Bank, N.A., Vermillion Aviation (Two) Limited, Accipiter Investment 4 Limited, AMCK Aviation Holdings Ireland Limited, Wells Fargo Trust Company, N.A., Frontier Airlines, Inc.. (Attachments: # 1 Exhibit 1- Nov. 13 Email, # 2 Exhibit 2- Nov. 26 Email, # 3 Exhibit 3- Atty's Eyes Only, # 4 Exhibit 4- April 6 Texts, # 5 Exhibit 5- April 6 Texts, # 6 Exhibit 6- April 6 Texts, # 7 Exhibit 7- April 7 Texts, # 8 Exhibit 8- Atty's Eyes Only, # 9 Exhibit 9- Atty's Eyes Only, # 10 Exhibit 10- Atty's Eyes Only, # 11 Exhibit 11- Atty's Eyes Only, # 12 Exhibit 12- April 23 Texts, # 13 Exhibit 13- April 25 Texts, # 14 Exhibit 14- April 29 Texts, # 15 Exhibit 15- May 1 Text, # 16 Exhibit 16- Atty's Eyes Only, # 17 Exhibit 17- May 8 Email, # 18 Exhibit 18- May 8 Email, # 19 Exhibit 19- May13 Email, # 20 Exhibit 20- Nov. 18 Complaint, # 21 Exhibit 21- Form S-1 Excerpt, # 22 Exhibit 22- Aug. 23 RFA, # 23 Exhibit 23- Thwaytes Transcript, # 24 Exhibit 24- Bindu Transcript, # 25 Exhibit 25- Fanning Transcript, # 26 Exhibit 26- Dempsey Transcript, # 27 Exhibit 27- Apr. 29 RFA)Motion or Order to File Under Seal: 99 .(Butler, Jeff) (Entered: 11/11/2022) |
| 11/11/2022 | 102 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Support re: 99 LETTER MOTION to Seal addressed to Judge Louis L. Stanton from Jeff E. Butler dated 11/11/2022., 93 MOTION for Summary Judgment . . Document filed by UMB Bank, N.A., Vermillion Aviation (Two) Limited, Accipiter Investment 4 Limited, AMCK |

| | | |
|---|---|---|
| | | Aviation Holdings Ireland Limited, Wells Fargo Trust Company, N.A., Frontier Airlines, Inc.. Motion or Order to File Under Seal: 99 .(Butler, Jeff) (Entered: 11/11/2022) |
| 11/11/2022 | 103 | ***SELECTED PARTIES***RULE 56.1 STATEMENT. Document filed by UMB Bank, N.A., Vermillion Aviation (Two) Limited, Accipiter Investment 4 Limited, AMCK Aviation Holdings Ireland Limited, Wells Fargo Trust Company, N.A., Frontier Airlines, Inc.. Motion or Order to File Under Seal: 99 .(Butler, Jeff) (Entered: 11/11/2022) |
| 12/08/2022 | 104 | ORDER denying 99 Letter Motion to Seal. Denied. (Signed by Judge Louis L. Stanton on 12/8/2022) (rro) (Entered: 12/08/2022) |
| 12/09/2022 | 105 | MEMORANDUM OF LAW in Opposition re: 93 MOTION for Summary Judgment . . Document filed by Frontier Airlines, Inc...(Hosenpud, David) (Entered: 12/09/2022) |
| 12/09/2022 | 106 | COUNTER STATEMENT TO 98 Rule 56.1 Statement. Document filed by Frontier Airlines, Inc...(Hosenpud, David) (Entered: 12/09/2022) |
| 12/09/2022 | 107 | DECLARATION of Robert Fanning in Opposition re: 93 MOTION for Summary Judgment .. Document filed by Frontier Airlines, Inc...(Hosenpud, David) (Entered: 12/09/2022) |
| 12/09/2022 | 108 | DECLARATION of James Dempsey in Opposition re: 93 MOTION for Summary Judgment .. Document filed by Frontier Airlines, Inc.. (Attachments: # 1 Exhibit 1 AEO, Letter of Intent dated 9-10-2019 Under Seal).(Hosenpud, David) (Entered: 12/09/2022) |
| 12/09/2022 | 109 | DECLARATION of Sharath Sashikumar Bindu in Opposition re: 93 MOTION for Summary Judgment .. Document filed by Frontier Airlines, Inc.. (Attachments: # 1 Exhibit 1 AEO, Aircraft Lease Agreement Filed Under Seal, # 2 Exhibit 2 AEO, Trust Agreement Under Seal, # 3 Exhibit 3 AEO, Framework Agreement Filed Under Seal, # 4 Exhibit 4 AEO, Lessor Guaranty Filed Under Seal, # 5 Exhibit 5 AEO, Lease Agreement Filed Under Seal).(Hosenpud, David) (Entered: 12/09/2022) |
| 12/09/2022 | 110 | DECLARATION of David G. Hosenpud in Opposition re: 93 MOTION for Summary Judgment .. Document filed by Frontier Airlines, Inc.. (Attachments: # 1 Exhibit 1 AEO, Airbus Purchase Agreement Under Seal, # 2 Exhibit 2 AEO, Aircraft Sale and Leaseback Agreement Under Seal, # 3 Exhibit 3 Text messages dated 3-20-2020 Under Seal, # 4 Exhibit 4 AEO, Amendment No. 8 to Purchase Agreement Under Seal, # 5 Exhibit 5 AEO, Amendment No. 9 to Purchase Agreement Under Seal, # 6 Exhibit 6 - Chase alerts AMCK sent to Frontier (Redacted) And Under Seal, # 7 Exhibit 7 AEO, Framework Agreement dated 3-16-2020 - Under Sea, # 8 Exhibit 8 - Email dated 3-12-2020, # 9 Exhibit 9 AEO, Email dated 4-2-2020 Under Seal, # 10 Exhibit 10 AEO, Lease Agreement dated 3-16-2020 Under Seal, # 11 Exhibit 11 AEO, Trust Agreement dated 3-16-2020 Under Seal, # 12 Exhibit 12 AEO, Guaranty dated 3-16-2020 Under Seal, # 13 Exhibit 13 - Transfer Receipt dated 3-13-2020 (Redacted) And Under Seal, # 14 Exhibit 14 Emails between AMCK representatives dated 3-16-2020 Under Seal, # 15 Exhibit 15 Concessions request letter dated 3-16-2020, # 16 Exhibit 16 Emails dated 3-12-2020, # 17 Exhibit 17 Emails dated 3-13-2020 Under Seal, # 18 Exhibit 18 Emails dated 3-22-2020 (Redacted) And Under Seal, # 19 Exhibit 19 Emails dated 4-7-2020 Under Seal, # 20 Exhibit 20 Emails dated 3-23-2020 titled Weekly Agenda Under Seal, # 21 Exhibit 21 AEO, Emails dated 3-23-2020 titled Rent Deferral Update.msg, # 22 Exhibit 22 - Emails dated 5-6-2020, # 23 Exhibit 23 Emails dated 3-24-2020 Under Seal, # 24 Exhibit 24 Text messages dated 3-23-2020, # 25 Exhibit 25 Emails dated 3-24-2020 Under Seal, # 26 Exhibit 26 Emails dated 3-24-2020 Under Seal, # 27 Exhibit 27 Email between AMCK representatives dated 5-8-2020, # 28 Exhibit 28 Emails dated 3-23-2020 Under Seal, # 29 Exhibit 29 Emails dated 4-2-2020 Under Seal, # 30 Exhibit 30 Emails dated 4-1-2020, # 31 Exhibit 31 Text messages dated 3-14-2020 to 4-30-2020 Under Seal, # 32 Exhibit 32 Emails dated 4-6-2020 Under Seal, # 33 Exhibit 33 Emails dated 4-9-2020 Under Seal, # |

34 Exhibit 34 Text messages dated 4-7-2020, # 35 Exhibit 35 Emails dated 4-13-2020 Under Seal, # 36 Exhibit 36 Emails dated 4-7-2020 and 4-30-2020 (Redacted) And Under Seal, # 37 Exhibit 37 Minutes of Board meeting dated 4-22-2020, # 38 Exhibit 38 - Emails dated 4-27-2020 Under Seal, # 39 Exhibit 39 Emails dated 5-1-2020 re Monthly Report Under Seal, # 40 Exhibit 40 Emails dated 5-5-2020 Re Weekly Report Under Seal, # 41 Exhibit 41 Emails between AMCK representatives dated 4-27-2020 Under Seal, # 42 Exhibit 42 Emails between AMCK representatives dated 4-22-2020 Under Seal, # 43 Exhibit 43 Emails dated 4-27-2020, # 44 Exhibit 44 Emails between AMCK representatives dated 4-30-2020 Under Seal, # 45 Exhibit 45 Emails between AMCK and Frontier representatives dated 4-30-2020 Under Seal, # 46 Exhibit 46 Text messages dated 3-24-2020 to 5-8-2020, # 47 Exhibit 47 Emails between AMCK representative dated 4-30-2020, # 48 Exhibit Emails dated 5-8-2020, # 49 Exhibit 49 Text messages dated 5-1-2020, # 50 Exhibit 50 Minutes of Board meeting held on 5-8-2020 Under Seal, # 51 Exhibit 51 Email dated 5-8-2020 (Redacted) And Under Seal, # 52 Exhibit 52 Letter dated 5-9-2020, # 53 Exhibit 53 Letter dated 5-12-2020 Under Seal, # 54 Exhibit 54 Letter dated 5-13-2020, # 55 Exhibit 55 Emails dated 5-13-2020 (Redacted) And Under Seal, # 56 Exhibit 56 Email dated 6-29-2020 (Redacted) And Under Seal, # 57 Exhibit 57 - Email dated 4-3-2020 - Under Seal, # 58 Exhibit 58 Email between Frontier and AMCK dated 6-23-2020 Under Seal, # 59 Exhibit Exhibit 59 AEO, Letter dated 6-29-2020 Under Seal, # 60 Exhibit 60 AEO, Letter dated 10-7-2020 Under Seal, # 61 Exhibit 61 AEO, AMCK Comparison Under Seal, # 62 Exhibit 62 Suppl Statement by Dr. Kevin Neels dated 10-28-2022, # 63 Exhibit 63 AEO, Emails dated 4-21-2020 Under Seal, # 64 Exhibit 64 - AEO, Emails dated 4-24-2020 Under Seal, # 65 Exhibit 65 AEO, Emailed dated 4-30-2020 Under Seal, # 66 Exhibit 66 AEO, Emails dated 5-4-2020 Under Seal, # 67 Exhibit 67 Emails dated 4-29-2020 Under Seal, # 68 Exhibit 68 Excerpts from Dep Tr of Fabian Bachrach, # 69 Exhibit 69 Excerpts from Dep Tr of Sharath Sashikumar Bindu, # 70 Exhibit 70 Excerpts from Dep Tr of James Dempsey, # 71 Exhibit 71 Excerpts from the Dep Tr of Robert Fanning, # 72 Exhibit 72 Excerpts from the Dep Tr of Francis Lee, # 73 Exhibit 73 - Excerpts from the Dep Tr of Gerald Ma, # 74 Exhibit 74 -Excerpts from the Dep Tr of Michael McInerney, # 75 Exhibit 75 - Excerpts from the Dep Tr of Ronan Murphy, # 76 Exhibit 76 - Excerpts from Dep Tr of Kevin Neels, # 77 Exhibit 77 - Excerpts from the Dep Tr of Jane OCallahan, # 78 Exhibit 78 - Excerpts from the Dep Tr of Paul Sheridan, # 79 Exhibit 79 -Excerpts from the Dep Tr of Spencer Thwaytes, # 80 Exhibit 80 - Frontier Resp to RFAs, # 81 Exhibit 81 - Neels Expert Report (Redacted) And Under Seal, # 82 Exhibit 82 -AMCK Org Chart).(Hosenpud, David) (Entered: 12/09/2022)

| 12/09/2022 | 111 | LETTER MOTION to Seal addressed to Judge Louis L. Stanton from David G. Hosenpud dated December 9, 2022. Document filed by Frontier Airlines, Inc... (Hosenpud, David) (Entered: 12/09/2022) |
| 12/09/2022 | 112 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Opposition re: 93 MOTION for Summary Judgment . . Document filed by Frontier Airlines, Inc., AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A.. Motion or Order to File Under Seal: 111 .(Hosenpud, David) (Entered: 12/09/2022) |
| 12/09/2022 | 113 | ***SELECTED PARTIES*** RESPONSE re: 103 Rule 56.1 Statement, 98 Rule 56.1 Statement . Document filed by Frontier Airlines, Inc., AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A.. Motion or Order to File Under Seal: 111 . (Hosenpud, David) (Entered: 12/09/2022) |
| 12/09/2022 | 114 | ***SELECTED PARTIES***DECLARATION of James Dempsey in Opposition re: 93 MOTION for Summary Judgment .. Document filed by Frontier Airlines, Inc., AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., |

| | | Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A.. (Attachments: # [1] Exhibit 1 AEO, Letter of Intent dated 9-10-2019 Under Seal)Motion or Order to File Under Seal: [111] .(Hosenpud, David) (Entered: 12/09/2022) |
|---|---|---|
| 12/09/2022 | [115] | ***SELECTED PARTIES***DECLARATION of Sharath Sashikumar Bindu in Opposition re: [93] MOTION for Summary Judgment .. Document filed by Frontier Airlines, Inc., AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A.. (Attachments: # [1] Exhibit 1 AEO, Aircraft Lease Agreement Under Seal, # [2] Exhibit 2 AEO, Trust Agreement Under Seal, # [3] Exhibit 3 AEO, Framework Agreement Under Seal, # [4] Exhibit 4 AEO, Lessor Guaranty Under Seal, # [5] Exhibit 5 AEO, Lease Agreement Under Seal)Motion or Order to File Under Seal: [111] .(Hosenpud, David) (Entered: 12/09/2022) |
| 12/09/2022 | [116] | ***SELECTED PARTIES***DECLARATION of David G. Hosenpud in Opposition re: [93] MOTION for Summary Judgment .. Document filed by Frontier Airlines, Inc., AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A.. (Attachments: # [1] Exhibit 1 - AEO, Airbus Purchase Agreement, # [2] Exhibit 2 AEO, Aircraft Sale and Leaseback Agreement, # [3] Exhibit 3 Text messages dated 3-20-2020, # [4] Exhibit 4 AEO, Amendment No. 8 to Purchase Agreement, # [5] Exhibit 5 AEO, Amendment No. 9 to Purchase Agreement, # [6] Exhibit 6 - Chase alerts AMCK sent to Frontier, # [7] Exhibit 7 - AEO, Framework Agreement dated 3-16-2020, # [8] Exhibit 8 - Email dated 3-12-2020, # [9] Exhibit 9 AEO, Email dated 4-2-2020, # [10] Exhibit 10 AEO, Lease Agreement dated 3-16-2020, # [11] Exhibit 11 - AEO, Trust Agreement dated 3-16-2020, # [12] Exhibit 12 AEO, Guaranty dated 3-16-2020, # [13] Exhibit 13 - Wire Transfer Receipt dated 3-13-2020, # [14] Exhibit 14 Emails between AMCK representatives dated 3-16-2020, # [15] Exhibit 15 Concessions request letter dated 3-16-2020, # [16] Exhibit 16 - Emails dated 3-12-2020, # [17] Exhibit 17 - Emails dated 3-13-2020, # [18] Exhibit 18 - Emails dated 3-22-2020, # [19] Exhibit 19 Emails dated 4-7-2020, # [20] Exhibit 20 Emails dated 3-23-2020 titled Weekly Agenda, # [21] Exhibit 21 AEO, Emails dated 3-23-2020 titled Rent Deferral Update.msg, # [22] Exhibit 22 - Emails dated 5-6-2020, # [23] Exhibit 23 Emails dated 3-24-2020, # [24] Exhibit 24 Text messages dated 3-23-2020, # [25] Exhibit 25 Emails dated 3-24-2020 Under Seal, # [26] Exhibit 26 Emails dated 3-24-2020, # [27] Exhibit 27 Email between AMCK representatives dated 5-8-2020, # [28] Exhibit 28 Emails dated 3-23-2020, # [29] Exhibit 29 Emails dated 4-2-2020 Under Seal, # [30] Exhibit 30 - Emails dated 4-1-2020, # [31] Exhibit 31 Text messages dated 3-14-2020 to 4-30-202, # [32] Exhibit 32 Emails dated 4-6-2020, # [33] Exhibit 33 - Emails dated 4-9-2020, # [34] Exhibit 34 Text messages dated 4-7-2020, # [35] Exhibit 35 Emails dated 4-13-2020, # [36] Exhibit 36 Emails dated 4-7-2020 and 4-30-2020, # [37] Exhibit 37 Minutes of Board meeting dated 4-22-2020, # [38] Exhibit 38 Emails dated 4-27-2020, # [39] Exhibit 39 Emails dated 5-1-2020 re Monthly Report, # [40] Exhibit 40 Emails dated 5-5-2020 Re Weekly Report, # [41] Exhibit 41 Emails between AMCK representatives dated 4-27-2020, # [42] Exhibit 42 - Emails between AMCK representatives dated 4-22-2020, # [43] Exhibit 43 - Emails dated 4-27-2020, # [44] Exhibit 44 Emails between AMCK representatives dated 4-30-2020, # [45] Exhibit 45 Emails between AMCK and Frontier representatives dated 4-30-2020, # [46] Exhibit 46 Text messages dated 3-24-2020 to 5-8-2020, # [47] Exhibit 47 Emails between AMCK representative dated 4-30-2020, # [48] Exhibit 48 Emails dated 5-8-2020, # [49] Exhibit 49 Text messages dated 5-1-2020, # [50] Exhibit 50 Minutes of Board meeting held on 5-8-2020, # [51] Exhibit 51 Email dated 5-8-2020, # [52] Exhibit 52 Letter dated 5-9-2020, # [53] Exhibit 53 Letter dated 5-12-2020, # [54] Exhibit 54 Letter dated 5-13-2020, # [55] Exhibit 55 - Emails dated 5-13-2020, # [56] Exhibit 56 - Email dated 6-29-20, # [57] Exhibit 57 - Email dated 4-3-2020, # [58] Exhibit 58 - Email between Frontier and AMCK dated 6-23-2020, # [59] Exhibit 59 AEO, Letter dated 6-29-2020, # [60] Exhibit 60 AEO, Letter dated 10-7-2020, # [61] Exhibit 61 AEO, AMCK Comparison, # [62] Exhibit 62 Suppl Statement |

|  |  | by Dr. Kevin Neels dated 10-28-2022, # 63 Exhibit 63 AEO, Emails dated 4-21-2020, # 64 Exhibit 64 - AEO, Emails dated 4-24-2020, # 65 Exhibit 65 AEO, Emailed dated 4-30-2020, # 66 Exhibit 66 AEO, Emails dated 5-4-2020, # 67 Exhibit 67 - Emails dated 4-29-2020, # 68 Exhibit 68 Excerpts from Dep Tr of Fabian Bachrach, # 69 Exhibit 69 Excerpts from Dep Tr of Sharath Sashikumar Bindu, # 70 Exhibit 70 Excerpts from Dep Tr of James Dempsey, # 71 Exhibit 71 Excerpts from the Dep Tr of Robert Fanning, # 72 Exhibit 72 Excerpts from the Dep Tr of Francis Lee, # 73 Exhibit 73 Excerpts from the Dep Tr of Gerald Ma, # 74 Exhibit 74 Excerpts from the Dep Tr of Michael McInerney, # 75 Exhibit 75 Excerpts from the Dep Tr of Ronan Murphy, # 76 Exhibit Excerpts from Dep Tr of Kevin Neels, # 77 Exhibit 77 Excerpts from the Dep Tr of Jane OCallahan, # 78 Exhibit 79 - Excerpts from the Dep Tr of Spencer Thwaytes, # 79 Exhibit 80 - Frontier Resp to RFAs, # 80 Exhibit 81 -Neels Expert Report, # 81 Exhibit 82 - AMCK Org Chart)Motion or Order to File Under Seal: 111 .(Hosenpud, David), (Entered: 12/09/2022) |
| 12/13/2022 | 118 | MEMORANDUM & ORDER granting in part and denying in part 111 Letter Motion to Seal.For the reasons set forth above, the Court grants Frontier's motion to seal in part and denies in part. The Court grant's Frontier's sealing request of Exhibits 6, 13, 18, 20, 21, 23, 29, 31, 33, 36, 38, 39, 40, 41, 42, 50 55, 56 58, 61 63, 64, 65, 66, 67 of the Hosenpud Declaration. Exhibits 1, 2, 4, 5, 7, 9, 10, 11, 12, 53, 59, and 60 of the Hosenpud Declaration, Exhibit 1 of the Dempsey Declaration, and Exhibits 1-5 of the Bindu Declaration will be unsealed by January 13, 2023, unless Frontier has submitted updated proposed redactions. (Signed by Judge Louis L. Stanton on 12/13/2022) (rro) (Entered: 12/15/2022) |
| 12/14/2022 | 117 | SECOND AMENDED SCHEDULING ORDER:David G. Hosenpud, counsel for plaintiff, and Jeff Butler, counsel for the defendants, having met and conferred, submit the following proposed amended scheduling order. Depositions have been completed in this matter. The schedule below sets forth the remaining discovery deadlines. Replies due by 12/30/2022. Deposition due by 10/28/2022. Pretrial Conference: TBD. Pretrial Order due by 1/10/2023. The parties estimate the trial will last 5-6 days. The parties request a bench trial. This Scheduling Order may be altered or amended only on a showing of good cause not foreseeable at the time of the conference or when justice so requires. (And as further set forth herein.) APPROVED. (Signed by Judge Louis L. Stanton on 12/14/2022) (rro) (Entered: 12/14/2022) |
| 12/30/2022 | 119 | REPLY MEMORANDUM OF LAW in Support re: 93 MOTION for Summary Judgment . . Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A...(Butler, Jeff) (Entered: 12/30/2022) |
| 12/30/2022 | 120 | LETTER MOTION for Oral Argument *on Motion for Summary Judgment* addressed to Judge Louis L. Stanton from Jeff E. Butler dated 12/30/22. Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A...(Butler, Jeff) (Entered: 12/30/2022) |
| 01/06/2023 | 121 | LETTER RESPONSE to Motion addressed to Judge Louis L. Stanton from David G. Hosenpud dated January 6, 2023 re: 111 LETTER MOTION to Seal addressed to Judge Louis L. Stanton from David G. Hosenpud dated December 9, 2022. . Document filed by Frontier Airlines, Inc.. (Attachments: # 1 Exhibit 1 (to Hosenpud Decl) 2011-09-30 Airbus Purchase Agreement, # 2 Exhibit 2 (to Hosenpud Decl) 2020-07-24 SLB for MSN 9549, # 3 Exhibit 4 (to Hosenpud Decl) 2020-03-16 Amendment No. 8, # 4 Exhibit 5 (to Hosenpud Decl) 2020-05-04 Amendment No. 9, # 5 Exhibit 7 (to Hosenpud Decl) 2020-03-16 Framework Agreement, # 6 Exhibit 9 (to Hosenpud Decl) 2020-04-02 Email re Delivery, # 7 Exhibit 10 (to Hosenpud Decl) 2020-03-16 Lease Agreement, # 8 Exhibit 11 (to Hosenpud Decl) 2020-03-16 Trust Agreement, # 9 Exhibit 12 (to Hosenpud Decl) |

| | | |
|---|---|---|
| | | 2020-03-16 Guaranty, # [10] Exhibit 53 (to Hosenpud Decl) 2020-05-12 AMCK Response Letter, # [11] Exhibit 59 (to Hosenpud Decl) 2020-06-29 CDB LOI, # [12] Exhibit 60 (to Hosenpud Decl) 2020-10-07 JSA LOI, # [13] Exhibit 1 (to Dempsey Decl) 2019-09-10 LOI for Six Aircraft, # [14] Exhibit 1 (to Bindu Decl) MSN 8402 Aircraft Lease Agreement, # [15] Exhibit 2 (to Bindu Decl) MSN 8402 Trust, # [16] Exhibit 3 (to Bindu Decl) 2018 Framework Agreement (excerpts), # [17] Exhibit 4 (to Bindu Decl) MSN 8402 Lessor Guaranty, # [18] Exhibit 5 (to Bindu Decl) MSN 9177 Lease Agreement). (Hosenpud, David) (Entered: 01/06/2023) |
| 01/06/2023 | [122] | ***SELECTED PARTIES***LETTER RESPONSE to Motion addressed to Judge Louis L. Stanton from David G. Hosenpud dated January 6, 2023 re: [111] LETTER MOTION to Seal addressed to Judge Louis L. Stanton from David G. Hosenpud dated December 9, 2022. . Document filed by Frontier Airlines, Inc., AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A.. (Attachments: # [1] Exhibit 1 (to Hosenpud Decl) 2011-09-30 Airbus Purchase Agreement, # [2] Exhibit 2 (to Hosenpud Decl) 2020-07-24 SLB for MSN 9549, # [3] Exhibit 4 (to Hosenpud Decl) 2020-03-16 Amendment No. 8, # [4] Exhibit 5 (to Hosenpud Decl) 2020-05-04 Amendment No. 9, # [5] Exhibit 7 (to Hosenpud Decl) 2020-03-16 Framework Agreement, # [6] Exhibit 9 (to Hosenpud Decl) 2020-04-02 Email re Delivery, # [7] Exhibit 10 (to Hosenpud Decl) 2020-03-16 Lease Agreement, # [8] Exhibit 11 (to Hosenpud Decl) 2020-03-16 Trust Agreement, # [9] Exhibit 12 (to Hosenpud Decl) 2020-03-16 Guaranty, # [10] Exhibit 53 (to Hosenpud Decl) 2020-05-12 AMCK Response Letter, # [11] Exhibit 59 (to Hosenpud Decl) 2020-06-29 CDB LOI, # [12] Exhibit 60 (to Hosenpud Decl) 2020-10-07 JSA LOI, # [13] Exhibit 1 (to Dempsey Decl) 2019-09-10 LOI for Six Aircraft, # [14] Exhibit 1 (to Bindu Decl) MSN 8402 Aircraft Lease Agreement, # [15] Exhibit 2 (to Bindu Decl) MSN 8402 Trust, # [16] Exhibit 3 (to Bindu Decl) 2018 Framework Agreement (excerpts), # [17] Exhibit 4 (to Bindu Decl) MSN 8402 Lessor Guaranty, # [18] Exhibit 5 (to Bindu Decl) MSN 9177 Lease Agreement)Motion or Order to File Under Seal: [118] .(Hosenpud, David) (Entered: 01/06/2023) |
| 07/06/2023 | [123] | OPINION & ORDER granting in part and denying in part [93] Motion for Summary Judgment: Defendants' motion for summary judgment is denied as to the second claim for breach of the Framework Agreement against AMCK, Accipiter, and Vermillion, but is granted as to all other claims. (Signed by Judge Louis L. Stanton on 7/6/2023) (ml) (Entered: 07/06/2023) |
| 07/07/2023 | [124] | MEMORANDUM & ORDER: The exception to that being Section 3.3.1 of Exhibit 7 to the Hosenpud declaration, which the Court relied upon and thus which no countervailing factors justify sealing. Frontier is directed to unseal Section 3.3.1 of Exhibit 7 to the Hosenpud declaration. (Signed by Judge Louis L. Stanton on 7/7/2023) (rro) Modified on 7/18/2023 (rro). (Entered: 07/07/2023) |
| 07/11/2023 | [125] | RESPONSE re: [124] Order, . Document filed by Frontier Airlines, Inc.. (Attachments: # [1] Exhibit 7 (to Hosenpud Decl) Framework Agmt.(Hosenpud, David) (Entered: 07/11/2023) |
| 07/11/2023 | [126] | ***SELECTED PARTIES*** RESPONSE re: [124] Order, . Document filed by All Defendants. (Attachments: # [1] Exhibit 7 (to Hosenpud Decl) Framework Agmt)Motion or Order to File Under Seal: [124] .(Hosenpud, David) (Entered: 07/11/2023) |
| 07/11/2023 | [127] | MEMO ENDORSEMENT on re: [126] Response filed by Frontier Airlines, Inc. ENDORSEMENT: As Plaintiff's requests, the updated version of Exhibit 7 to the Hosenpud Declaration (i.e. the Framework Agreement) is to remain under seal, consistent with the Court's July 7, 2023 order. So Ordered. (Signed by Judge Louis L. Stanton on 7/11/23) (yv) (Entered: 07/12/2023) |

| 07/20/2023 | 128 | NOTICE OF CHANGE OF ADDRESS by Neil Stephen Binder on behalf of Frontier Airlines, Inc.. New Address: Binder & Schwartz LLP, 675 Third Avenue, 26th Floor, New York, NY, USA 10017, (212) 510-7008..(Binder, Neil) (Entered: 07/20/2023) |
|---|---|---|
| 09/01/2023 | | Set/Reset Hearings: Scheduling Conference set for 10/6/2023 at 03:00 PM in Courtroom 21C, 500 Pearl Street, New York, NY 10007 before Judge Louis L. Stanton. (ml) (Entered: 09/01/2023) |
| 09/21/2023 | 129 | LETTER MOTION to Seal addressed to Judge Louis L. Stanton from David G. Hosenpud dated September 21, 2023. Document filed by Frontier Airlines, Inc... (Hosenpud, David) (Entered: 09/21/2023) |
| 09/21/2023 | 130 | LETTER MOTION to Seal addressed to Judge Louis L. Stanton from Jeff E. Butler dated 9/21/23. Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A...(Butler, Jeff) (Entered: 09/21/2023) |
| 09/21/2023 | 131 | ***SELECTED PARTIES***DECLARATION of Dr. Kevin Neels re: 129 LETTER MOTION to Seal addressed to Judge Louis L. Stanton from David G. Hosenpud dated September 21, 2023. . Document filed by All Defendants. (Attachments: # 1 Appendix Expert Report dated Sept. 9, 2022 and Appendix 1-3, # 2 Appendix Appendix 4 - Exhibits D-1 to D-16, # 3 Appendix Suppl Expert Report dated Oct. 28, 2022)Motion or Order to File Under Seal: 129 .(Hosenpud, David) (Entered: 09/21/2023) |
| 09/21/2023 | 132 | DECLARATION of Dr. Kevin Neels . Document filed by Frontier Airlines, Inc.. (Attachments: # 1 Appendix Expert Report dated Sept. 9, 2022 and Appendix 1-3, # 2 Appendix 4 - Exhibits D-1 to D-16, # 3 Appendix Expert Report dated Oct. 28, 2022). (Hosenpud, David) (Entered: 09/21/2023) |
| 09/21/2023 | 133 | ***SELECTED PARTIES***DECLARATION of Rikard de Jonge . Document filed by UMB Bank, N.A., Accipiter Investment 4 Limited, AMCK Aviation Holdings Ireland Limited, Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A., Frontier Airlines, Inc.. (Attachments: # 1 Exhibit 1 - Biography, # 2 Exhibit 2 - Curriculum Vitae, # 3 Exhibit 3 - Documents, # 4 Exhibit 4 - Cash Flow Calculation, # 5 Exhibit 5 - Cash Flow Calculation, # 6 Exhibit 6 - Cash Flow Calculation, # 7 Exhibit 7 - Cash Flow Calculation, # 8 Exhibit 8 - Cash Flow Calculation)Motion or Order to File Under Seal: 130 .(Butler, Jeff) (Entered: 09/21/2023) |
| 09/21/2023 | 134 | TRIAL BRIEF . Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A...(Butler, Jeff) (Entered: 09/21/2023) |
| 09/21/2023 | 135 | JOINT FINAL TRIAL REPORT. Document filed by Frontier Airlines, Inc.. (Attachments: # 1 Exhibit Joint, Plaintiff's, and Defendant's List of Trial Exhibits).(Hosenpud, David) (Entered: 09/21/2023) |
| 09/21/2023 | 136 | TRIAL BRIEF . Document filed by Frontier Airlines, Inc...(Hosenpud, David) (Entered: 09/21/2023) |
| 09/28/2023 | 137 | ORDER granting 130 Letter Motion to Seal. The references in the Neels and de Jonge declarations are just what the cases preceding and following Lugosch meant to exclude as highly confidential and important to their authors and of no interest to anyone else, except their competitors. They may retain the redactions made on the filed copies. So Ordered. (Signed by Judge Louis L. Stanton on 9/28/23) (yv) (Entered: 09/29/2023) |
| 09/28/2023 | 138 | ORDER granting 129 Letter Motion to Seal. The references in the Neels and de Jonge declarations are just what the cases preceding and following Lugosch meant to exclude as highly confidential and important to their authors and of no interest to anyone else, except |

| | | |
|---|---|---|
| | | their competitors. They may retain the redactions made on the filed copies. So Ordered. (Signed by Judge Louis L. Stanton on 9/28/23) (yv) (Entered: 09/29/2023) |
| 10/06/2023 | | Minute Entry for proceedings held before Judge Louis L. Stanton: Final Pretrial Conference held on 10/6/2023. (Court Reporter George Malinowski) (ml) (Entered: 10/06/2023) |
| 10/13/2023 | 139 | JOINT LETTER addressed to Judge Louis L. Stanton from David G. Hosenpud dated October 13, 2023 re: Trial Dates. Document filed by Frontier Airlines, Inc...(Hosenpud, David) (Entered: 10/13/2023) |
| 10/17/2023 | 140 | TRANSCRIPT of Proceedings re: CONFERENCE held on 10/6/2023 before Judge Louis L. Stanton. Court Reporter/Transcriber: George Malinowski, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/7/2023. Redacted Transcript Deadline set for 11/17/2023. Release of Transcript Restriction set for 1/15/2024..(McGuirk, Kelly) (Entered: 10/17/2023) |
| 10/17/2023 | 141 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 10/6/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(McGuirk, Kelly) (Entered: 10/17/2023) |
| 10/17/2023 | 142 | MEMO ENDORSEMENT on re: 139 Letter filed by Frontier Airlines, Inc. ENDORSEMENT: So Ordered. (Signed by Judge Louis L. Stanton on 10/17/2023) (vfr) (Entered: 10/17/2023) |
| 02/22/2024 | 143 | JOINT LETTER MOTION to Continue *re Trial* addressed to Judge Louis L. Stanton from David G. Hosenpud dated February 22, 2024. Document filed by Frontier Airlines, Inc...(Hosenpud, David) (Entered: 02/22/2024) |
| 02/23/2024 | 144 | ORDER granting 143 Letter Motion to Continue. So Ordered. (Signed by Judge Louis L. Stanton on 2/23/2024) (rro) (Entered: 02/23/2024) |
| 03/20/2024 | 145 | NOTICE of Withdrawal of Appearance. Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A...(Reem, Minji) (Entered: 03/20/2024) |
| 03/20/2024 | 146 | MEMO ENDORSEMENT on re: 145 Notice (Other) filed by AMCK Aviation Holdings Ireland Limited, UMB Bank, N.A., Wells Fargo Trust Company, N.A., Accipiter Investment 4 Limited, Vermillion Aviation (Two) Limited ENDORSEMENT: SO ORDERED. Attorney Minji Reem terminated. (Signed by Judge Louis L. Stanton on 3/20/2024) (rro) (Entered: 03/21/2024) |
| 03/25/2024 | 147 | NOTICE of Plaintiff's Deposition Designations. Document filed by Frontier Airlines, Inc...(Hosenpud, David) (Entered: 03/25/2024) |
| 04/03/2024 | | Set/Reset Hearings: Bench Trial set for 4/8/2024 at 11:00 AM in Courtroom 21C, 500 Pearl Street, New York, NY 10007 before Judge Louis L. Stanton. (ml) (Entered: 04/03/2024) |
| 04/05/2024 | 148 | NOTICE of Plaintiff's Amended Deposition Designations with Defendants' Objections and Plaintiff's Responses. Document filed by Frontier Airlines, Inc...(Hosenpud, David) (Entered: 04/05/2024) |

| 04/08/2024 | | Minute Entry for proceedings held before Judge Louis L. Stanton: Bench Trial begun on 4/8/2024. (Court Reporter Rebecca Forman/Shoronda Jones) (ml) (Entered: 04/08/2024) |
|---|---|---|
| 04/09/2024 | | Minute Entry for proceedings held before Judge Louis L. Stanton: Bench Trial held on 4/9/2024. (Court Reporter Rebecca Forman/Shoronda Jones) (ml) (Entered: 04/09/2024) |
| 04/10/2024 | | Minute Entry for proceedings held before Judge Louis L. Stanton: Bench Trial held on 4/10/2024. (Court Reporter Rebecca Forman/Shoronda Jones) (ml) (Entered: 04/10/2024) |
| 04/11/2024 | | Minute Entry for proceedings held before Judge Louis L. Stanton: Bench Trial held on 4/11/2024. (Court Reporter Sharonda Jones) (ml) (Entered: 04/11/2024) |
| 04/12/2024 | | Minute Entry for proceedings held before Judge Louis L. Stanton: Bench Trial held on 4/12/2024. (Court Reporter Rebecca Forman) (ml) (Entered: 04/12/2024) |
| 04/15/2024 | | Minute Entry for proceedings held before Judge Louis L. Stanton: Bench Trial held on 4/15/2024. (Court Reporter Rebecca Forman/Shoronda Jones) (ml) (Entered: 04/15/2024) |
| 04/16/2024 | | Minute Entry for proceedings held before Judge Louis L. Stanton: Bench Trial held on 4/16/2024. (Court Reporter Rebecca Forman/Shoronda Jones) (ml) (Entered: 04/16/2024) |
| 04/17/2024 | | Minute Entry for proceedings held before Judge Louis L. Stanton: Bench Trial completed on 4/17/2024. (Court Reporter Sharonda Jones) (ml) (Entered: 07/09/2024) |
| 04/25/2024 | [149](#) | LETTER addressed to Judge Louis L. Stanton from David G. Hosenpud dated April 25, 2024 re: Supplemental Responses to Court's Questions. Document filed by Frontier Airlines, Inc...(Hosenpud, David) (Entered: 04/25/2024) |
| 05/02/2024 | [150](#) | POST TRIAL MEMORANDUM. Document filed by Frontier Airlines, Inc...(Hosenpud, David) (Entered: 05/02/2024) |
| 05/02/2024 | [151](#) | POST TRIAL MEMORANDUM. Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, Vermillion Aviation (Two) Limited..(Butler, Jeff) (Entered: 05/02/2024) |
| 05/07/2024 | [152](#) | NOTICE of Plaintiff's Second Amended Deposition Designations with Defendants' Objections and Plaintiff's Responses. Document filed by Frontier Airlines, Inc... (Hosenpud, David) (Entered: 05/07/2024) |
| 05/07/2024 | [153](#) | NOTICE of Amended Exhibit A to Joint Pretrial Order re: [135](#) Joint Final Trial Report. Document filed by Frontier Airlines, Inc.. (Attachments: # [1](#) Exhibit A - Amended Joint, Plaintiff's and Defendants' Trial Exhibits).(Hosenpud, David) (Entered: 05/07/2024) |
| 05/10/2024 | [154](#) | TRANSCRIPT of Proceedings re: TRIAL held on 4/8/2024 before Judge Louis L. Stanton. Court Reporter/Transcriber: Rebecca Forman, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/31/2024. Redacted Transcript Deadline set for 6/10/2024. Release of Transcript Restriction set for 8/8/2024.. (McGuirk, Kelly) (Entered: 05/10/2024) |
| 05/10/2024 | [155](#) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a TRIAL proceeding held on 4/8/2024 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(McGuirk, Kelly) (Entered: 05/10/2024) |
| 05/10/2024 | [156](#) | TRANSCRIPT of Proceedings re: TRIAL held on 4/9/2024 before Judge Louis L. Stanton. Court Reporter/Transcriber: Rebecca Forman, (212) 805-0300. Transcript may |

| | | be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/31/2024. Redacted Transcript Deadline set for 6/10/2024. Release of Transcript Restriction set for 8/8/2024.. (McGuirk, Kelly) (Entered: 05/10/2024) |
|---|---|---|
| 05/10/2024 | 157 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a TRIAL proceeding held on 4/9/2024 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(McGuirk, Kelly) (Entered: 05/10/2024) |
| 05/10/2024 | 158 | TRANSCRIPT of Proceedings re: TRIAL held on 4/10/2024 before Judge Louis L. Stanton. Court Reporter/Transcriber: Sharonda Jones, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/31/2024. Redacted Transcript Deadline set for 6/10/2024. Release of Transcript Restriction set for 8/8/2024..(McGuirk, Kelly) (Entered: 05/10/2024) |
| 05/10/2024 | 159 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a TRIAL proceeding held on 4/10/24 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(McGuirk, Kelly) (Entered: 05/10/2024) |
| 05/10/2024 | 160 | TRANSCRIPT of Proceedings re: TRIAL held on 4/11/2024 before Judge Louis L. Stanton. Court Reporter/Transcriber: Sharonda Jones, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/31/2024. Redacted Transcript Deadline set for 6/10/2024. Release of Transcript Restriction set for 8/8/2024..(McGuirk, Kelly) (Entered: 05/10/2024) |
| 05/10/2024 | 161 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a TRIAL proceeding held on 4/11/2024 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(McGuirk, Kelly) (Entered: 05/10/2024) |
| 05/10/2024 | 162 | TRANSCRIPT of Proceedings re: TRIAL held on 4/12/2024 before Judge Louis L. Stanton. Court Reporter/Transcriber: Rebecca Forman, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/31/2024. Redacted Transcript Deadline set for 6/10/2024. Release of Transcript Restriction set for 8/8/2024.. (McGuirk, Kelly) (Entered: 05/10/2024) |

| 05/10/2024 | 163 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a TRIAL proceeding held on 4/12/2024 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(McGuirk, Kelly) (Entered: 05/10/2024) |
| --- | --- | --- |
| 05/10/2024 | 164 | TRANSCRIPT of Proceedings re: TRIAL held on 4/15/2024 before Judge Louis L. Stanton. Court Reporter/Transcriber: Rebecca Forman, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/31/2024. Redacted Transcript Deadline set for 6/10/2024. Release of Transcript Restriction set for 8/8/2024.. (McGuirk, Kelly) (Entered: 05/10/2024) |
| 05/10/2024 | 165 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a TRIAL proceeding held on 4/15/2024 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(McGuirk, Kelly) (Entered: 05/10/2024) |
| 05/10/2024 | 166 | TRANSCRIPT of Proceedings re: TRIAL held on 4/16/2024 before Judge Louis L. Stanton. Court Reporter/Transcriber: Sharonda Jones, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/31/2024. Redacted Transcript Deadline set for 6/10/2024. Release of Transcript Restriction set for 8/8/2024..(McGuirk, Kelly) (Entered: 05/10/2024) |
| 05/10/2024 | 167 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a TRIAL proceeding held on 4/16/2024 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(McGuirk, Kelly) (Entered: 05/10/2024) |
| 05/10/2024 | 168 | TRANSCRIPT of Proceedings re: TRIAL held on 4/17/2024 before Judge Louis L. Stanton. Court Reporter/Transcriber: Sharonda Jones, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/31/2024. Redacted Transcript Deadline set for 6/10/2024. Release of Transcript Restriction set for 8/8/2024..(McGuirk, Kelly) (Entered: 05/10/2024) |
| 05/10/2024 | 169 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a TRIAL proceeding held on 4/17/2024 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(McGuirk, Kelly) (Entered: 05/10/2024) |
| 06/14/2024 | 170 | OPINION & ORDER: For the foregoing reasons, AMCK breached the Framework Agreement, and Accipiter and Vermillion are proper defendants. Accordingly, judgment will be entered in favor of Frontier and against AMCK, Accipiter, and Vermillion in the amount of $48,660,000, plus interest from the date of breach at a rate of 9%. The Court |

| | | accepts Dr. Neels's damages calculation because, while a pre-tax approach is standard, his use of a constant tax rate yielded the same result, and his rent computations comported with Frontier's internal estimates and actual payments. Additionally, AMCK is liable to Frontier for all losses, fees, costs, and expenses - including attorneys' fees - under the Original Leases and the Framework Agreement. JX-2 & 7, § 17.l(a); JX-24, § 7.1. The Clerk is directed to enter judgment accordingly. (Signed by Judge Louis L. Stanton on 6/14/2024) (ml) Transmission to Orders and Judgments Clerk for processing. (Entered: 06/14/2024) |
|---|---|---|
| 06/17/2024 | 171 | CLERK'S JUDGMENT re: 170 Memorandum & Opinion in favor of Frontier Airlines, Inc. against AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, Vermillion Aviation (Two) Limited in the amount of $ 66,669,532.60. It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasonsstated in the Court's Opinion & Order dated June 14, 2024, judgment is entered in favor of Frontier and against AMCK, Accipiter, and Vermillion in the amount of $48,660,000, plus interest from (5/8/2020) the date of breach at a rate of 9% for the total interest amount of $18,009,532.60. The Court accepts Dr. Neels's damages calculation because, while a pre-tax approach is standard, his use of a constant tax rate yielded the same result, and his rent computations comported with Frontier's internal estimates and actual payments. Additionally, AMCK is liable to Frontier for all losses, fees, costs, and expenses - including attorneys' fees - under the Original Leases and the Framework Agreement. JX-2 & 7, § 17.l(a); JX-24, § 7.1. (Signed by Acting, Clerk of Court Danny Ortiz on 6/17/2024) (Attachments: # 1 Appeal Package) (tp) (Entered: 06/17/2024) |
| 06/25/2024 | 172 | NOTICE OF CHANGE OF ADDRESS by Jeff Edward Butler on behalf of AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A.. New Address: Clifford Chance US LLP, 375 9th Avenue, New York, NY, United States 10001, 2128788000..(Butler, Jeff) (Entered: 06/25/2024) |
| 06/25/2024 | 173 | MOTION to Alter Judgment re: 170 Memorandum & Opinion,,, 171 Clerk's Judgment,,,, . Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, Vermillion Aviation (Two) Limited..(Butler, Jeff) (Entered: 06/25/2024) |
| 06/25/2024 | 174 | MEMORANDUM OF LAW in Support re: 173 MOTION to Alter Judgment re: 170 Memorandum & Opinion,,, 171 Clerk's Judgment,,,, . . Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, Vermillion Aviation (Two) Limited..(Butler, Jeff) (Entered: 06/25/2024) |
| 07/01/2024 | 175 | AMENDED OPINION & ORDER: For the foregoing reasons, AMCK breached the FrameworkAgreement, and Accipiter and Vermillion are proper defendants. Accordingly, judgment will be entered in favor of Frontier and against AMCK, Accipiter, and Vermillion in the amount of $48,660,000, plus interest from April 8, 2024 at a rate of 9%. The Court accepts Dr. Neels's damages calculation because, while apre-tax approach is standard, his use of a constant tax rate yielded the same result, and his rent computations comported with Frontier's internal estimates and actual payments. Additionally, AMCK is liable to Frontier for all losses, fees, costs, and expenses including attorneys' fees - under the Original Leases and the Framework Agreement. JX-2 & 7, §17.l(a); JX-24, §7.1. The Clerk is directed to enter judgment accordingly. (Signed by Judge Louis L. Stanton on 7/1/2024) (ml) (Entered: 07/01/2024) |
| 07/01/2024 | 176 | ORDER re: 173 MOTION to Alter Judgment re: 170 Memorandum & Opinion, 171 Clerk's Judgment, . : Defendants' June 25, 2024 Motion to Amend the Judgment (Dkt. No. 173) is granted. The Clerk is directed to amend the June 17, 2024 Judgment (Dkt. No. 171) to award 9% interest from April 8, 2024, instead of May 8, 2020. The Court's June 14, 2024 Opinion & Order(Dkt. No. 170) is amended accordingly. (Signed by Judge |

| | | Louis L. Stanton on 7/1/2024) (ml) Transmission to Orders and Judgments Clerk for processing. (Entered: 07/01/2024) |
|---|---|---|
| 07/01/2024 | 177 | MOTION for Attorney Fees , *Costs, and Expenses*. Document filed by Frontier Airlines, Inc...(Hosenpud, David) (Entered: 07/01/2024) |
| 07/01/2024 | 178 | MEMORANDUM OF LAW in Support re: 177 MOTION for Attorney Fees , *Costs, and Expenses*. . Document filed by Frontier Airlines, Inc...(Hosenpud, David) (Entered: 07/01/2024) |
| 07/01/2024 | 179 | DECLARATION of David G. Hosenpud in Support re: 177 MOTION for Attorney Fees , *Costs, and Expenses*.. Document filed by Frontier Airlines, Inc.. (Attachments: # 1 Exhibit 1 - Lane Powell Atty Resumes, # 2 Exhibit 2 - Lane Powell Invoices, # 3 Exhibit 3 - Lane Powell Summary Fees, # 4 Exhibit 4 - Binder Schwartz Resumes, # 5 Exhibit 5 - Binder Schwartz Invoices, # 6 Exhibit 6 - Binder Schwartz Summary of Fees, # 7 Exhibit 7 - LP Summary of Costs, # 8 Exhibit 8 - Dep Costs and Invoices, # 9 Exhibit 9 - Trial Transcript Cost and Invoices, # 10 Exhibit 10 - Consilio Summary and Invoices, # 11 Exhibit 11 - Dr Neels and Brattle Group Resumes, # 12 Exhibit 12 - Brattle Group Summary, # 13 Exhibit 13 - Brattle Group Invoices, # 14 Exhibit 14 - Real Rate Report by Wolters Kluwer).(Hosenpud, David) (Entered: 07/01/2024) |
| 07/02/2024 | 180 | AMENDED CLERK'S JUDGMENT amending 171 Clerk's Judgment, in favor of Frontier Airlines, Inc. against AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, Vermillion Aviation (Two) Limited in the amount of $ 49,499,884.93. It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasonsstated in the Court's Amended Opinion & Order dated July 1, 2024 and the Courts Order dated July 1, 2024, Defendants' June 25, 2024 Motion to Amend the Judgment (Dkt. No. 173) is granted. Accordingly, judgment is entered in favor of Frontier and against AMCK, Accipiter, and Vermillion in the amount of $48,660,000, plus interest at 9% from April 8, 2024 of $839,884.93 for a total sum of $49,499,884,93. (Signed by Clerk of Court - Acting Daniel Ortiz on 7/2/2024) (Attachments: # 1 Appeal Package) (tp) (Entered: 07/02/2024) |
| 07/12/2024 | 181 | MOTION for Judgment as a Matter of Law *pursuant to Rule 52(b) of the Federal Rules of Civil Procedure*. Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, Vermillion Aviation (Two) Limited..(Butler, Jeff) (Entered: 07/12/2024) |
| 07/12/2024 | 182 | MEMORANDUM OF LAW in Support re: 181 MOTION for Judgment as a Matter of Law *pursuant to Rule 52(b) of the Federal Rules of Civil Procedure*. . Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, Vermillion Aviation (Two) Limited..(Butler, Jeff) (Entered: 07/12/2024) |
| 07/12/2024 | 183 | NOTICE OF APPEAL from 175 Order,,, 170 Memorandum & Opinion,,, 180 Amended Judgment,,, 171 Clerk's Judgment,,,,,. Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, Vermillion Aviation (Two) Limited. Filing fee $ 605.00, receipt number ANYSDC-29599659. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Butler, Jeff) Modified on 7/15/2024 (nd). (Entered: 07/12/2024) |
| 07/15/2024 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 183 Notice of Appeal..(nd) (Entered: 07/15/2024) |
| 07/15/2024 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 183 Notice of Appeal, filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, Vermillion Aviation (Two) Limited were transmitted to the U.S. Court of Appeals..(nd) (Entered: 07/15/2024) |

| 07/15/2024 | [184](#) | MEMORANDUM OF LAW in Opposition re: [177](#) MOTION for Attorney Fees , *Costs, and Expenses*. . Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, Vermillion Aviation (Two) Limited..(Butler, Jeff) (Entered: 07/15/2024) |
|---|---|---|
| 07/17/2024 | [185](#) | NOTICE OF REQUIRED CASE STATUS UPDATE re: [183](#) Notice of Appeal. A notice of appeal was filed in this case on 7/12/2024. Since at least one motion cited inFRAP 4(a)4 has been filed in the district court this appeal is stayed pending resolution of the motion(s). Appellant is directed to inform this Court in writing of the status of the motion(s) at 30 day intervals beginning 30 days from the date of this notice, and within 14 days after final disposition of the last outstanding motion. Appellant is also directed to provide the Court with a copy of all dispositive orders. (tp) (Entered: 07/17/2024) |
| 07/22/2024 | [186](#) | REPLY to Response to Motion re: [177](#) MOTION for Attorney Fees , *Costs, and Expenses*. . Document filed by Frontier Airlines, Inc...(Hosenpud, David) (Entered: 07/22/2024) |
| 07/22/2024 | [187](#) | DECLARATION of David G. Hosenpud (Supplemental) in Support re: [177](#) MOTION for Attorney Fees , *Costs, and Expenses*.. Document filed by Frontier Airlines, Inc.. (Attachments: # [1](#) Exhibit 15 - Lane Powell Inv dated 7-22-2024 No. 3936950). (Hosenpud, David) (Entered: 07/22/2024) |
| 07/23/2024 | [188](#) | LETTER MOTION for Leave to File Sur-reply *in response to Plaintiff's reply in further support of motion for attorney's fees,* addressed to Judge Louis L. Stanton from Jeff E. Butler dated July 23, 2024. Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, Vermillion Aviation (Two) Limited..(Butler, Jeff) (Entered: 07/23/2024) |
| 07/25/2024 | [189](#) | ORDER granting [188](#) Letter Motion for Leave to File Document. Granted.. (Signed by Judge Richard G. Stearns on 7/25/2024) (tg) (Entered: 07/25/2024) |
| 07/26/2024 | [190](#) | RESPONSE in Opposition to Motion re: [181](#) MOTION for Judgment as a Matter of Law *pursuant to Rule 52(b) of the Federal Rules of Civil Procedure*. . Document filed by Frontier Airlines, Inc...(Hosenpud, David) (Entered: 07/26/2024) |
| 07/26/2024 | [191](#) | RESPONSE in Opposition to Motion re: [177](#) MOTION for Attorney Fees , *Costs, and Expenses*. *Defendants' Sur-Reply in Opposition to Frontier's Motion for Attorney's Fees, Costs, and Expenses*. Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, Vermillion Aviation (Two) Limited..(Butler, Jeff) (Entered: 07/26/2024) |
| 07/29/2024 | [192](#) | PROPOSED STIPULATION AND ORDER. Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, Vermillion Aviation (Two) Limited..(Butler, Jeff) (Entered: 07/29/2024) |
| 07/31/2024 | [193](#) | STIPULATION AND ORDER ALLOWING CASH DEPOSIT IN LIEU OF SUPERSEDEAS BOND: IT IS HEREBY STIPULATED AND AGREED, by and between Plaintiff Frontier Airlines, Inc. ("Frontier") and Defendants, that: 1. Defendants are authorized to deposit with the Court the sum of $54,944,872.27, representing 111% of the amount of the Amended Judgment, pursuant to Rule 67(a) of the Federal Rules of Civil Procedure; 2. The deposited funds shall be maintained in an interest-bearing account or invested in one or more interest-bearing instruments pursuant to Rule 67(b) of the Federal Rules of Civil Procedure; 3. The Clerk shall deduct from the income on the investment a fee consistent with that authorized by the Judicial Conference of the United States and set by the Director of the Administrative Office pursuant to Local Civil Rule 67.1(b)(2); 4. The deposited funds shall serve as "other security" for the Amended Judgment pursuant to Rule 62(b) of the Federal Rules of Civil Procedure; 5. Pursuant to |

| | | 28 U.S.C. § 2042, the deposited funds, and any interest earned thereon, shall be withdrawn except by order of the Court; and 6. Proceedings to enforce the Amended Judgment, or to obtain discovery in aid of such enforcement, shall be stayed pending final disposition of the Appeal. (Signed by Part 1 Judge Lorna G. Schofield on 7/31/2024) (vfr) Transmission to Finance Unit (Cashiers) for processing. (Entered: 07/31/2024) |
|---|---|---|
| 08/02/2024 | 194 | REPLY MEMORANDUM OF LAW in Support re: 181 MOTION for Judgment as a Matter of Law *pursuant to Rule 52(b) of the Federal Rules of Civil Procedure*. . Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, Vermillion Aviation (Two) Limited..(Butler, Jeff) (Entered: 08/02/2024) |
| 08/08/2024 | | CASHIERS OFFICE CRIS DEPOSIT as per 193 Stipulation and Order, dated 7/31/2024, from Judge Lorna G. Schofield, $17,396,189.09 deposited on 7/31/2024, Receipt Number NYSCA24-00376 and $37,548,683.18 deposited on 8/2/2024, Receipt Number NYSCA24-00377, and $54,944,872.27 placed into CRIS on 8/8/2024..(bwi) (Entered: 08/08/2024) |
| 08/14/2024 | 195 | OPINION re: 181 MOTION for Judgment as a Matter of Law *pursuant to Rule 52(b) of the Federal Rules of Civil Procedure*. filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, Vermillion Aviation (Two) Limited. For the reasons stated in the Court's Summary Judgment Opinion (Dkt. No. 123), defendants' Rule 52(b) Motion for Judgment as a Matter of Law (Dkt. No. 181) is denied. So ordered. (Signed by Judge Louis L. Stanton on 8/14/2024) (sgz) (Entered: 08/14/2024) |
| 08/19/2024 | 196 | MEMO ENDORSED ORDER granting 177 Motion for Attorney Fees. ENDORSEMENT: On June 14, 2024, this Court held that defendants AMCK Aviation Holdings Ireland Limited ("AMCK"), Accipiter Investments 4 Limited ("Accipiter"), and Vermillion Aviation (Two) Limited ( "Vermillion") breached their Framework Agreement with plaintiff Frontier Airlines, Inc. ("Frontier") and were liable for all losses, fees, costs, and expenses, including attorneys' fees (Dkt. No. 170). Plaintiff's attorneys now move for attorneys' fees and costs pursuant to provisions in the parties' contracts (Dkt. No. 177). That motion is granted. Although in this country attorneys' fees are typically not recoverable, "parties may agree by contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law." U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 74 (2d Cir. 2004) (internal quotations and citations omitted). "Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F. 3d 168, 175 (2d Cir. 2008). Though this case involves breach of the Framework Agreement specifically, that termination was predicated on breaches of other interrelated contracts pertaining to the sale and leaseback of numerous aircraft. For each aircraft, the parties executed lease agreements, trust agreements, and guaranty agreements. The aircraft at issue were guaranteed by Vermillion (MSN 10038 Lease), Accipiter (Original Leases), or Accipiter Holdings, DAC (Original Leases), which is the parent company of Accipiter. The guaranty agreements required those parties to ensure unconditional performance of the leases, and each guaranty agreement included the following provision: 2.2 Expenses. Guarantor agrees to be liable for the payment of all reasonable fees and expenses, including attorney's fees, incurred by Lessee in connection with the enforcement of this Guaranty. See, e.g., MSN 10038 Guaranty Agreement (Dkt. No.116, Ex.12 ) This clearly contemplates the payment of attorneys' fees and costs. Frontier's requested attorneys' fees are reasonable, and, notably, defendants do not challenge the amount in question. Frontier seeks $1, 997,575. 10 in fees for 3, 949.1 hours of work by Lane Powell PC and $36,249.50 in fees for 58.6 hours of work by Binder & Schwartz LLP. Those rates reflect the actual costs incurred by Frontier over the course of nearly four years of litigation and are reasonable. Danaher Corp. v. Travelers Indem. Co., 2014 WL 4898754, at *2 (S. D. |

N.Y. Sept. 30, 2014) ("[T]he amount actually paid to counsel by paying clients is compelling evidence of a reasonable market rate." ). They also comport with prevailing market rates in the Southern District of New York and are appropriate given the time and experience required to handle a multi - year matter concerning millions of dollars, valuable business relationships, a complex structure of contracts, a global pandemic, and a nearly two - week bench trial. Frontier's costs and expenses are also reasonable, and the amount is similarly uncontested by the defendants. Frontier seeks $240, 300. 49 for costs and expenses related to travel,depositions, and trial transcripts, as well as $307,602. 41 forexpert witness costs and expenses. Those comport with amountstypically awarded in this district. See, e.g., Austrian Airlines Oesterreichische Luftverkehrs AG v. UT Fin. Corp., 2008 WL 4833025, at *1, 9 (S.D. N.Y. No v. 3, 2008) (approving $568,148 inexpert and consultant fees in a case involving more than $47.9million in alleged damages).Frontier's request for an additional $10,102.35 in fees andexpenses related to the instant motion is denied. In the Second Circuit, parties are typically not entitled to recover fees incurred in connection with seeking fees - even where a contractexpressly allows for the recovery of legal fees - unless thecontract specifically allows for it. See F.H. Krear & Co. v.Nineteen Named Trustees, 810 F. 2d 1250, 1266 (2d Cir. 1987)("[A] general contract provision for the shifting of attorneys 'fees does not authorize an award of fees for time spent inseeking the fees themselves."); Thor 725 8th Ave. LLC v.Goonetilleke, 675 F. App'x 31, 35 (2d Cir.2017) (holding that" there is no basis for disturbing F. H. Krear" and "[t]hedistrict court correctly denied [plaintiff's] request for 'feeson fees'") ; Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC,2022 WL 413229, at *11 (S.D.N.Y. Feb. 9, 2022) (rejectingapplication for the " cost of litigating amount of fees " absent"specific language" in the contract).Frontier is entitled to $2,581,727.50 in attorneys' fees and costs. The Clerk is directed to issue a supplemental judgment and close the case. So Ordered. (Signed by Judge Louis L. Stanton on 8/19/2024) (vfr) Transmission to Orders and Judgments Clerk for processing. (Entered: 08/19/2024)

| 08/20/2024 | 197 | ORDER of USCA (Certified Copy) as to 183 Notice of Appeal, filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, Vermillion Aviation (Two) Limited USCA Case Number 24-1916. IT IS ORDERED that the stay of this appeal is hereby lifted. Catherine O'Hagan Wolfe, Clerk USCA for the Second Circuit. Certified: 8/19/2024. (tp) (Entered: 08/20/2024) |
| --- | --- | --- |
| 08/20/2024 | 198 | CLERK'S SUPPLEMENTAL JUDGMENT on Attorney Fees. Fees in favor of Frontier Airlines, Inc. against AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, UMB Bank, N.A., Vermillion Aviation (Two) Limited, Wells Fargo Trust Company, N.A. It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Memo Endorsed Order dated August 19, 2024, that Frontier is entitled to $2,581,727.50 in attorneys' fees and costs. Accordingly, the case is closed. (Signed by Clerk of Court - Acting Daniel Ortiz on 8/20/2024) (tp) (Entered: 08/20/2024) |
| 08/26/2024 | 199 | AMENDED NOTICE OF APPEAL re: 183 Notice of Appeal, 175 Order,,, 170 Memorandum & Opinion,,, 198 Judgment on Attorney Fees,,, 196 Order on Motion for Attorney Fees, 195 Memorandum & Opinion,, 180 Amended Judgment,,, 171 Clerk's Judgment,,,,. Document filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, Vermillion Aviation (Two) Limited..(Butler, Jeff) Modified on 8/27/2024 (nd). (Entered: 08/26/2024) |
| 08/27/2024 | | Transmission of Amended Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 199 Amended Notice of Appeal,..(nd) (Entered: 08/27/2024) |
| 08/27/2024 | | First Supplemental ROA Sent to USCA (Electronic File). Certified Supplemental Indexed record on Appeal Electronic Files for 187 Declaration in Support of Motion, filed by Frontier Airlines, Inc., 196 Order on Motion for Attorney Fees,,,,,,,,,,,,,,,,,,, 184 Memorandum of Law in Opposition to Motion, filed by AMCK Aviation Holdings |

Ireland Limited, Accipiter Investment 4 Limited, Vermillion Aviation (Two) Limited, 194 Reply Memorandum of Law in Support of Motion, filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, Vermillion Aviation (Two) Limited, 199 Amended Notice of Appeal, filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, Vermillion Aviation (Two) Limited, 193 Stipulation and Order,,,,, 195 Memorandum & Opinion,, 192 Proposed Stipulation and Order filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, Vermillion Aviation (Two) Limited, 189 Order on Motion for Leave to File Document, 190 Response in Opposition to Motion filed by Frontier Airlines, Inc., 186 Reply to Response to Motion filed by Frontier Airlines, Inc., 185 Notice of Stay of Appeal,, 188 LETTER MOTION for Leave to File Sur-reply *in response to Plaintiff's reply in further support of motion for attorney's fees,* addressed to Judge Louis L. Stanton from Jeff E. Butler dated July 23, 2024. filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, Vermillion Aviation (Two) Limited, 191 Response in Opposition to Motion, filed by AMCK Aviation Holdings Ireland Limited, Accipiter Investment 4 Limited, Vermillion Aviation (Two) Limited, 198 Judgment on Attorney Fees,, 197 USCA Order - Other, were transmitted to the U.S. Court of Appeals..(nd) (Entered: 08/27/2024)

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/03/2024 15:17:25 | | |
| **PACER Login:** | clifford31 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:20-cv-09713-LLS |
| **Billable Pages:** | 29 | **Cost:** | 2.90 |

## Addendum B

**Issues Proposed to be Raised on Appeal**

1.    Did the district court err in finding on summary judgment that the Framework Agreement unambiguously provides that a waiver need not be in writing?

Standard of review: *De novo*

2.    Did the district court err by interpreting the agreement on the April 7th phone call as a unilateral waiver rather than as a tentative agreement that needed to be committed to writing?

Standard of review: *De novo*

3.    Did the district court err in considering course of conduct evidence as part of finding a waiver?

Standard of review: *De novo*

4.    Did the district court err by not finding that the April 9th draft agreement was a withdrawal of any waiver on April 7, because it indicated AMCK expected an agreement to be documented in writing?

Standard of review: *De novo*

5.    Did the district court err in denying Defendants' Daubert motion?

Standard of review: Abuse of discretion

6.      Did the district court err in finding that Accipiter Investments Aircraft 4 Limited and Vermillion Aviation (Two) Limited were proper defendants and were liable for breach of the Framework Agreement, based on its ruling that Accipiter and Vermillion's contracts should be read as one with the Framework Agreement?

Standard of review: *De novo*

7.  Did the district court err in awarding attorneys' fees and costs to Frontier?

Standard of review: *De novo*